IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

MOVIE GALLERY US, LLC,    2007 NOV 21  P 3: 19

    Plaintiff,      DEBRA P. HACKETT, CLK
              U.S. DISTRICT COURT
              MIDDLE DISTRICT ALA
v.

MARK W. GREENSHIELDS,
ASSOCIATED SOURCING, AND     CIVIL ACTION NO.:
ASSOCIATED SOURCING HOLDINGS,  1:07cv1032-MHT
INC. d/b/a VIDEO LIBRARY,

    Defendants.

## NOTICE OF REMOVAL

Pursuant to the provisions of 28 U.S.C. § 1441(a) and (b) and 28 U.S.C. § 1446, Defendants Mark W. Greenshields, Associated Sourcing, and Associated Sourcing Holdings, Inc. hereby give notice of removal of this cause from the Circuit Court of Houston County, Alabama, to the United States District Court for the Middle District of Alabama, Southern Division. In support of said Notice of Removal, the Defendants state as follows:

1.   This action was commenced in Houston County, Alabama, on October 12, 2007. It alleges breach of contract, violation of the Alabama Trade Secrets Act, and intentional interference with contractual relations. A copy of Plaintiff's Complaint filed in the Circuit Court for Houston County, Alabama, along with the AlaCourt file is attached as Exhibit A. The Houston County Clerk does not maintain a hard-copy file for this case, and thus the AlaCourt file comprises the entire record in this action. The action is styled as *Movie Gallery US, LLC  v.*

*Mark W. Greenshields, Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library*, in the Circuit Court for Houston County, Alabama, CV-2007-900117.00.

2.    Defendants Mark W. Greenshields, Associated Sourcing, and Associated Sourcing Holdings, Inc. were served with the summons and complaint on October 22, 2007. This Notice of Removal is timely filed, as it is filed within 30 days after service of the Complaint on any defendant and within one year of the commencement of suit. *See* 28 U.S.C. § 1446(b).

3.    Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal is being filed with the Clerk of the State Court in which the action is currently pending. A copy of the Removing Defendants' filing in state court is attached hereto as Exhibit B. Copies of the Notice of Filing Notice of Removal, together with this Notice of Removal, are being served upon Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

4.    All Defendants join and consent to the removal of this case.

5.    This action was commenced in Houston County, Alabama. Houston County, Alabama is located in the Southern Division of the Middle District of Alabama. Removal of this action is being made to the District Court that embraces the county in which the state court action is now pending, and thus, this Court is the proper venue for this action pursuant to 28 U.S.C. § 81(a)(3).

6.    This suit is an action over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332, and is one that may be removed to this Court under the provisions of 28 U.S.C. § 1441. Removal under Section 1441 is appropriate in that there exists complete diversity of citizenship between Plaintiff and Defendants in the underlying cause, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Citizenship of Parties**

7.      Movie Gallery is a Delaware limited liability company with its principal place of business in Dothan, Alabama, (Compl. ¶ 2), and is accordingly a citizen of the States of Delaware and Alabama.

8.      None of the Defendants are citizens of Alabama or of Delaware.   Mark W. Greenshields is a resident of Redmond, Washington.   (Decl. of Mark W. Greenshields ¶ 2, attached hereto as Exhibit C (hereinafter "Greenshields Decl."); Compl. ¶ 3).   "Associated Sourcing is a sole proprietorship existing under the laws of the State of Washington." (Compl. ¶ 4).   Defendant Associate Sourcing Holdings, Inc., is a Washington corporation with its principal place of business in Redmond, Washington. (Compl. ¶ 4; Greenshields Decl. ¶ 4).

9.      Pursuant to 28 U.S.C. § 1332, complete diversity of citizenship exists between Plaintiff and Defendants.

**Amount in Controversy**

10.      Based on Plaintiff's allegations and the damages sought, the amount in controversy exceeds $75,000, exclusive of interest and costs.   Plaintiff claims of breach of contract, violation of the Alabama Trade Secrets Act, and intentional interference with contractual relations arise out of a contract entered into between Plaintiff, Defendant Greenshields, and Defendant Associated Sourcing Holdings.   (*See* Compl. pp. 3-5).   Plaintiff alleges that Defendants targeted and took Plaintiff's customers through the use of Plaintiff's confidential information.

11.      In the Eleventh Circuit, "the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective.   'In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the

plaintiff if the injunction were granted.'" *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (internal citations omitted); *see also Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted.").

12.    In order to use a plaintiff's lost revenue to calculate the amount in controversy, a plaintiff's past and future lost revenue must be concrete, i.e., it cannot be speculative. *See, e.g. Chapman Funeral Home, Inc. v. Nat'l Linen Serv.*, 178 F. Supp. 2d 1247, 1250 (M.D. Ala. 2002) (the ability to not have to make contractual payments, which are known to be in excess of $75,000, is concrete and definable). The former Fifth Circuit has held that when a plaintiff seeks an injunction based on an alleged violation of a covenant not to compete, "the requisite amount in controversy[] could be based upon the value of plaintiff's lost sales revenue because of the competing company . . . , plus the value of the future effect of the breach of the covenant not to compete." *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 510 F. Supp. 2d 691, 715-16 (M.D. Fla. 2007) (citing *Premier Indus. Corp. v. Tex. Indus. Fastener Co.*, 450 F.2d 444, 446-47 (5th Cir.1971)). An injunction to enforce or prevent a non-competition agreement between two companies is concrete for the purpose of federal diversity jurisdiction when the parties' current revenue can be used to assess the value of the injunction. *See Davis Tune, Inc. v. Precision Franchising, LLC*, No. 3:05CV97/RV, 2005 WL 1204618 at *2 (N.D. Fla. May 20, 2005) (holding that the value of a declaratory judgment in favor of plaintiff regarding a non-competition agreement would be equal to the revenue of the plaintiff's currently operating store for the length of the non-competition agreement).

13.    Typically, attorney's fees cannot be considered when determining whether the amount in controversy has been met. *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001). However, when attorney's fees are recoverable pursuant to a state statute, those fees are included in the jurisdictional calculation. *Morrison*, 228 F.3d at 1265. Standing alone, attorney's fees may not reach the threshold, but they can be included in calculating the overall total amount in controversy. *See Davis Tune, Inc.*, 2005 WL 1204618, at *3 ("The attorney's fees accrued in this case could be substantial, and if the Plaintiff is successful, would likely push the total judgment in this case over $75,000.").

14.    Plaintiff's alleged damages include, among others, lost opportunity to compete, lost profits, attorney's fees, loss of customers, loss of business. (Compl. ¶ 25, 39, 49). Plaintiff also pleads willful misappropriation (Compl. ¶ 25, 35, 37), which pursuant to Ala. Code § 8-27-4, would allow for the recovery of attorney's fees.

15.    Currently, Associated Sourcing Holdings has contracts with fourteen former Plaintiff's customers. (Greenshields Decl. ¶ 10; Declaration of Jared Smith ¶ 6, attached hereto as Exhibit D (hereinafter "Smith Decl.")). These contracts have approximately $5,500 in weekly revenue, an annual value of approximately $259,000, and provide approximately $129,000 in annual profit. (Smith Decl. ¶ 8; *see* Greenshields Decl. ¶ 10).

16.    The value of the injunction from the Plaintiff's perspective is the revenue that Movie Gallery would be generating but for the alleged interference of Associated Sourcing Holdings, Inc. The value to Movie Gallery is approximately the same as the value to Associated Sourcing Holdings. (Smith Decl. ¶ 7). Therefore, the value of an injunction from Plaintiff's perspective would total well over this Court's jurisdictional threshold within only a few months.

Given that the Plaintiff seeks to enjoin the Defendants from all future business, the value of the injunction to the Plaintiff is well over this Court's amount in controversy threshold.

17.     Additionally, Plaintiff seeks punitive damages (Compl., "Relief," p. 11). The law is clear that a claim for punitive damages counts toward the amount in controversy. *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943); *Ryan v. State Farm Mut. Auto Ins. Co.*, 934 F.2d 276, 277 (11th Cir. 1991); *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that they cannot be recovered.").

18.     Therefore, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 and is between citizens of different states.

**WHEREFORE**, the Removing Defendants give notice that the matter bearing civil action number CV-2007-900117.00 in the Circuit Court for Houston County, Alabama is removed to the United States District Court for the Middle District of Alabama, Southern Division, and request that this Court retain jurisdiction for all further proceedings in this matter.

Respectfully submitted this 21st day of November, 2007.

_____

Charles A. Stewart III (STE067)
Quindal C. Evans (EVA040)
Attorneys for Mark W. Greenshields,
Associated Sourcing, and Associated Sourcing
Holdings, Inc.

<u>Of Counsel</u>
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7670
Facsimile: (334) 956-7870
E-mail:  cstewart@bradleyarant.com
            qevans@bradleyarant.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing on:

Jeffery M. Grantham
J. Ethan McDaniel
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to his regular mailing address, on this 21st day of November, 2007.

_____
OF COUNSEL

# Exhibit A

# alacourt.com™
The Alabama Trial Court System at your desk

Company Name: BRADLEY ARANT ROSE & WHITE LLP- MONT     User ID: QEVANS     Last login Date: 11/19/2007 Time: 3:21 PM

REAL TIME

| View Case Summary | Monitor Case | Print Case Action Summary | Print Case |

County: **38 - HOUSTON**     Case Number: **38-CV-2007-900117.00**
Name: **MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL**
Charge: **OTHER CV CASE**

## Case

See Case Detail Record from Alacourt.com version 1.

### Case Information

| | |
|---|---|
| County: | **38 - HOUSTON** |
| Case Number: | **CV 2007 900117 00** |
| JID: | **JMW JERRY M. WHITE** |
| Trial: | **B** |
| Style: | **MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL** |
| Filed: | **10/12/2007** |

### Case Type

| | |
|---|---|
| Code: | **CVXX** |
| Type: | **OTHER CV CASE** |
| Track: | |
| Status: | **A ACTIVE** |
| Plaintiffs: | **001** |
| Defendants: | **003** |

### Court Action

| | |
|---|---|
| DJID: | |
| Court Action: | |
| Judgment For: | |
| Trial days: | **0** |

### Damages

| | |
|---|---|
| Amount: | **$0.00** |
| Compensatory: | |
| Punitive: | |
| General: | |
| None: | |

### Other Actions

| | | |
|---|---|---|
| Cont Date: | Cont #: | why: |
| RevJmt: | Admin Date: | Why: |
| Appeal Date: | Court: | Case: |
| Mistrial: | | TBNV2: |
| DSDT: | | DTYP: |

### Comments

| | |
|---|---|
| Comment 1: | |
| Comment 2: | **EQUITY CASE-4TH FLOOR** |

## Settings

## Court Dates



|   | Date: | Que: | Time: | Description: |
|---|-------|------|-------|-------------|
| 1: | 12/05/2007 | 001 | 09:00 AM | HEAR - PRELIM INJ |
| 2: | | | | - |
| 3: | | | | - |
| 4: | | | | - |

## Parties

Click on a party to view the details.

**C 001 - MOVIE GALLREY US, LLC**

**D 001 - GREENSHIELDS MARK W.**

**D 002 - ASSOCIATED SOURCING**

**D 003 - ASSOCIATED SOURCING HOLDINGS INC**

### Party Information  TC

| Party: | **C 001** | Name: | **MOVIE GALLREY US, LLC** | | | Type: | **B Business** |
|--------|-----------|-------|---------------------------|---|---|-------|----------------|
| Index: | **D GREENSHIELDS** | Alt Name: | | | | JID: | **JMW** |
| SSN: | **XXX-XX-X999** | DOB: | | Sex: | | Race: | |
| Add1: | **900 WEST MAIN STREET** | | | Add2: | | | |
| Phone: | | City: | **DOTHAN** | State: **AL** | Zip: **36301-0000** | Country: **US** | |

### Attorneys

| Attorney 1: | MCD065 | Name: | **MCDANIEL JAMES ETHAN** | City: | **BIRMINGHAM** | State: | **AL** |
|-------------|--------|-------|--------------------------|-------|----------------|--------|--------|
| Attorney 2: | GRA048 | Name: | **GRANTHAM JEFFREY MONROE** | City: | **BIRMINGHAM** | State: | **AL** |
| Attorney 3: | MCD065 | Name: | **MCDANIEL JAMES ETHAN** | City: | **BIRMINGHAM** | State: | **AL** |

### Service Information

| Issued: | | Type: | | Reissue: | | Type: | |
|---------|---|-------|---|----------|---|-------|---|
| Return: | | Type: | | Return: | | Type: | |
| Service: | | Type: | | Service On: | | By: | |
| Answer: | | Type: | | NS not: | | NA not: | |
| Warrant: | | Type: | | Arrest: | | | |

### Court Action

| CACT: | | | Date: | | For: | | Exemptions: | |
|-------|---|---|-------|---|------|---|-------------|---|
| Amount: | **$0.00** | Cost: | **$0.00** | Other: | **$0.00** | Satisfied: | | |
| Comment: | | | | | | | | |

## Consolidated Case Action Summary

**Consolidated Case Action Summary**  38CV200790011700

| Date | Time | Code | Comments | Operator |
|------|------|------|----------|----------|
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED. | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS | |
| 10/12/2007 | 14:54:08 | FILE | FILED THIS DATE: 10/12/2007 (AV01) | AJA |
| 10/12/2007 | 14:54:09 | ORIG | ORIGIN: INITIAL FILING (AV01) | AJA |

| 10/12/2007 14:54:10 SCAN | CASE SCANNED STATUS SET TO: N (AV01) | AJA |
| 10/12/2007 14:54:11 ASSJ | ASSIGNED TO JUDGE: JERRY M. WHITE (AV01) | AJA |
| 10/12/2007 14:54:12 TDMN | BENCH/NON-JURY TRIAL REQUESTED (AV01) | AJA |
| 10/12/2007 14:54:13 STAT | CASE ASSIGNED STATUS OF: ACTIVE (AV01) | AJA |
| 10/12/2007 14:54:26 PART | MOVIE GALLREY US, LLC ADDED AS C001 (AV02) | AJA |
| 10/12/2007 14:54:27 ATTY | LISTED AS ATTORNEY FOR C001: MCDANIEL JAMES ETHAN | AJA |
| 10/12/2007 14:54:28 ATTY | LISTED AS ATTORNEY FOR C001: GRANTHAM JEFFREY MON | AJA |
| 10/12/2007 14:54:29 ATTY | LISTED AS ATTORNEY FOR C001: MCDANIEL JAMES ETHAN | AJA |
| 10/12/2007 14:55:18 PART | GREENSHIELDS MARK W. ADDED AS D001 (AV02) | AJA |
| 10/12/2007 14:55:19 ATTY | LISTED AS ATTORNEY FOR D001: PRO SE (AV02) | AJA |
| 10/12/2007 14:55:20 SUMM | CERTIFIED MAI ISSUED: 10/12/2007 TO D001 (AV02) | AJA |
| 10/12/2007 14:56:13 PART | ASSOCIATED SOURCING ADDED AS D002 (AV02) | AJA |
| 10/12/2007 14:56:14 ATTY | LISTED AS ATTORNEY FOR D002: PRO SE (AV02) | AJA |
| 10/12/2007 14:56:15 SUMM | CERTIFIED MAI ISSUED: 10/12/2007 TO D002 (AV02) | AJA |
| 10/12/2007 14:56:26 PART | ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY | AJA |
| 10/12/2007 14:56:27 ATTY | LISTED AS ATTORNEY FOR D003: PRO SE (AV02) | AJA |
| 10/12/2007 14:56:28 SUMM | CERTIFIED MAI ISSUED: 10/12/2007 TO D003 (AV02) | AJA |
| 10/12/2007 15:04:05 EMOT | C001-OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION FILED. | MCD065 |

| | Description |
| EXHIBIT | Exhibit A |
| MOTION | Motion for Preliminary Injunction |
| MOTION_COVER_SHEET | Motion Cover Sheet |

| 10/12/2007 15:11:23 EMOT | MOTION - TRANSMITTAL | MCD065 |

| | Description |
| E_NOTICES | EMAIL TRANSMITTALS |

| 10/15/2007 14:31:06 EMOT | C001-OTHER ($50.00) /DOCKETED | CIP |
| 10/16/2007 08:04:29 JEMOT | ORDER GENERATED FOR OTHER ($50.00) | JMW |

| | Description |

ORDER                          ORDER

☒ 10/16/2007 08:04:47 JEMOT ORDER - TRANSMITTAL                                              JMW

                               Description

E_NOTICES                      EMAIL TRANSMITTALS

  10/16/2007 11:48:41 DAT1    SET FOR: PRELIM INJ ON 12/05/2007 AT 0900A (AV01)              CYP

☒ 10/26/2007 15:14:42 EADD   SERVICE RETURN - TRANSMITTAL

                               Description

E_NOTICES                      EMAIL TRANSMITTALS

  10/26/2007 16:29:30 SERC    SERVICE OF CERTIFIED MAI ON 10/22/2007 FOR D001              AJA

  10/26/2007 16:29:36 SERC    SERVICE OF CERTIFIED MAI ON 10/22/2007 FOR D002              AJA

  10/26/2007 16:29:42 SERC    SERVICE OF CERTIFIED MAI ON 10/22/2007 FOR D003              AJA

☒ 10/26/2007 17:33:53 EADD   SERVICE RETURN - TRANSMITTAL

                               Description

E_NOTICES                      EMAIL TRANSMITTALS

**Images**    38-CV-2007-900117.00

| Key | Date | Pages | Type | Name | Description | Key Words |
|---|---|---|---|---|---|---|
| 38-CV-2007-900117.00 | 10/12/2007 | 1 | E-FILE | | E-FILE COMPLAINT | CIVIL_COVER_SHEET |
| 38-CV-2007-900117.00 | 10/12/2007 | 12 | E-FILE | | E-FILE COMPLAINT | COMPLAINT |
| 38-CV-2007-900117.00 | 10/12/2007 | 6 | E-FILE | | E-FILE COMPLAINT | SUPPORTING DOCUMENT |
| 38-CV-2007-900117.00 | 10/12/2007 | 1 | E-FILE | | E-FILE COMPLAINT | SUPPORTING DOCUMENT |
| 38-CV-2007-900117.00 | 10/12/2007 | 3 | E-FILE | | E-FILE | COMPLAINT - SUMMONS |
| 38-CV-2007-900117.00 | 10/12/2007 | 1 | E-FILE | | E-FILE MOTION | MOTION - OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION Motion Cover Sheet |
| 38-CV-2007-900117.00 | 10/12/2007 | 5 | E-FILE | | E-FILE MOTION | MOTION - OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION Motion for Preliminary Injunction |
| 38-CV-2007-900117.00 | 10/12/2007 | 6 | E-FILE | | E-FILE MOTION | MOTION - OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION Exhibit A |
| 38-CV-2007-900117.00 | 10/12/2007 | 6 | E-FILE | | E-FILE | MOTION - TRANSMITTAL |
| 38-CV-2007-900117.00 | 10/16/2007 | 1 | E-FILE | | E-FILE ORDER | ORDER FOR OTHER ($50.00) |
| 38-CV-2007-900117.00 | 10/16/2007 | 5 | E-FILE | | E-FILE | ORDER - TRANSMITTAL |

| 38-CV-2007-900117.00 | 10/26/2007 | 1 | CV CASE | | | RETURN OF SERVICE | |
|---|---|---|---|---|---|---|---|
| 38-CV-2007-900117.00 | 10/26/2007 | 1 | CV CASE | | | RETURN OF SERVICE | |
| 38-CV-2007-900117.00 | 10/26/2007 | 1 | CV CASE | | | RETURN OF SERVICE | |
| 38-CV-2007-900117.00 | 10/26/2007 | 2 | E-FILE | | | E-FILE | SERVICE RETURN - TRANSMITTAL |
| 38-CV-2007-900117.00 | 10/26/2007 | 1 | E-FILE | | | E-FILE | SERVICE RETURN - TRANSMITTAL |
| 38-CV-2007-900117.00 | 11/5/2007 | 4 | CV CASE | GREENSHEILDS MARK E, ET AL | BANKRUPTCY | MOVIE GALLERY US - NOTICE OF COMMENCEMENT OF CHAPTER 11 CASE, MEETING OF CREDITORS AND DEADLINES FOR CREDITORS TO FILE PROOFS OF CLAIM |

## Witness List

### SJIS Witness List

## Financial

### Fee Sheet TC

| PR | NO | Acct | From | For | To | Total Due | Amt Paid | Balance | Hold Amt |
|---|---|---|---|---|---|---|---|---|---|
| | | AOCC | | | 000 | $22.94 | $22.94 | $0.00 | $0.00 |
| | | CV05 | | | 000 | $301.00 | $301.00 | $0.00 | $0.00 |
| | | MJDG | | | 000 | $50.00 | $50.00 | $0.00 | $0.00 |
| | | | | | Total: | $373.94 | $373.94 | $0.00 | $0.00 |

### Financial History

| Trans Date | Trans Type | Disb Acct | Payment From/To | BATCH | Check or Receipt# | AMOUNT | Fee | TY | Attorn | Oper |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/29/2007 | R- TRANS FROM | AOCC | | C001 | 2008015 | 35110 | $22.94 | N | K | | PAD |
| 10/29/2007 | R- TRANS FROM | CV05 | | C001 | 2008015 | 35111 | $301.00 | N | K | | PAD |
| 10/29/2007 | R- TRANS FROM | MJDG | | C001 | 2008015 | 35112 | $50.00 | N | K | | PAD |

## Motions

### Motions

| | Motion | Status | Disposition | Date | Filer |
|---|---|---|---|---|---|
| | Other ($50.00) | DISPOSED | OTHER | 10/12/2007 | C001 - MOVIE GALLREY US, LLC (MCD065) |

| | County | Case Number | Date | Time | Code | Comments | | Operator |
|---|---|---|---|---|---|---|---|---|
| | 38 | CV200790011700 | 10/12/2007 | 15:04:05 | EMOT | C001-OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION FILED. | | MCD065 |

Description

| | 38 | CV200790011700 | 10/12/2007 | 15:11:23 | EMOT | MOTION - TRANSMITTAL | MCD065 |
|---|----|----------------|------------|----------|------|----------------------|--------|
| | 38 | CV200790011700 | 10/15/2007 | 14:31:06 | EMOT | C001-OTHER ($50.00) /DOCKETED | CIP |
| | 38 | CV200790011700 | 10/16/2007 | 08:04:29 | EMOT | ORDER GENERATED FOR OTHER ($50.00) | JJMW |

Description

| | 38 | CV200790011700 | 10/16/2007 | 08:04:47 | EMOT | ORDER - TRANSMITTAL | JJMW |
|---|----|----------------|------------|----------|------|---------------------|------|

## Motion Summary

| | County | Case Number | Date | Time | Code | Comments | Operator |
|---|--------|-------------|------|------|------|----------|----------|
| | 38 | CV200790011700 | 10/12/2007 | 15:04:05 | EMOT | C001-OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION FILED. | MCD065 |
| | 38 | CV200790011700 | 10/12/2007 | 15:11:23 | EMOT | MOTION - TRANSMITTAL | MCD065 |
| | 38 | CV200790011700 | 10/15/2007 | 14:31:06 | EMOT | C001-OTHER ($50.00) /DOCKETED | CIP |
| | 38 | CV200790011700 | 10/16/2007 | 08:04:29 | EMOT | ORDER GENERATED FOR OTHER ($50.00) | JJMW |

Description

ORDER                    ORDER

| | 38 | CV200790011700 | 10/16/2007 | 08:04:47 | EMOT | ORDER - TRANSMITTAL | JJMW |
|---|----|----------------|------------|----------|------|---------------------|------|

## Case Info

| | | | | | | |
|---|---|---|---|---|---|---|
| County: | 38 | Case N°: | CV-2007-900117.00 | Case Type: OTHER CV CASE | Amount: | $0.00 |
| Style: | MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL | | | | | |
| Filed: | 10/12/2007 | Court Action: | | CA Date: | JID: | JMW |

| | Date: | Que: | Time: | Description: |
|---|---|---|---|---|
| 1: | 12/05/2007 | 01 | 09:00 AM | HEAR - PRELIM INJ |
| 2: | | 00 | 00:00 | - |
| 3: | | 00 | 00:00 | - |
| 4: | | 00 | 00:00 | - |

## Parties

| Party | Party Name | Attorneys | Date Served | Date of Answer |
|---|---|---|---|---|
| C001 | MOVIE GALLREY US, LLC | 1. MCD065<br>2. GRA048<br>3. MCD065 | | |
| D001 | GREENSHIELDS MARK W. | 1. 000000 | 10/22/2007 | |
| D002 | ASSOCIATED SOURCING | 1. 000000 | 10/22/2007 | |
| D003 | ASSOCIATED SOURCING HOLDINGS | 1. 000000 | 10/22/2007 | |

## Motions

| Case Action Summary - 38CV200790011700 | | | | |
|---|---|---|---|---|
| Date | Time | Code | Comments | Operator |
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED. | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS | |
| 10/12/2007 | 2:54:08 | FILE | FILED THIS DATE: 10/12/2007     (AV01) | AJA |
| 10/12/2007 | 2:54:09 | ORIG | ORIGIN: INITIAL FILING         (AV01) | AJA |
| 10/12/2007 | 2:54:10 | SCAN | CASE SCANNED STATUS SET TO: N     (AV01) | AJA |
| 10/12/2007 | 2:54:11 | ASSJ | ASSIGNED TO JUDGE: JERRY M. WHITE     (AV01) | AJA |
| 10/12/2007 | 2:54:12 | TDMN | BENCH/NON-JURY TRIAL REQUESTED     (AV01) | AJA |
| 10/12/2007 | 2:54:13 | STAT | CASE ASSIGNED STATUS OF: ACTIVE     (AV01) | AJA |
| 10/12/2007 | 2:54:26 | PART | MOVIE GALLREY US, LLC ADDED AS C001     (AV02) | AJA |
| 10/12/2007 | 2:54:27 | ATTY | LISTED AS ATTORNEY FOR C001: MCDANIEL JAMES ETHAN | AJA |
| 10/12/2007 | 2:54:28 | ATTY | LISTED AS ATTORNEY FOR C001: GRANTHAM JEFFERY MON | AJA |
| 10/12/2007 | 2:54:29 | ATTY | LISTED AS ATTORNEY FOR C001: MCDANIEL JAMES ETHAN | AJA |
| 10/12/2007 | 2:55:18 | PART | GREENSHIELDS MARK W. ADDED AS D001     (AV02) | AJA |
| 10/12/2007 | 2:55:19 | ATTY | LISTED AS ATTORNEY FOR D001: PRO SE     (AV02) | AJA |
| 10/12/2007 | 2:55:20 | SUMM | CERTIFIED MAI ISSUED: 10/12/2007 TO D001     (AV02) | AJA |
| 10/12/2007 | 2:56:13 | PART | ASSOCIATED SOURCING ADDED AS D002     (AV02) | AJA |
| 10/12/2007 | 2:56:14 | ATTY | LISTED AS ATTORNEY FOR D002: PRO SE     (AV02) | AJA |
| 10/12/2007 | 2:56:15 | SUMM | CERTIFIED MAI ISSUED: 10/12/2007 TO D002     (AV02) | AJA |
| 10/12/2007 | 2:56:26 | PART | ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY | AJA |
| 10/12/2007 | 2:56:27 | ATTY | LISTED AS ATTORNEY FOR D003: PRO SE     (AV02) | AJA |
| 10/12/2007 | 2:56:28 | SUMM | CERTIFIED MAI ISSUED: 10/12/2007 TO D003     (AV02) | AJA |
| 10/12/2007 | 3:04:05 | EMOT | C001-OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION FILED. | MCD065 |
| 10/12/2007 | 3:11:23 | EMOT | MOTION - TRANSMITTAL | MCD065 |
| 10/15/2007 | 2:31:06 | EMOT | C001-OTHER ($50.00) /DOCKETED | CJP |
| 10/16/2007 | 8:04:29 | JEMOT | ORDER GENERATED FOR OTHER ($50.00) | JMW |
| 10/16/2007 | 8:04:47 | JEMOT | ORDER - TRANSMITTAL | JMW |
| 10/16/2007 | 11:48:41 | DAT1 | SET FOR: PRELIM INJ ON 12/05/2007 AT 0900A (AV01) | CYP |
| 10/26/2007 | 3:14:42 | EADD | SERVICE RETURN - TRANSMITTAL | |
| 10/26/2007 | 4:29:30 | SERC | SERVICE OF CERTIFIED MAI ON 10/22/2007 FOR D001 | AJA |
| 10/26/2007 | 4:29:36 | SERC | SERVICE OF CERTIFIED MAI ON 10/22/2007 FOR D002 | AJA |
| 10/26/2007 | 4:29:42 | SERC | SERVICE OF CERTIFIED MAI ON 10/22/2007 FOR D003 | AJA |
| 10/26/2007 | 5:33:53 | EADD | SERVICE RETURN - TRANSMITTAL | |

 **END OF THE REPORT**

**ALABAMA SJIS CASE DETAIL**

<u>WHITE LLP- MONT</u>                                  <u>PREPARED FOR: QUINDAL C. EVANS</u>



County: **38**    Case Number: **CV 2007 900117 00**    Court Action:
Style: **MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL**

## Case

### Case Information
| | |
|---|---|
| County: | 38 - HOUSTON |
| Case Number: | CV 2007 900117 00 |
| JID: | JMW JERRY M. WHITE |
| Trial: | B |
| Style: | MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL |
| Filed: | 10/12/2007 |

### Case Type
| | |
|---|---|
| Code: | CVXX |
| Type: | OTHER CV CASE |
| Track | |
| Status: | A |
| Plaintiffs: | 001 |
| Defendants: | 003 |

### Court Action
| | |
|---|---|
| DJID: | |
| Court Action: | |
| Judgment For: | |
| Trial days: | 0 |
| Lien: | 0 |

### Damages
| | |
|---|---|
| Amount: | $0.00 |
| Compensatory: | $0.00 |
| Punitive: | $0.00 |
| General: | $0.00 |
| None: | |

### Other Actions
| | | | | | |
|---|---|---|---|---|---|
| Con Date: | | Cont #: | | Why: | |
| RevJmt: | | Admin Date: | | Why: | |
| Appeal Date: | | Court: | | Case: | |
| Mistrial: | | | | | |
| TBNV2: | | DSDT: | | DTYP: | |

### Comments
Comment 1:
Comment 2:    EQUITY CASE-4TH FLOOR

## Settings

### Court Dates
| | Date: | Que: | Time: | Description: |
|---|---|---|---|---|
| 1: | 12/09/2007 | 001 | 09:00 AM | HEAR - PRELIM INJ |
| 2: | | | | |
| 3: | | | | |
| 4: | | | | |

## Party 1 - C 001 - MOVIE GALLREY US, LLC

### Party Information
| | | | | | | |
|---|---|---|---|---|---|---|
| Party: | C 001 | Name: | MOVIE GALLREY US, LLC | | Type: | B Business |
| Index: | Y | Alt Name: | | | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: | |
| Address 1: | 900 WEST MAIN STREET | | | Address 2: | | |
| Phone: | 334 | City: | DOTHAN | State: | AL | Zip: 36301-0000 | Country: US |
| Dock: | | Notice: | | Entered: | | |

### Attorneys
Attorney 1: MCD065    Name: MCDANIEL JAMES ETHAN                    City: BIRMINGHAM    State: AL

| Attorney 2: | GRA048 | Name: | GRANTHAM JEFFREY MONROE | City: | BIRMINGHAM | State: | AL |
| Attorney 3: | MCD066 | Name: | MCDANIEL JAMES ETHAN | City: | BIRMINGHAM | State: | AL |
| Attorney 4: | | Name: | | City: | | State: | |
| Attorney 5: | | Name: | | City: | | State: | |
| Attorney 6: | | Name: | | City: | | State: | |

### Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | Type: | Reissue: | | Type: | |
| Return: | Type: | Return: | | Type: | |
| Service: | Type: | Service On: | | By: | |
| Answer: | Type: | NS Not: | | NA Not: | |
| Warrant | Type: | Arrest: | | | |

### Court Action

| | | | | |
|---|---|---|---|---|
| CACT: | Date: | For | | Exempt: |
| Amount: | $0.00 | Cost: | $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | | |

## Party 2 - D 001 - GREENSHIELDS MARK W.

### Party Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Party: | D 001 | Name: | GREENSHIELDS MARK W. | | Type: | I Individual |
| Index: | Y | Alt Name: | | | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: | |
| Address 1: | 15715 NE 135TH STREET | | | Address 2: | | |
| Phone: | 334 | City: | REDMOND | State: WA | Zip: 98052-0000 | Country: US |
| Dock: | | Notice: | | Entered: | | |

### Attorneys

| | | | | |
|---|---|---|---|---|
| Attorney 1: | Name: | | City: | State: |
| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: 10/12/2007 | Type: C Certified mail | Reissue: | | Type: | |
| Return: | Type: | Return: | | Type: | |
| Service: 10/22/2007 | Type: C Certified Mail | Service On: | | By: | |
| Answer: | Type: | NS Not: | | NA Not: | |
| Warrant | Type: | Arrest: | | | |

### Court Action

| | | | | |
|---|---|---|---|---|
| CACT: | Date: | For | | Exempt: |
| Amount: | $0.00 | Cost: | $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | | |

## Party 3 - D 002 - ASSOCIATED SOURCING

## Party Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Party: | D 002 | Name: | ASSOCIATED SOURCING | | Type: | B Business |
| Index: | Y | Alt Name: | | | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: | |
| Address 1: | 15715 NE 135TH STREET | | | Address 2: | | |
| Phone: | 334 | City: | REDMOND | State: | WA | Zip: | 98052-0000 | Country: | US |
| Dock: | | Notice: | | Entered: | | |

## Attorneys

| | | | | |
|---|---|---|---|---|
| Attorney 1: | Name: | | City: | State: |
| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

## Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | 10/12/2007 | Type: | C Certified mail | Reissue: | Type: |
| Return: | | Type: | | Return: | Type: |
| Service: | 10/22/2007 | Type: | C Certified Mail | Service On: | By: |
| Answer: | | Type: | | NS Not: | NA Not: |
| Warrant | | Type: | | Arrest: | |

## Court Action

| | | | | | | |
|---|---|---|---|---|---|---|
| CACT: | | Date: | | For: | | Exempt: | |
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: | |
| Comment: | | | | | | |

### Party 4 - D 003 - ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY

## Party Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Party: | D 003 | Name: | ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY | | Type: | B Business |
| Index: | Y | Alt Name: | | | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | Race: | |
| Address 1: | 15715 NE 135TH STREET | | | Address 2: | | |
| Phone: | 334 | City: | REDMOND | State: | WA | Zip: | 98052-0000 | Country: | US |
| Dock: | | Notice: | | Entered: | | |

## Attorneys

| | | | | |
|---|---|---|---|---|
| Attorney 1: | Name: | | City: | State: |
| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

## Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | 10/12/2007 | Type: | C Certified mail | Reissue: | Type: |
| Return: | | Type: | | Return: | Type: |
| Service: | 10/22/2007 | Type: | C Certified Mail | Service On: | By: |
| Answer: | | Type: | | NS Not: | NA Not: |
| Warrant | | Type: | | Arrest: | |

**Court Action**

| CACT: | | Date: | | For: | | Exempt: | |
|---|---|---|---|---|---|---|---|
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: | |
| Comment: | | | | | | | |

**Case Action Summary - 38CV200790011700**

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS | |
| 10/12/2007 | 2:54:08 | FILE | FILED THIS DATE: 10/12/2007          (AV01) | AJA |
| 10/12/2007 | 2:54:09 | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 10/12/2007 | 2:54:10 | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 10/12/2007 | 2:54:11 | ASSJ | ASSIGNED TO JUDGE: JERRY M. WHITE          (AV01) | AJA |
| 10/12/2007 | 2:54:12 | TDMN | BENCH/NON-JURY TRIAL REQUESTED          (AV01) | AJA |
| 10/12/2007 | 2:54:13 | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 10/12/2007 | 2:54:26 | PART | MOVIE GALLERY US, LLC ADDED AS C001          (AV01) | AJA |
| 10/12/2007 | 2:54:27 | ATTY | LISTED AS ATTORNEY FOR C001: MCDANIEL JAMES ETHAN | AJA |
| 10/12/2007 | 2:54:28 | ATTY | LISTED AS ATTORNEY FOR C001: GRANTHAM JEFFREY MON | AJA |
| 10/12/2007 | 2:54:29 | ATTY | LISTED AS ATTORNEY FOR C001: MCDANIEL JAMES ETHAN | AJA |
| 10/12/2007 | 2:55:18 | PART | GREENSHIELDS MARK W. ADDED AS D001          (AV02) | AJA |
| 10/12/2007 | 2:55:19 | ATTY | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 10/12/2007 | 2:55:20 | SUMM | CERTIFIED MAIL ISSUED: 10/12/2007 TO D001          (AV02) | AJA |
| 10/12/2007 | 2:56:13 | PART | ASSOCIATED SOURCING ADDED AS D002          (AV02) | AJA |
| 10/12/2007 | 2:56:14 | ATTY | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 10/12/2007 | 2:56:15 | SUMM | CERTIFIED MAIL ISSUED: 10/12/2007 TO D002          (AV02) | AJA |
| 10/12/2007 | 2:56:26 | PART | ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY | AJA |
| 10/12/2007 | 2:56:27 | ATTY | LISTED AS ATTORNEY FOR D003: PRO SE          (AV02) | AJA |
| 10/12/2007 | 2:56:28 | SUMM | CERTIFIED MAIL ISSUED: 10/12/2007 TO D003          (AV02) | AJA |
| 10/12/2007 | 3:04:05 | EMOT | C001-OTHER ($50.00) - MOTION FOR PRELIMINARY INJUNCTION FILED. | MCD065 |
| 10/12/2007 | 3:11:23 | EMOT | MOTION - TRANSMITTAL | MCD065 |
| 10/15/2007 | 2:31:06 | EMOT | C001-OTHER ($50.00) /DOCKETED | CIP |
| 10/16/2007 | 8:04:29 | JEMOT | ORDER GENERATED FOR OTHER ($50.00) | JMW |
| 10/16/2007 | 8:04:47 | JEMOT | ORDER - TRANSMITTAL | JMW |
| 10/16/2007 | 11:48:41 | DAT1 | SET FOR: PRELIM INJ ON 12/05/2007 AT 0900A (AV01) | CYP |
| 10/26/2007 | 3:14:42 | EADD | SERVICE RETURN - TRANSMITTAL | |
| 10/26/2007 | 4:29:30 | SERC | SERVICE OF CERTIFIED MAIL ON 10/22/2007 FOR D001 | AJA |
| 10/26/2007 | 4:29:36 | SERC | SERVICE OF CERTIFIED MAIL ON 10/22/2007 FOR D002 | AJA |
| 10/26/2007 | 4:29:42 | SERC | SERVICE OF CERTIFIED MAIL ON 10/22/2007 FOR D003 | AJA |
| 10/26/2007 | 5:33:53 | EADD | SERVICE RETURN - TRANSMITTAL | |

**END OF THE REPORT**



|     | Date: | Que: | Time: | Description: |
|-----|-------|------|-------|-------------|
| 1:  | 12/05/2007 | 001 | 09:00 AM | HEAR - PRELIM INJ |
| 2:  |       |      |       | - |
| 3:  |       |      |       | - |
| 4:  |       |      |       | - |

## Parties

Click on a party to view the details.

C 001 - MOVIE GALLREY US, LLC

D 001 - GREENSHIELDS MARK W.

D 002 - ASSOCIATED SOURCING

D 003 - ASSOCIATED SOURCING HOLDINGS INC

### Party Information  TC

| Party: | C 001 | Name: | MOVIE GALLREY US, LLC | | | Type: | B Business |
|--------|-------|-------|-----------------------|---|---|-------|------------|
| Index: | D GREENSHIELDS | Alt Name: | | | | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | | Race: | |
| Add1: | 900 WEST MAIN STREET | | | Add2: | | | |
| Phone: | | City: | DOTHAN | State: AL | Zip: 36301-0000 | Country: US | |

### Attorneys

| Attorney 1: | MCD065 | Name: | MCDANIEL JAMES ETHAN | City: | BIRMINGHAM | State: | AL |
|-------------|--------|-------|----------------------|-------|------------|--------|-----|
| Attorney 2: | GRA048 | Name: | GRANTHAM JEFFREY MONROE | City: | BIRMINGHAM | State: | AL |
| Attorney 3: | MCD065 | Name: | MCDANIEL JAMES ETHAN | City: | BIRMINGHAM | State: | AL |

### Service Information

| Issued: | | Type: | | Reissue: | | Type: | |
|---------|---|-------|---|----------|---|-------|---|
| Return: | | Type: | | Return: | | Type: | |
| Service: | | Type: | | Service On: | | By: | |
| Answer: | | Type: | | NS not: | | NA not: | |
| Warrant: | | Type: | | Arrest: | | | |

### Court Action

| CACT: | | | Date: | | For: | Exemptions: | |
|-------|---|---|-------|---|------|-------------|---|
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: | |
| Comment: | | | | | | | |

## Consolidated Case Action Summary

### Consolidated Case Action Summary  38CV200790011700

| Date | Time | Code | Comments | Operator |
|------|------|------|----------|----------|
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED. | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS | |
| 10/12/2007 | 14:54:08 | FILE | FILED THIS DATE: 10/12/2007 (AV01) | AJA |
| 10/12/2007 | 14:54:09 | ORIG | ORIGIN: INITIAL FILING (AV01) | AJA |

|  | Date: | Que: | Time: | Description: |
|---|---|---|---|---|
| 1: | 12/05/2007 | 001 | 09:00 AM | HEAR - PRELIM INJ |
| 2: |  |  |  | - |
| 3: |  |  |  | - |
| 4: |  |  |  | - |

## Parties

Click on a party to view the details.

C 001 - MOVIE GALLREY US, LLC

D 001 - GREENSHIELDS MARK W.

D 002 - ASSOCIATED SOURCING

D 003 - ASSOCIATED SOURCING HOLDINGS INC

### Party Information  TC

| Party: | D 001 | Name: | GREENSHIELDS MARK W. | Type: | I Individual |
|---|---|---|---|---|---|
| Index: | C MOVIE GALLRE | Alt Name: |  | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | Sex: | Race: |  |
| Add1: | 15715 NE 135TH STREET |  | Add2: |  |  |
| Phone: |  | City: | REDMOND | State: WA Zip: 98052-0000 | Country: US |

### Attorneys

### Service Information

| Issued: | 10/12/2007 | Type: | C Certified mail | Reissue: | Type: |
|---|---|---|---|---|---|
| Return: |  | Type: |  | Return: | Type: |
| Service: | 10/22/2007 | Type: | C Certified Mail | Service On: | By: |
| Answer: |  | Type: |  | NS not: | NA not: |
| Warrant: |  | Type: |  | Arrest: |  |

### Court Action

| CACT: |  |  |  | Date: |  | For: |  | Exemptions: |  |
|---|---|---|---|---|---|---|---|---|---|
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: |  |  |  |
| Comment: |  |  |  |  |  |  |  |  |  |

## Consolidated Case Action Summary

### Consolidated Case Action Summary  38CV200790011700

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED. | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS |  |
| 10/12/2007 | 14:54:08 | FILE | FILED THIS DATE: 10/12/2007 (AV01) | AJA |
| 10/12/2007 | 14:54:09 | ORIG | ORIGIN: INITIAL FILING (AV01) | AJA |

|     | Date: | Que: | Time: | Description: |
|-----|-------|------|-------|--------------|
| 1:  | 12/05/2007 | 001 | 09:00 AM | HEAR - PRELIM INJ |
| 2:  |       |      |       | - |
| 3:  |       |      |       | - |
| 4:  |       |      |       | - |

## Parties

Click on a party to view the details.

C 001 - MOVIE GALLREY US, LLC

D 001 - GREENSHIELDS MARK W.

D 002 - ASSOCIATED SOURCING

D 003 - ASSOCIATED SOURCING HOLDINGS INC

### Party Information TC

| Party: | D 002 | Name: | ASSOCIATED SOURCING | | | Type: | B Business |
|--------|-------|-------|---------------------|---|---|-------|------------|
| Index: | C MOVIE GALLRE | Alt Name: | | | | JID: | JMW |
| SSN: | XXX-XX-X999 | DOB: | | Sex: | | Race: | |
| Add1: | 15715 NE 135TH STREET | | | Add2: | | | |
| Phone: | | City: | REDMOND | State: WA | Zip: 98052-0000 | Country: | US |

### Attorneys

### Service Information

| Issued: | 10/12/2007 | Type: | C Certified mail | Reissue: | | Type: | |
|---------|-----------|-------|------------------|----------|---|-------|---|
| Return: | | Type: | | Return: | | Type: | |
| Service: | 10/22/2007 | Type: | C Certified Mail | Service On: | | By: | |
| Answer: | | Type: | | NS not: | | NA not: | |
| Warrant: | | Type: | | Arrest: | | | |

### Court Action

| CACT: | | | | Date: | | For: | | Exemptions: | |
|-------|---|---|---|-------|---|------|---|-------------|---|
| Amount: | $0.00 | Cost: | $0.00 | Other: | $0.00 | Satisfied: | | | |
| Comment: | | | | | | | | | |

## Consolidated Case Action Summary

### Consolidated Case Action Summary   38CV200790011700

| Date | Time | Code | Comments | Operator |
|------|------|------|----------|----------|
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED. | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS | |
| 10/12/2007 | 14:54:08 | FILE | FILED THIS DATE: 10/12/2007 (AV01) | AJA |
| 10/12/2007 | 14:54:09 | ORIG | ORIGIN: INITIAL FILING (AV01) | AJA |

| | Date: | Due: | Time: | Description: |
|---|---|---|---|---|
| 1: | 12/05/2007 | 001 | 09:00 AM | HEAR - PRELIM INJ |
| 2: | | | | - |
| 3: | | | | - |
| 4: | | | | - |

## Parties

Click on a party to view the details.

C 001 - MOVIE GALLREY US, LLC

D 001 - GREENSHIELDS MARK W.

D 002 - ASSOCIATED SOURCING

D 003 - ASSOCIATED SOURCING HOLDINGS INC

### Party Information   TC

| | | | |
|---|---|---|---|
| Party: **D 003** | Name: | **ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY** | Type: **B Business** |
| Index: **C MOVIE GALLRE** | Alt Name: | | JID: **JMW** |
| SSN: **XXX-XX-X999** | DOB: | Sex: | Race: |
| Add1: **15715 NE 135TH STREET** | | Add2: | |
| Phone: | City: **REDMOND** | State: **WA**  Zip: **98052-0000** | Country: **US** |

### Attorneys

### Service Information

| | | | | | |
|---|---|---|---|---|---|
| Issued: | **10/12/2007** | Type: **C Certified mail** | Reissue: | Type: |
| Return: | | Type: | Return: | Type: |
| Service: | **10/22/2007** | Type: **C Certified Mail** | Service On: | By: |
| Answer: | | Type: | NS not: | NA not: |
| Warrant: | | Type: | Arrest: | |

### Court Action

| | | | | |
|---|---|---|---|---|
| CACT: | | Date: | For: | Exemptions: |
| Amount: | **$0.00** | Cost: **$0.00** | Other: **$0.00** | Satisfied: |
| Comment: | | | | |

## Consolidated Case Action Summary

### Consolidated Case Action Summary   38CV200790011700

| Date | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 10/12/2007 | 12:35:37 | EFILE | COMPLAINT E-FILED. | MCD065 |
| 10/12/2007 | 12:35:55 | EFILE | COMPLAINT - SUMMONS | |
| 10/12/2007 | 14:54:08 | FILE | FILED THIS DATE: 10/12/2007 (AV01) | AJA |
| 10/12/2007 | 14:54:09 | ORIG | ORIGIN: INITIAL FILING (AV01) | AJA |

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93  Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>**38-CV-200**<br>Date of Filing:<br>10/12/2007 | ELECTRONICALLY FILED<br>10/12/2007 12:35 PM<br>CV-2007-900117.00<br>CIRCUIT COURT OF<br>HOUSTON COUNTY, ALABAMA<br>CARLA H. WOODALL, CLERK |

## GENERAL INFORMATION

### IN THE CIRCUIT OF HOUSTON COUNTY, ALABAMA
### MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL

**First Plaintiff:** ☑ Business  ☐ Individual   **First Defendant:** ☐ Business  ☑ Individual
☐ Government  ☐ Other                            ☐ Government  ☐ Other

### NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonnes
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**

- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP-Contempt of Court
- ☐ CONT-Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD-Eviction Appeal/Unlawfyul Detainer
- ☐ FORJ-Foreign Judgment
- ☐ FORF-Fruits of Crime Forfeiture
- ☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB-Protection From Abuse
- ☐ FELA-Railroad/Seaman (FELA)
- ☐ RPRO-Real Property
- ☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP-Workers' Compensation
- ☑ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ **INITIAL FILING**   A ☐ **APPEAL FROM DISTRICT COURT**   O ☐ **OTHER**

R ☐ **REMANDED**   T ☐ **TRANSFERRED FROM OTHER CIRCUIT COURT**  _____

**HAS JURY TRIAL BEEN DEMANDED?**  ☐ Yes  ☑ No

**RELIEF REQUESTED:**   ☐ MONETARY AWARD REQUESTED   ☑ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**  MCD065   10/12/2007 12:29:11 PM   /s JAMES MCDANIEL

**MEDIATION REQUESTED:**  ☐ Yes  ☑ No  ☐ Undecided

ELECTRONICALLY FILED
10/12/2007 12:35 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

| | |
|---|---|
| **MOVIE GALLERY US, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )    **CIVIL ACTION NO. _____** |
| **MARK W. GREENSHIELDS,** | ) |
| **ASSOCIATED SOURCING, and** | ) |
| **ASSOCIATED SOURCING HOLDINGS,** | ) |
| **INC. d/b/a VIDEO LIBRARY** | ) |
| | ) |
| **Defendants.** | |

## COMPLAINT AND REQUEST FOR RELIEF

Plaintiff Movie Gallery US, LLC ("Movie Gallery" or "Plaintiff") for its Complaint against Defendants Mark W. Greenshields ("Greenshields"), Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library ("Associated Sourcing") (collectively "Defendants") states as follows:

## INTRODUCTION

1. Plaintiff's claims arise out of Defendants' misappropriation and use of Plaintiff's trade secrets and Confidential Information in breach of the express provisions of the Confidentiality Agreement entered into by Plaintiff and Defendants and in contravention of Alabama law.

## PARTIES AND JURISDICTION

2. Plaintiff Movie Gallery is a Delaware limited liability company with its principal place of business in Dothan, Alabama.

3. Defendant Mark W. Greenshields is an individual resident of the State of Washington.

- 1 -

01550762.1

4.     Defendant Associated Sourcing is a sole proprietorship existing under the laws of the State of Washington.

5.     Defendant Associated Sourcing Holdings, Inc d/b/a Video Library is a corporation existing under the laws of the State of Washington.

6.     The amount in controversy in this case is well in excess of the statutory minimum required for this Court to exercise its jurisdiction.

7.     Defendants have sufficient contacts with the State of Alabama to satisfy the requirements of Due Process and traditional notions of fair play and substantial justice.

8.     Venue in this Court is proper under Ala. R. Civ. P. 82 and Ala. Code §§ 6-3-2; 6-3-7.

## **FACTUAL BACKGROUND**

9.     Plaintiff is an entertainment and retail company with video stores located throughout the United States.

10.     Movie Gallery currently operates Video Library, a movie racking business. In so doing, Movie Gallery enters into agreements with retail stores, such as grocery and convenient stores, whereby Movie Gallery places "racks" in these various retail stores. VHS and DVD versions of movies are placed on the racks and are available for rent or sale to customers of these retail stores. Essentially, the Video Library functions as a miniature video rental store inside the larger retail store. Video Library also enters into sell-through agreements with these retail stores, through which customers may purchase movies at the retail stores.

11.     On or around October of 2006, Movie Gallery engaged in negotiations with Defendants Greenshields and Associated Sourcing regarding their potential purchase of the Video Library business from Movie Gallery.

- 2 -

01550762.1

12.     In conjunction with these negotiations, Greenshields and Associated Sourcing entered into a confidentiality agreement ("the Confidentiality Agreement") with Movie Gallery on October 30, 2006.    Attached hereto as Exhibit A.    The purpose of the Confidentiality Agreement was to restrict Defendants' use and disclosure of certain confidential information set forth therein ("Confidential Information") regarding Video Library that was necessary to provide to Defendants for purposes of the negotiations regarding Defendants' plan to purchase Video Library from Movie Gallery.    Pursuant to the Confidentiality Agreement, Defendants acknowledged that the Confidential Information disclosed to Defendants constituted a "valuable asset" to Movie Gallery.    See Exhibit A at ¶ 2(a).    The Confidentiality Agreement expressly states:

> [a]bsent [Movie Gallery's] prior written consent, the [Defendants] shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by [Movie Gallery] and/or [Movie Gallery's] Affiliates.

> See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

> "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products,** as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other

- 3 -

facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

13.     During the course of negotiations between Defendants and Movie Gallery regarding Defendants' possible purchase of the Video Library business from Movie Gallery, Confidential Information belonging solely to Movie Gallery was disclosed to Defendants, pursuant to the Confidentiality Agreement.  Information constituting trade secrets of Movie Gallery also was disclosed.  Specifically, lists of customers to which Movie Gallery was under contract to provide Video Library services and "Racking Locations" were divulged to Defendants.

14.     On or around May 21, 2007, the Board of Directors of Movie Gallery, Inc. determined that it was not in the best interest of Movie Gallery to sell the Video Library business to Defendants.

15.     Shortly after the decision not to sell the Video Library to Defendants, Defendants used their business, known as "Associated Sourcing," to engage in the exact same business as Movie Gallery's Video Library.  In direct contravention of the Confidentiality Agreement, Defendants began using trade secrets and Confidential Information owned by Movie Gallery and subject to the Confidentiality Agreement to divert customers from Movie Gallery to Defendants. Defendants also registered with the State of Washington the trade name "Video Library" in an attempt to confuse customers into thinking that they were dealing with Movie Gallery, and upon information and belief, also filed a service mark application with the United States Patent and Trademark Office to register a Video Library service mark.  In a further attempt to confuse customers, upon information and belief, Defendants even rented warehouse space formerly utilized by Movie Gallery.

- 4 -

16.     Defendants also began soliciting Movie Gallery employees with knowledge of Movie Gallery's confidential and proprietary information, as well as its trade secrets pertaining to its Video Library business to join Defendants' business.  In all, three Movie Gallery employees joined Defendants' business and directly competed against Movie Gallery using Movie Gallery's confidential and proprietary information, as well as its trade secrets to steal business away from Movie Gallery.

17.     On July 23, 2007, Movie Gallery sent Defendant Greenshields a letter reminding him of his obligations under the Confidentiality Agreement and informing Greenshields that any violation of the Confidentiality Agreement will result in legal action.  Attached hereto as Exhibit B.

18.     Notwithstanding the admonitions in the July 23, 2007 letter, Defendants wrongfully continue using Movie Gallery's confidential and proprietary information, as well as trade secrets, to solicit Movie Gallery's Video Library business away from Movie Gallery.

## COUNT I

### (Breach of Contract and Injunctive Relief)

19.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 18 above, as though fully set forth herein.

### Breach of Contract

20.     On October 30, 2006, Defendants and Plaintiff entered into the Confidentiality Agreement.  Exhibit A.

21.     Under the terms of the Confidentiality Agreement:

[a]bsent the Disclosing party's [Plaintiff] prior written consent, the Receiving Party [Defendants] shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or

- 5 -

hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

"Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products,** as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

22.    In conjunction with the discussions regarding Defendants' potential purchase of Plaintiff's Video Library business, Confidential Information, including customer lists and lists of "Racking Locations," was disclosed to Defendants pursuant to the Confidentiality Agreement.

23.    On or around May 21, 2007, the Board of Directors of Movie Gallery, Inc. determined that is was not in the best interests of Movie Gallery to sell the Video Library business to Defendants.    Shortly thereafter, Defendants used their business, known as "Associated Sourcing," to engage in the exact same business as Movie Gallery's Video Library.

24.    In breach of the express terms of the Confidentiality Agreement, Defendants have wrongfully and intentionally used Plaintiff's Confidential Information, including customer lists

- 6 -

and lists of "Racking Locations," to target and steal away customers of Movie Gallery's Movie Library racking business.

     25.     The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff, including, among other things, lost opportunity to fairly compete, lost profits, and attorneys fees. The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

### Injunctive Relief

     26.     The Confidentiality Agreement further states as follows:

> Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled. Exhibit A at ¶ 8(a).

     27.     Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

     28.     As set forth above, Defendants have breached and, upon information and belief, plan to continue to breach the Confidentiality Agreement. Accordingly, Plaintiff is entitled to injunctive relief pursuant to the Confidentiality Agreement as it has suffered immediate and irreparable injury as a result of Defendants' breaches of the Confidentiality Agreement and any future breaches will similarly result in immediate and irreparable injury to Plaintiff.

     29.     Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets in violation of the express terms of the Confidentiality Agreement. Injunctive relief would not violate any public policy of the State of Alabama.

- 7 -

30.     Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction. However, as set forth above in ¶ 43, Plaintiff is not required to post such security pursuant to the Confidentiality Agreement.

31.     Unless   Defendants   are   preliminarily   and   permanently   enjoined   from misappropriating Plaintiff's Confidential Information in breach of the Confidentiality Agreement, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm. Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

## COUNT II

### (Violation of Alabama Trade Secrets Act)

32.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 31 above, as though fully set forth herein.

33.     Plaintiff's Confidential Information taken by Defendants derives actual or potential independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use.

34.     Plaintiff takes steps to protect the confidentiality and secrecy of its Confidential Information, including without limitation, by entering into the Confidentiality Agreement with Defendants here.

35.     Defendants have, collectively and independently, misappropriated, divulged and used Plaintiff's Confidential Information in violation of Ala. Code 8-27-1 et seq. (1975).

36.     Plaintiff has not provided Defendants with its express or implied consent to misappropriate or utilize Plaintiff's Confidential Information.

- 8 -

01550762.1

37.    The misappropriation of Plaintiff's Confidential Information by Defendants was willful and malicious.

38.    As a result of the misappropriation and use of Plaintiff's Confidential Information by Defendants, Plaintiff has suffered and will continue to suffer irreparable damages.

39.    Specifically, the wrongful and illegal actions of Defendants is proximately causing damages to Plaintiff including loss of its customers and racking business. The extent of Plaintiff's damages is currently unknown and incalculable due to Defendants' attempt to conceal their misdeeds.

40.    Pursuant to Ala. Code 8-27-1 et seq. (1975), this Court may enjoin the actual or threatened misappropriation of Plaintiff's Confidential Information by Defendants.

41.    Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

42.    Further, the Confidentiality Agreement states as follows:

Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled. Exhibit A at ¶ 8(a).

43.    Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets. Injunctive relief would not violate any public policy of the State of Alabama.

44.    Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction. However, as set forth above in ¶ 29, Plaintiff is not required to post security pursuant to the Confidentiality Agreement.

- 9 -

45.    Unless Defendants are preliminarily and permanently enjoined from misappropriating Plaintiff's Confidential Information, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm.    Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

## COUNT III

### (Intentional Interference with Contractual or Business Relations)

46.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 45 above, as though fully set forth herein.

47.    In entering into the Confidentiality Agreement, Defendants knew of their obligations not to disclose Plaintiff's confidential and/or trade secret information.  Defendants, without justification, wrongfully misappropriated Plaintiff's confidential and/or trade secret information in order to gain an unfair advantage.  Defendants have, in turn, wrongfully used Plaintiff's confidential and/or trade secret information to intentionally and unfairly divert customers and racking business away from Plaintiff and to Defendants.

48.    In obtaining customers from Plaintiff's customer lists, a list that is confidential, Defendants have wrongfully interfered with Plaintiff's contractual and business relationships with its customers.

49.    The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff including, among other things, lost opportunity to fairly compete, lost profits, and attorneys fees.  The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

- 10 -

50.    Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

## RELIEF

WHEREFORE, Plaintiff requests:

(a)    That this Court issue a preliminary injunction restraining and enjoining Defendants from using or disclosing any trade secrets, Confidential Information, or proprietary information belonging to Plaintiff.

(b)    That after trial of this cause, a permanent injunction be entered against Defendants enjoining the conduct set forth above.

(c)    That this Court issue an order requiring Defendants to immediately turn over to Plaintiff any writing, document, recording and/or electronic data that contains or relates to in any way the trade secret, Confidential Information or proprietary information obtained from Plaintiff.

(d)    That Plaintiff be awarded all of its damages caused by Defendants' wrongful acts, including compensatory, punitive, and exemplary damages, along with costs and attorneys' fees incurred in bringing this action.

(e)    That Plaintiff be given such other equitable and legal relief as is just and proper under the circumstances.

Respectfully submitted by,

/s J. Ethan McDaniel
Jeffrey M. Grantham, GRA048
J. Ethan McDaniel, MCD065

Attorneys for Plaintiff Movie Gallery

OF COUNSEL:

- 11 -

01550762.1

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

## PLEASE SERVE THE FOLLOWING DEFENDANTS VIA CERTIFIED MAIL

Mark W. Greenshields
15715 NE 135th Street
Redmond, WA  98052

Associated Sourcing
15715 NE 135th Street
Redmond, WA  98052

Associated Sourcing Holdings, Inc. d/b/a Video Library
15715 NE 135th Street
Redmond, WA  98052

01550762.1

ELECTRONICALLY FILED
10/12/2007 12:35 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into as of this 30th day of OCTOBER , 2006 (the "Effective Date") by and between Mark W. Greenshields, individually, and Associated Sourcing, a sole proprietorship, (collectively "Receiving Party"), 15715 NE 135th St., Redmond, WA 98052 and Movie Gallery US, LLC, a Delaware limited liability Receiving Party, having its principal place of business at 900 West Main Street, Dothan, Alabama 36301 ("Disclosing Party").

## RECITALS

**WHEREAS,** the parties, for their mutual benefit, desire to enter into discussions regarding a potential business relationship between the parties involving Disclosing Party's movie racking business (the "Purpose");

**WHEREAS,** in order to further the Purpose, it is necessary for Disclosing Party to provide or otherwise grant to Receiving Party certain confidential and proprietary information of Disclosing Party and its Affiliates;

**WHEREAS,** the parties intend for this Agreement to extend to and otherwise protect all Confidential Information of the Disclosing Party and its Affiliates;

**NOW THEREFORE,** in consideration of the foregoing premises and the mutual covenants contained herein, the parties hereto agree as follows:

1.    **Definitions**

(a)    <u>Affiliate</u>: An affiliate means any entity that directly or indirectly is in control of, is controlled by, or is under common Control with the Disclosing Party. *"Control"* and *"Controlled"* mean the power, directly or indirectly, to direct, or to cause the direction of, the management and policies of an entity, whether through ownership of voting securities or equity interests, through common directors, trustees or officers, by contract or otherwise. The term "Disclosing Party" includes the Affiliates, if any, of the Disclosing Party.

(b)    <u>Confidential Information</u>: "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, trade secrets, technology, processes, drawings, specifications, programs, models, financial information and projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, customer and supplier lists and other valuable business information and products, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, any Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party,

1

or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

### 2.   Handling of Confidential Information

(a)   The Receiving Party acknowledges that the Confidential Information constitutes a valuable asset to the Disclosing Party.  The Receiving Party shall maintain in confidence the Confidential Information, shall not disclose the Confidential Information to anyone without the Disclosing Party's prior written consent which may be withheld in the Disclosing Party's sole discretion; provided, however, the Receiving Party may disclose the Confidential Information to employees, directors, officers, agents, Affiliates, consultants and counselors, including, but not limited to, financial, legal, accounting, tax and audit counselors (the "Receiving Party's Representatives"), who have a need-to-know such Confidential Information in connection with the Purpose, and further provided such representatives are advised of the obligations contained herein and are bound by obligations of confidentiality and non-use substantially comparable in scope with the provisions hereof. The Receiving Party shall be liable for any wrongful disclosure or use of the Confidential Information by any of the Receiving Party's Representatives.

(b)   With respect to the Confidential Information, the Receiving Party shall at least exercise such security measures and degree of care as those which the Receiving Party applies to its own confidential information, but shall not under any circumstances exercise less than a reasonable standard of care.

(c)   Except as necessary for furtherance of the Purpose, the Receiving Party agrees not to copy, reproduce, or reduce to writing any part of the Confidential Information.

(d)   Nothing in this Agreement shall be construed as requiring either party to disclose Confidential Information to the other or to render any assistance to the other.

### 3.   Limits of Confidential Information

The obligations of confidentiality of this Agreement shall not apply to any Confidential Information which:

(i)   is or comes into the public domain without breach of this Agreement;

(ii)   was received by the Receiving Party prior to receipt from the Disclosing Party from a third party other than by breach of an obligation of confidentiality owed to the Disclosing Party; or

(iii)   is independently developed by the Receiving Party without use of or reference to the Confidential Information.

In addition, each of the parties agree that any such information, ideas, suggestions and concepts commonly known in the industry related to the movie racking business that may be offered or disclosed by either party in meetings, consultations or documents exchanged between

2

the parties shall not be deemed included in the Confidential Information, and no party shall be under any obligation to any other party with respect to its use thereof.

### 4.    Other Business Activities

This Agreement shall not in any manner affect or limit either party's present or future business activities or relationships of any nature, including business activities or relationships that may be competitive with those of the other party. Each party understands that the other party and its Affiliates are or may be actively engaged in activities, investments, technology exploitation and research and development efforts (collectively "Business Activities") that are similar to its Business Activities, and that information disclosed to the other party may include, without limitation, descriptions of ideas, works in progress and projects in development that are similar to or coincident with such Business Activities of the other party. Each party further acknowledges that such Business Activities may have originated with the other party's employees or others and may duplicate, parallel or resemble portions of its Confidential Information. Each party agrees that this Agreement shall in no way limit, restrict or preclude the other party from pursuing any of its present or future Business Activities or interests, either alone or in conjunction with others, or from entering into any agreement or transaction of any kind with any other person, regardless of whether the subject matter of any such agreement or transaction involves elements similar to or coincident with Confidential Information exchanged hereunder or is in any other way similar to or coincident with any transaction considered or evaluated by the parties.

### 5.    Limitations and Disclaimer of Warranties

Absent the Disclosing Party's prior written consent, the Receiving Party shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

The parties expressly recognize that the Confidential Information is provided "AS IS". The Disclosing Party makes no warranties, express, implied, statutory or otherwise with respect to the Confidential Information and expressly disclaims all implied warranties.

### 6.    Ownership of Confidential Information

(a)    The Confidential Information is and shall remain the sole and exclusive property of the Disclosing Party.

(b)    In the event that the parties do not enter into a business relationship or either party terminates the discussions related to the Purpose, the Receiving Party shall, at the Disclosing Party's request, promptly, return all Confidential Information, including written documents or other materials embodying the Confidential Information and all copies thereof, to the Disclosing Party's principal place of business as first set forth above, and shall permanently delete any Confidential Information stored electronically and shall certify in writing to the Disclosing Party that such deletion has occurred, or, at the election of the Disclosing Party, the Receiving Party shall destroy all confidential Information received and all copies thereof and shall permanently

delete any Confidential Information stored electronically and provide written certification to the Disclosing Party that all Confidential Information, and copies thereof, in the Receiving Party's possession has been so destroyed or deleted; provided however, a Receiving Party's obligations of confidentiality pursuant hereto shall survive the return of the Confidential Information to the Disclosing Party, the deletion of Confidential Information stored electronically or destruction of the Confidential Information.

(c)     In the event that a Receiving Party receives a request or demand to disclose all or any part of the Confidential Information under the terms of a subpoena or order issued by a court of competent jurisdiction, an agency of any State of the United States or of any other jurisdiction (the "Disclosure Order"), the Receiving Party agrees to promptly notify the Disclosing Party of the existence, terms and circumstances surrounding such Disclosure Order so that such the Disclosing Party may seek a protective order or other appropriate relief or remedy and/or waive compliance with the terms of this Agreement. If, failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving Party, in the opinion of its outside legal counsel, is legally required to disclose Confidential Information, the Receiving Party may disclose such Confidential Information to the extent it is legally required to do so without liability hereunder; provided however, the Receiving Party shall disclose only that portion of the Confidential Information which it is legally required to disclose, and the Receiving Party shall exercise good faith efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the Confidential Information disclosed.

## 7.     No Commitment of Business Relationship

This Agreement shall not commit the parties to enter into a business relationship with each other absent a separate written agreement.

## 8.     Injury as a Result of Breach

(a)     Because of the uniqueness of the Confidential Information, the Receiving Party acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

(b)     No remedy conferred by this Agreement is intended to be exclusive of any other remedy and all remedies now or hereafter existing at law or in equity shall be available to the Disclosing Party. The election of any one or more remedies shall not constitute a waiver of the right to pursue other available remedies.

## 9.     Term

The obligations of this Agreement shall terminate on the later of five (5) years after the Effective Date or five (5) years after the date of termination or expiration of any written agreement entered into between the parties; provided however, the obligations of confidentiality with regard to trade secrets shall continue indefinitely so long as the secrets remain trade secrets.

4

10.   **Miscellaneous**

(a)    This Agreement constitutes the entire understanding between the parties and supersedes any oral or written agreements which may have been entered into between them on disclosure of Confidential Information. This Agreement may not be changed or terminated orally, and no change, termination or attempted waiver of any of the provisions hereto shall be binding unless in writing and signed by the party against whom the same is sought to be enforced.

(b)    If at any time during the term of this Agreement any provision hereof proves to be or becomes invalid or unenforceable under any applicable law, then such provision shall be deemed modified to the extent necessary in order to render such provision valid and enforceable. If such provision may not be so saved, it shall be severed and the remainder of this Agreement shall remain in full force and effect.

(c)    The covenants, representations and warranties contained in this Agreement shall survive its termination.

(d)    The terms of this Agreement shall be governed by, and interpreted under Alabama law, without reference to its conflicts of laws provisions.

(e)    No waiver by a party of any breach of this Agreement shall constitute a waiver of the terms and conditions of this Agreement with respect to any subsequent breach hereof.

(f)    No party may assign this Agreement without the express written consent of the other party.

(g)    Any notice or communication provided under or relating to this Agreement shall be in writing and either hand delivered, deposited in the United States mail, certified with return receipt requested, with postage prepaid, or sent PRIORITY by a nationally-recognized overnight delivery service (i.e. Federal Express, etc.) and addressed to the party at its address first set forth above. Any notice to Disclosing Party shall be sent to the attention of the General Counsel at the address first set forth above. If the addressee rejects or otherwise refuses to accept the notice, or if the notice cannot be delivered because of a change in address for which no notice was given in compliance with this Paragraph 10(g), then notice shall be deemed to have been given upon the date of rejection, refusal or inability to deliver. Notices shall be deemed delivered when actually received by the intended recipient. A change of address by a party must be by notice given to the other parties in the manner specified above.

(i)    For the convenience of the parties, this Agreement may be executed in counterparts. Each such counterpart shall be an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

(j)    If litigation or any other action of any nature whatsoever (including any proceeding under the U.S. Bankruptcy Code) is instituted in connection with any controversy arising out of this Agreement or to interpret or enforce any rights, the prevailing party shall be entitled to recover its attorneys' and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary, as determined by the court(s), in addition to all other amounts provided by law.

5

11.        Authorization

The person signing this Agreement on behalf of the undersigned has the authority to do so and to bind the undersigned to the terms hereof.

IN WITNESS WHEREOF, each party has signed this Agreement on the date(s) indicated below.

"DISCLOSING PARTY"                    "RECEIVING PARTY"

MOVIE GALLERY US, LLC                 Mark W. Greenshields, individually

By:    S. Page Todd                   By:    Mark W. Greenshields
Its:    Executive Vice President


                                      Associated Sourcing

                                      By:    Mark W. Greenshields
                                      Its:    OWNER
                                             (Title)

6



ELECTRONICALLY FILED
10/12/2007 12:35 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

Director, General Litigation
& Associate Counsel

(334) 677-2108 ext. 22618
Facsimile: (334) 836-3746

E-mail: aott@movgal.com

**Office of the General Counsel**

July 23, 2007

_Via Certified Mail, RRR_
Mr. Mark W. Greenshields
Associated Sourcing
1571 NE 135th Street
Redmond, WA 98052

Re:     Confidentiality Agreement

Dear Mr. Greenshields:

Please be advised that you remain subject to that certain Confidentiality Agreement executed by you and Movie Gallery US, LLC ("Movie Gallery") dated October 30, 2006. A violation of the Confidentiality Agreement by, or your agents, will result in immediate and irreparable injury to Movie Gallery and Movie Gallery will pursue all available legal and equitable remedies.

Movie Gallery expects you to honor your obligations under such agreement as to all Confidential Information provided to you as part of previous negotiations with you, including information provided by current or former employees of Movie Gallery who may also be subject to confidentiality agreements.

Sincerely,

Ashton Ott
Director of General Litigation
& Associate Counsel

cc:     Chris Theademan, VP – Alternative Markets

---

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>38-CV-2007-900117.00 |
|---|---|---|

IN THE CIVIL COURT OF HOUSTON, ALABAMA
MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL

NOTICE TO MARK W. GREENSHIELDS, 15715 NE 135TH STREET, REDMOND WA, 98052
_____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JAMES MCDANIEL
_____

WHOSE ADDRESS IS 1901 6TH AVENUE NORTH, SUITE 2400, BIRMINGHAM AL, 35203
_____

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of     MOVIE GALLREY US, LLC
    pursuant to the Alabama Rules of the Civil Procedure

| 10/12/2007 12:35:37 PM | /s CARLA H. WOODALL | |
|---|---|---|
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JAMES MCDANIEL |
|---|---|
| | Plaintiff's/Attorney's Signature |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____
Date

_____
Server's Signature

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>38-CV-2007-900117.00 |
|---|---|---|

### IN THE CIVIL COURT OF HOUSTON, ALABAMA
### MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL

NOTICE TO   ASSOCIATED SOURCING, 15715 NE 135TH STREET, REDMOND WA, 98052

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JAMES MCDANIEL

WHOSE ADDRESS IS 1901 6TH AVENUE NORTH, SUITE 2400, BIRMINGHAM AL, 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    MOVIE GALLREY US, LLC
pursuant to the Alabama Rules of the Civil Procedure

| 10/12/2007 12:35:37 PM | /s CARLA H. WOODALL | |
|---|---|---|
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested    /s JAMES MCDANIEL

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____    _____

Date    Server's Signature

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>38-CV-2007-900117.00 |
|---|---|---|

### IN THE CIVIL COURT OF HOUSTON, ALABAMA
### MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL

ASSOCIATED SOURCING HOLDINGS INC DBA VIDEO LIBRARY, 15715 NE 135TH STREET, REDMOND WA, 98052

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JAMES MCDANIEL _____

WHOSE ADDRESS IS 1901 6TH AVENUE NORTH, SUITE 2400, BIRMINGHAM AL, 35203 _____

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    MOVIE GALLREY US, LLC
   pursuant to the Alabama Rules of the Civil Procedure

| 10/12/2007 12:35:37 PM | /s CARLA H. WOODALL | |
|---|---|---|
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JAMES MCDANIEL |
|---|---|
| | Plaintiff's/Attorney's Signature |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____              _____
Date                              Server's Signature

| STATE OF ALABAMA<br>Unified Judicial System<br><br>38-HOUSTON | Revised 2/14/05<br><br>☐ District Court  ☑ Circuit Court | Case<br><br>CV200 | ELECTRONICALLY FILED<br>10/12/2007 3:03 PM<br>CV-2007-900117.00<br>CIRCUIT COURT OF<br>HOUSTON COUNTY, ALABAMA<br>CARLA H. WOODALL, CLERK |
|---|---|---|---|

| MOVIE GALLREY US, LLC V. MARK W.<br>GREENSHIELDS ET AL | CIVIL MOTION COVER SHEET<br>Name of Filing Party:  C001 - MOVIE GALLREY US, LLC |
|---|---|

| Name, Address, and Telephone No. of Attorney or Party. If Not Represented.<br><br>JAMES MCDANIEL<br>1901 6TH AVENUE NORTH, SUITE 2400<br>BIRMINGHAM, AL 35203<br><br>Attorney Bar No.:  MCD065 | ☑ Oral Arguments Requested |
|---|---|

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00)<br><br>☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)<br><br>☐ Judgment on the Pleadings ($50.00)<br><br>☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00)<br><br>☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)<br><br>☐ Summary Judgment pursuant to Rule 56($50.00)<br><br>☑ Other   Motion for Preliminary Injunction<br><br>pursuant to Rule   Rule 65        ($50.00)<br><br>*Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.<br><br>☐ Local Court Costs $ _____ | ☐ Add Party<br>☐ Amend<br>☐ Change of Venue/Transfer<br>☐ Compel<br>☐ Consolidation<br>☐ Continue<br>☐ Deposition<br>☐ Designate a Mediator<br>☐ Judgment as a Matter of Law (during Trial)<br>☐ Disburse Funds<br>☐ Extension of Time<br>☐ In Limine<br>☐ Joinder<br>☐ More Definite Statement<br>☐ Motion to Dismiss pursuant to Rule 12(b)<br>☐ New Trial<br>☐ Objection of Exemptions Claimed<br>☐ Pendente Lite<br>☐ Plaintiff's Motion to Dismiss<br>☐ Preliminary Injunction<br>☐ Protective Order<br>☐ Quash<br>☐ Release from Stay of Execution<br>☐ Sanctions<br>☐ Sever<br>☐ Special Practice in Alabama<br>☐ Stay<br>☐ Strike<br>☐ Supplement to Pending Motion<br>☐ Vacate or Modify<br>☐ Withdraw<br>☐ Other _____<br>pursuant to Rule _____   (Subject to Filing Fee) |

| Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship  ☐ | Date:<br><br>10/12/2007 3:02:54 PM | Signature of Attorney or Party:<br><br>/s JAMES MCDANIEL |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

ELECTRONICALLY FILED
10/12/2007 3:03 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLERY US, LLC,       )
                                       )

         **Plaintiff,**          )
                                       )

**vs.**                                 )
                                       )   **CIVIL ACTION NO. _____**

MARK W. GREENSHIELDS,       )
ASSOCIATED SOURCING, and    )
ASSOCIATED SOURCING HOLDINGS, )
INC. d/b/a VIDEO LIBRARY      )
                                       )

         **Defendants.**

---

## MOTION FOR PRELIMINARY INJUNCTION

---

Pursuant to Rule 65 of the Alabama Rules of Civil Procedure, Plaintiff Movie Gallery US, LLC ("Movie Gallery" or "Plaintiff") respectfully requests that this Court issue a preliminary injunction against Defendants Mark W. Greenshields ("Greenshields"), Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library ("Associated Sourcing") (collectively "Defendants"). Simultaneous with the filing of this motion, Plaintiff is filing a Complaint and Request for Relief and other pleadings. Although the grounds for this motion are more fully set forth in the verified complaint and supporting exhibits, as grounds for this motion, Plaintiff states as follows:

1.      On October 30, 2006, Plaintiff and Defendants entered into a confidentiality agreement ("the Confidentiality Agreement"), attached as Exhibit A, restricting Defendants' use of Confidential Information and trade secrets divulged by Plaintiff to Defendants for purposes of negotiating Defendants' potential purchase of Movie Gallery's Video Library business.

2.      The Confidentiality Agreement states as follows:

[a]bsent the Disclosing party's [Plaintiff] prior written consent, the Receiving Party [Defendants] shall make no use (commercial or otherwise) of the

1

01551530.1

Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

"Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products,** as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

3.      In breach of the express terms of the Confidentiality Agreement, Defendants have wrongfully and intentionally used Plaintiff's Confidential Information, including customer lists and lists of "Racking Locations," to target and steal away customers of Movie Gallery's Movie Library racking business.

4.      The Confidentiality Agreement further states as follows:

Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this

Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

See Exhibit A at ¶ 8(a).

5.     Pursuant to Paragraph 8(a) of the Confidentiality Agreement, Plaintiff seeks this injunctive relief: 1) to enjoin Defendant from using or disclosing any trade secrets, confidential information, proprietary information, or customer information of Plaintiff's; 2) to require Defendant to immediately return over to Plaintiff any writing, document, recording and/or electronic data that contains or relates in any way the trade secrets, confidential information, proprietary information, or customer information obtained from Plaintiff; and 3) to avoid further immediate and irreparable harm to Plaintiff through continued violative conduct by Defendant.

6.     Plaintiff seeks a hearing on this preliminary injunction motion as soon as the Court's calendar permits.

7.     Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

8.     Defendants have breached and, upon information and belief, plan to continue to breach the Confidentiality Agreement. Plaintiff has suffered immediate and irreparable injury as a result of Defendants' continuing breach of the Confidentiality Agreement.

9.     Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets in contravention of the express terms of the Confidentiality Agreement. Injunctive relief would not violate any public policy of the State of Alabama.

10.     Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction.  However, as set forth above in ¶ 43, Plaintiff is not required to post such security pursuant to Paragraph 8(a) of the Confidentiality Agreement.

11.     Unless  Defendants  are  preliminarily  and  permanently  enjoined  from misappropriating  Plaintiff's  Confidential  Information  in  breach  of  the  Confidentiality Agreement, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm.  Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests:

(a)     That this Court issue a preliminary injunction restraining and enjoining Defendants from using or disclosing any trade secrets, confidential information, or proprietary information belonging to Plaintiff.

(b)     That after trial of this cause, a permanent injunction be entered against Defendants enjoining the conduct set forth above.

(c)     That this Court issue an order requiring Defendants to immediately turn over to Plaintiff any writing, document, recording and/or electronic data that contains or relates to in any way the trade secret, confidential information or proprietary information obtained from Plaintiff.

(d)     That Plaintiff be awarded all of its damages caused by Defendants' wrongful acts, including compensatory, punitive, and exemplary damages, along with costs and attorneys' fees incurred in bringing this action.

(e)     That Plaintiff be given such other equitable and legal relief as is just and proper under the circumstances.

4

Respectfully submitted by,

/s J. Ethan McDaniel
Jeffrey M. Grantham, GRA048
J. Ethan McDaniel, MCD065

Attorneys for Plaintiff Movie Gallery

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

### Notice of Hearing

Please be advised that the above and foregoing Motion has been filed with the Clerk of the Circuit Court for Houston County, Alabama and that the same is set for a hearing before _____ on _____ at _____.

### PLEASE SERVE WITH COMPLAINT

5

ELECTRONICALLY FILED
10/12/2007 3:03 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into as of this 30th day of OCTOBER, 2006 (the "Effective Date") by and between Mark W. Greenshields, individually, and Associated Sourcing, a sole proprietorship, (collectively "Receiving Party"), 15715 NE 135th St., Redmond, WA 98052 and Movie Gallery US, LLC, a Delaware limited liability Receiving Party, having its principal place of business at 900 West Main Street, Dothan, Alabama 36301 ("Disclosing Party").

## RECITALS

WHEREAS, the parties, for their mutual benefit, desire to enter into discussions regarding a potential business relationship between the parties involving Disclosing Party's movie racking business (the "Purpose");

WHEREAS, in order to further the Purpose, it is necessary for Disclosing Party to provide or otherwise grant to Receiving Party certain confidential and proprietary information of Disclosing Party and its Affiliates;

WHEREAS, the parties intend for this Agreement to extend to and otherwise protect all Confidential Information of the Disclosing Party and its Affiliates;

NOW THEREFORE, in consideration of the foregoing premises and the mutual covenants contained herein, the parties hereto agree as follows:

1. **Definitions**

(a) _Affiliate_: An affiliate means any entity that directly or indirectly is in control of, is controlled by, or is under common Control with the Disclosing Party. "_Control_" and "_Controlled_" mean the power, directly or indirectly, to direct, or to cause the direction of, the management and policies of an entity, whether through ownership of voting securities or equity interests, through common directors, trustees or officers, by contract or otherwise. The term "Disclosing Party" includes the Affiliates, if any, of the Disclosing Party.

(b) _Confidential Information_: "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, trade secrets, technology, processes, drawings, specifications, programs, models, financial information and projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, customer and supplier lists and other valuable business information and products, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, any Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party,

1

or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

### 2.   Handling of Confidential Information

(a)   The Receiving Party acknowledges that the Confidential Information constitutes a valuable asset to the Disclosing Party.  The Receiving Party shall maintain in confidence the Confidential Information, shall not disclose the Confidential Information to anyone without the Disclosing Party's prior written consent which may be withheld in the Disclosing Party's sole discretion; provided, however, the Receiving Party may disclose the Confidential Information to employees, directors, officers, agents, Affiliates, consultants and counselors, including, but not limited to, financial, legal, accounting, tax and audit counselors (the "Receiving Party's Representatives"), who have a need-to-know such Confidential Information in connection with the Purpose, and further provided such representatives are advised of the obligations contained herein and are bound by obligations of confidentiality and non-use substantially comparable in scope with the provisions hereof. The Receiving Party shall be liable for any wrongful disclosure or use of the Confidential Information by any of the Receiving Party's Representatives.

(b)   With respect to the Confidential Information, the Receiving Party shall at least exercise such security measures and degree of care as those which the Receiving Party applies to its own confidential information, but shall not under any circumstances exercise less than a reasonable standard of care.

(c)   Except as necessary for furtherance of the Purpose, the Receiving Party agrees not to copy, reproduce, or reduce to writing any part of the Confidential Information.

(d)   Nothing in this Agreement shall be construed as requiring either party to disclose Confidential Information to the other or to render any assistance to the other.

### 3.   Limits of Confidential Information

The obligations of confidentiality of this Agreement shall not apply to any Confidential Information which:

(i)   is or comes into the public domain without breach of this Agreement;

(ii)   was received by the Receiving Party prior to receipt from the Disclosing Party from a third party other than by breach of an obligation of confidentiality owed to the Disclosing Party; or

(iii)   is independently developed by the Receiving Party without use of or reference to the Confidential Information.

In addition, each of the parties agree that any such information, ideas, suggestions and concepts commonly known in the industry related to the movie racking business that may be offered or disclosed by either party in meetings, consultations or documents exchanged between

2

the parties shall not be deemed included in the Confidential Information, and no party shall be under any obligation to any other party with respect to its use thereof.

### 4.   Other Business Activities

This Agreement shall not in any manner affect or limit either party's present or future business activities or relationships of any nature, including business activities or relationships that may be competitive with those of the other party. Each party understands that the other party and its Affiliates are or may be actively engaged in activities, investments, technology exploitation and research and development efforts (collectively "Business Activities") that are similar to its Business Activities, and that information disclosed to the other party may include, without limitation, descriptions of ideas, works in progress and projects in development that are similar to or coincident with such Business Activities of the other party. Each party further acknowledges that such Business Activities may have originated with the other party's employees or others and may duplicate, parallel or resemble portions of its Confidential Information. Each party agrees that this Agreement shall in no way limit, restrict or preclude the other party from pursuing any of its present or future Business Activities or interests, either alone or in conjunction with others, or from entering into any agreement or transaction of any kind with any other person, regardless of whether the subject matter of any such agreement or transaction involves elements similar to or coincident with Confidential Information exchanged hereunder or is in any other way similar to or coincident with any transaction considered or evaluated by the parties.

### 5.   Limitations and Disclaimer of Warranties

Absent the Disclosing Party's prior written consent, the Receiving Party shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

The parties expressly recognize that the Confidential Information is provided "AS IS". The Disclosing Party makes no warranties, express, implied, statutory or otherwise with respect to the Confidential Information and expressly disclaims all implied warranties.

### 6.   Ownership of Confidential Information

(a)   The Confidential Information is and shall remain the sole and exclusive property of the Disclosing Party.

(b)   In the event that the parties do not enter into a business relationship or either party terminates the discussions related to the Purpose, the Receiving Party shall, at the Disclosing Party's request, promptly, return all Confidential Information, including written documents or other materials embodying the Confidential Information and all copies thereof, to the Disclosing Party's principal place of business as first set forth above, and shall permanently delete any Confidential Information stored electronically and shall certify in writing to the Disclosing Party that such deletion has occurred, or, at the election of the Disclosing Party, the Receiving Party shall destroy all confidential Information received and all copies thereof and shall permanently

3

delete any Confidential Information stored electronically and provide written certification to the Disclosing Party that all Confidential Information, and copies thereof, in the Receiving Party's possession has been so destroyed or deleted; provided however, a Receiving Party's obligations of confidentiality pursuant hereto shall survive the return of the Confidential Information to the Disclosing Party, the deletion of Confidential Information stored electronically or destruction of the Confidential Information.

(c)     In the event that a Receiving Party receives a request or demand to disclose all or any part of the Confidential Information under the terms of a subpoena or order issued by a court of competent jurisdiction, an agency of any State of the United States or of any other jurisdiction (the "Disclosure Order"), the Receiving Party agrees to promptly notify the Disclosing Party of the existence, terms and circumstances surrounding such Disclosure Order so that such the Disclosing Party may seek a protective order or other appropriate relief or remedy and/or waive compliance with the terms of this Agreement. If, failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving Party, in the opinion of its outside legal counsel, is legally required to disclose Confidential Information, the Receiving Party may disclose such Confidential Information to the extent it is legally required to do so without liability hereunder; provided however, the Receiving Party shall disclose only that portion of the Confidential Information which it is legally required to disclose, and the Receiving Party shall exercise good faith efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the Confidential Information disclosed.

### 7. No Commitment of Business Relationship

This Agreement shall not commit the parties to enter into a business relationship with each other absent a separate written agreement.

### 8. Injury as a Result of Breach

(a)     Because of the uniqueness of the Confidential Information, the Receiving Party acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

(b)     No remedy conferred by this Agreement is intended to be exclusive of any other remedy and all remedies now or hereafter existing at law or in equity shall be available to the Disclosing Party.  The election of any one or more remedies shall not constitute a waiver of the right to pursue other available remedies.

### 9. Term

The obligations of this Agreement shall terminate on the later of five (5) years after the Effective Date or five (5) years after the date of termination or expiration of any written agreement entered into between the parties; provided however, the obligations of confidentiality with regard to trade secrets shall continue indefinitely so long as the secrets remain trade secrets.

4

**10.    Miscellaneous**

(a)    This Agreement constitutes the entire understanding between the parties and supersedes any oral or written agreements which may have been entered into between them on disclosure of Confidential Information. This Agreement may not be changed or terminated orally, and no change, termination or attempted waiver of any of the provisions hereto shall be binding unless in writing and signed by the party against whom the same is sought to be enforced.

(b)    If at any time during the term of this Agreement any provision hereof proves to be or becomes invalid or unenforceable under any applicable law, then such provision shall be deemed modified to the extent necessary in order to render such provision valid and enforceable. If such provision may not be so saved, it shall be severed and the remainder of this Agreement shall remain in full force and effect.

(c)    The covenants, representations and warranties contained in this Agreement shall survive its termination.

(d)    The terms of this Agreement shall be governed by, and interpreted under Alabama law, without reference to its conflicts of laws provisions.

(e)    No waiver by a party of any breach of this Agreement shall constitute a waiver of the terms and conditions of this Agreement with respect to any subsequent breach hereof.

(f)    No party may assign this Agreement without the express written consent of the other party.

(g)    Any notice or communication provided under or relating to this Agreement shall be in writing and either hand delivered, deposited in the United States mail, certified with return receipt requested, with postage prepaid, or sent PRIORITY by a nationally-recognized overnight delivery service (i.e. Federal Express, etc.) and addressed to the party at its address first set forth above. Any notice to Disclosing Party shall be sent to the attention of the General Counsel at the address first set forth above. If the addressee rejects or otherwise refuses to accept the notice, or if the notice cannot be delivered because of a change in address for which no notice was given in compliance with this Paragraph 10(g), then notice shall be deemed to have been given upon the date of rejection, refusal or inability to deliver. Notices shall be deemed delivered when actually received by the intended recipient. A change of address by a party must be by notice given to the other parties in the manner specified above.

(i)    For the convenience of the parties, this Agreement may be executed in counterparts. Each such counterpart shall be an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

(j)    If litigation or any other action of any nature whatsoever (including any proceeding under the U.S. Bankruptcy Code) is instituted in connection with any controversy arising out of this Agreement or to interpret or enforce any rights, the prevailing party shall be entitled to recover its attorneys' and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary, as determined by the court(s), in addition to all other amounts provided by law.

5

11.        Authorization

The person signing this Agreement on behalf of the undersigned has the authority to do so and to bind the undersigned to the terms hereof.

IN WITNESS WHEREOF, each party has signed this Agreement on the date(s) indicated below.

**"DISCLOSING PARTY"**                    **"RECEIVING PARTY"**

MOVIE GALLERY US, LLC                    Mark W. Greenshields, individually

By:    S. Page Todd                      By:    Mark W. Greenshields
Its:    Executive Vice President


                                         Associated Sourcing

                                         By:    Mark W. Greenshields
                                         Its:    OWNER
                                                (Title)

6



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  JAMES MCDANIEL
     emcdaniel@maynardcooper.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was FILED on 10/12/2007 3:04:06 PM

C001 MOVIE GALLREY US, LLC

MOTION FOR OTHER

[Attorney: MCDANIEL JAMES ETHAN]

Notice Date:     10/12/2007 3:04:06 PM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



**AlaFile E-Notice**

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  ASSOCIATED SOURCING        (PRO SE)
     15715 NE 135TH STREET
     REDMOND, WA 98052

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was FILED on 10/12/2007 3:04:06 PM

C001 MOVIE GALLREY US, LLC
MOTION FOR OTHER
[Attorney: MCDANIEL JAMES ETHAN]

Notice Date:      10/12/2007 3:04:06 PM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To: ASSOCIATED SOURCING HOLDINGS (PRO SE)
15715 NE 135TH STREET
REDMOND, WA 98052

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was FILED on 10/12/2007 3:04:06 PM

C001 MOVIE GALLREY US, LLC
MOTION FOR OTHER
[Attorney: MCDANIEL JAMES ETHAN]

Notice Date:     10/12/2007 3:04:06 PM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To: GREENSHIELDS MARK W.        (PRO SE)
15715 NE 135TH STREET
REDMOND, WA 98052

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was FILED on 10/12/2007 3:04:06 PM

C001 MOVIE GALLREY US, LLC
MOTION FOR OTHER
[Attorney: MCDANIEL JAMES ETHAN]

Notice Date:        10/12/2007 3:04:06 PM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  GRANTHAM JEFFREY MONROE
     jgrantham@maynardcooper.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was FILED on 10/12/2007 3:04:06 PM

C001 MOVIE GALLREY US, LLC
MOTION FOR OTHER
[Attorney: MCDANIEL JAMES ETHAN]

Notice Date:     10/12/2007 3:04:06 PM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



**AlaFile E-Notice**

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  MCDANIEL JAMES ETHAN
     emcdaniel@maynardcooper.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was FILED on 10/12/2007 3:04:06 PM

C001 MOVIE GALLREY US, LLC
MOTION FOR OTHER
[Attorney: MCDANIEL JAMES ETHAN]

Notice Date:     10/12/2007 3:04:06 PM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730

ELECTRONICALLY FILED
10/16/2007 8:04 AM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

| | | |
|---|---|---|
| MOVIE GALLREY US, LLC | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.:  CV-2007-900117.00 |
| | ) | |
| GREENSHIELDS MARK W. | ) | |
| ASSOCIATED SOURCING | ) | |
| ASSOCIATED SOURCING HOLDINGS INC DBA ' | ) | |
| Defendants | ) | |

## ORDER

Hearing on Motion for Preliminary Injunction is scheduled to be held on December 5, 2007 at 9:00 a.m.

DONE this 16th day of October, 2007

/s JERRY M. WHITE
_____

CIRCUIT JUDGE



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  GRANTHAM JEFFREY MONROE
     jgrantham@maynardcooper.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

A court action was entered in the above case on 10/16/2007 8:04:30 AM

C001 MOVIE GALLREY US, LLC

MOTION FOR OTHER

[Attorney: MCDANIEL JAMES ETHAN]

Disposition:     OTHER
Judge:           JMW

Notice Date:     10/16/2007 8:04:30 AM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  MCDANIEL JAMES ETHAN
     emcdaniel@maynardcooper.com

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

A court action was entered in the above case on 10/16/2007 8:04:30 AM

C001 MOVIE GALLREY US, LLC

MOTION FOR OTHER

[Attorney: MCDANIEL JAMES ETHAN]

Disposition:     OTHER
Judge:           JMW

Notice Date:     10/16/2007 8:04:30 AM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



**AlaFile E-Notice**

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To: ASSOCIATED SOURCING        (PRO SE)
15715 NE 135TH STREET
REDMOND, WA 98052

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

A court action was entered in the above case on 10/16/2007 8:04:30 AM

C001 MOVIE GALLREY US, LLC

MOTION FOR OTHER

[Attorney: MCDANIEL JAMES ETHAN]

Disposition:     OTHER
Judge:           JMW

Notice Date:     10/16/2007 8:04:30 AM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



**AlaFile E-Notice**

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  ASSOCIATED SOURCING HOLDINGS (PRO SE)
15715 NE 135TH STREET
REDMOND, WA 98052

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

A court action was entered in the above case on 10/16/2007 8:04:30 AM

C001 MOVIE GALLREY US, LLC

MOTION FOR OTHER

[Attorney: MCDANIEL JAMES ETHAN]

| | |
|---|---|
| Disposition: | OTHER |
| Judge: | JMW |

Notice Date:     10/16/2007 8:04:30 AM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



**AlaFile E-Notice**

38-CV-2007-900117.00
Judge: JERRY M. WHITE

To:  GREENSHIELDS MARK W.        (PRO SE)
15715 NE 135TH STREET
REDMOND, WA 98052

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC v. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

A court action was entered in the above case on 10/16/2007 8:04:30 AM

C001 MOVIE GALLREY US, LLC

MOTION FOR OTHER

[Attorney: MCDANIEL JAMES ETHAN]

Disposition:     OTHER
Judge:           JMW

Notice Date:     10/16/2007 8:04:30 AM

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MARK W. Greenshields
15715 NE 135th St.
Redmond, WA 98052

CV2007-90047 (D001)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Xavier Brewis_    ☐ Agent
                     ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
GREEN SHIELDS                      10/22

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

FILED

OCT 2 5 2007

Clara Woodfin, Clerk
Montgomery County, AL

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes

2. Article Number
   (Transfer from service label)    7004 2510 0003 8021 5965

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Associated Sourcing
       Holdings, Inc.
d/b/A Video Library
15715 NE 185th St.
Redmond, WA 98052

2:07 CV2007-90017 Doo3

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                         ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

FILED                            10/22

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

OCT 2 5 2007

_Cch. Woodall_

3. Service Type / Woodall, Clerk
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered      ☑ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7004 2510 0003 8021 5958

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



**AlaFile E-Notice**

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  GREENSHIELDS MARK W.     (PRO SE)
     15715 NE 135TH STREET
     REDMOND, WA 98052

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was served on 10/22/2007

D002 ASSOCIATED SOURCING

CERTIFIED MAIL

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



**AlaFile E-Notice**

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To: ASSOCIATED SOURCING          (PRO SE)
15715 NE 135TH STREET
REDMOND, WA 98052

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was served on 10/22/2007

D003 ASSOCIATED SOURCING HOLDINGS

CERTIFIED MAIL

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  GREENSHIELDS MARK W.        (PRO SE)
     15715 NE 135TH STREET
     REDMOND, WA 98052

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was served on 10/22/2007

D003 ASSOCIATED SOURCING HOLDINGS
CERTIFIED MAIL

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730



AlaFile E-Notice

38-CV-2007-900117.00

Judge: JERRY M. WHITE

To:  GREENSHIELDS MARK W.        (PRO SE)
     15715 NE 135TH STREET
     REDMOND, WA 98052

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

MOVIE GALLREY US, LLC V. MARK W. GREENSHIELDS ET AL
38-CV-2007-900117.00

The following matter was served on 10/22/2007

D002 ASSOCIATED SOURCING

CERTIFIED MAIL

CARLA H. WOODALL
CIRCUIT COURT CLERK
HOUSTON COUNTY, ALABAMA
114 NORTH OATES STREET
DOTHAN, AL 36302

334-671-8730

Richard M. Cieri (NY 4207122)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

and

Anup Sathy, P.C. (IL 6230191)
Marc J. Carmel (IL 6272032)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
KUTAK ROCK LLP
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219-3500

Co-Counsel to the Debtors

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) Case No. 07- 33849 (DOT) |
| | ) Jointly Administered |
| MOVIE GALLERY, INC., et al.,[1] | ) Chapter 11 |
| | ) Hon. Douglas O. Tice, Jr. |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |

**NOTICE OF COMMENCEMENT OF CHAPTER 11 CASES,
MEETING OF CREDITORS AND DEADLINES FOR
CREDITORS TO FILE PROOFS OF CLAIM**

**Commencement of Chapter 11 Cases**. On October 16, 2007, the debtors listed below (collectively, the "Debtors") filed petitions commencing chapter 11 cases under the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court").

---

[1]  The Debtors in the cases include:  Movie Gallery, Inc.; Hollywood Entertainment Corporation; M.G. Digital, LLC; M.G.A. Realty I, LLC; MG Automation LLC; and Movie Gallery US, LLC.

| Debtor | Address | Case No. | EID# |
|---|---|---|---|
| Movie Gallery, Inc. | 900 West Main Street<br>Dothan, Alabama 36301 | 07-33849 (DOT) | 63-1120122 |
| Hollywood Entertainment Corporation | 900 West Main Street<br>Dothan, Alabama 36301 | 07-33848 (DOT) | 93-0981138 |
| M.G. Digital, LLC | 900 West Main Street<br>Dothan, Alabama 36301 | 07-33850 (DOT) | 41-2155085 |
| M.G.A. Realty I, LLC | 900 West Main Street<br>Dothan, Alabama 36301 | 07-33851 (DOT) | 47-0890138 |
| MG Automation LLC | 900 West Main Street<br>Dothan, Alabama 36301 | 07-33852 (DOT) | 22-3916769 |
| Movie Gallery US, LLC | 900 West Main Street<br>Dothan, Alabama 36301 | 07-33853 (DOT) | 41-1461110 |

**Joint Administration of Cases**. The Bankruptcy Court entered an order on October 17, 2007, authorizing the joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and consolidating the Debtors' chapter 11 cases for procedural purposes only under Case No. 07-33849 (DOT) and directing that the joint caption of the chapter 11 cases read In re: Movie Gallery, Inc., et al. Pursuant to Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules") and the Motion of the Debtors for an Order Directing Joint Administration of their Related Chapter 11 Cases [Docket No. 5], interested parties may file an objection to joint administration no later than ten days after the meeting of creditors to be held pursuant to section 341 of the Bankruptcy Code.

**Section 341 Meeting of Creditors**. Pursuant to section 341 of the Bankruptcy Code, the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") has scheduled a meeting of creditors on December 13, 2007 at 2:00 p.m. (prevailing Eastern Time) at 600 East Main Street, Suite 120, Richmond, Virginia 23219. The Debtors' representatives will be present at the meeting to be examined under oath by the U.S. Trustee and by creditors. Creditors are welcome to attend the meeting but are not required to do so. The meeting may be continued and concluded at a later date without further notice.

**Creditors May Not Take Certain Actions**. The filing of the Debtors' chapter 11 petitions automatically stays certain collection and other actions against the Debtors and the Debtors' property. Prohibited actions are listed in section 362(a) of the Bankruptcy Code. For example, creditors are prohibited from: contacting the Debtors to demand repayment; taking action against the Debtors to collect money owed to creditors; starting or continuing lawsuits against the Debtors; and taking certain actions against property of the Debtors' estates. If unauthorized actions are taken by a creditor against the Debtors, the Bankruptcy Court may penalize that creditor. A creditor who is considering taking action against the Debtors or their property should review, among other things, section 362(a) of the Bankruptcy Code and seek legal advice.

**Deadline for Filing Proofs of Claim**. On October 18, 2007, the Bankruptcy Court entered the Order (A) Establishing Bar Dates and (B) Approving the Form and Manner of Notice of Commencement of Cases and Notice of Bar Dates for Creditors to File Proofs of Claim [Docket No. 111] (the "Bar Date Order"). The Bar Date Order establishes, among other deadlines, January 25, 2008, as the last date for creditors except governmental units to file proofs of claim in the Debtors' chapter 11 cases and April 14, 2008, as the last date for governmental units to file proofs of claim in the Debtors' chapter 11 cases. In accordance with the Bar Date Order, the notice of the bar dates (the "Bar Date Notice") will be mailed separately no later than December 10, 2008. The Bar Date Notice will contain information regarding the bar dates, a proof of claim form and instructions for completing and filing a proof of claim form.

**Schedule of Assets and Liabilities**. On October 18, 2007, the Bankruptcy Court entered an Order (A) Granting an Extension of Time to File Statements of Financial Affairs and Schedules of Assets and Liabilities, Current Income and Expenditures and Executory Contracts and Unexpired Leases and (B) Authorizing the Scheduling of the Meeting of Creditors as Set Forth Herein [Docket No. 113] (the "Schedules Order"). The Schedules Order establishes November 30, 2007, as the date on which the Debtors shall file their statements and schedules of assets and liabilities with the Bankruptcy Court (the "Statements and Schedules"). Unless such date is extended by the Bankruptcy Court, the Statements and Schedules will be available on the Bankruptcy Court's website at www.vaeb.uscourts.gov, at www.kccllc.net/moviegallery and upon request of the Debtors' counsel as soon as practicable after filing.

**Order Limiting Notice**. On October 17, 2007, the Bankruptcy Court entered an order establishing the scope of notice to be given in connection with certain proceedings in the Debtors' chapter 11 cases [Docket No. 88] (the "Case Management Order"). The Case Management Order provides, among other things, that except as set forth in the procedures approved by the Case Management Order, notice of proceedings in the Debtors' chapter 11 cases need only be sent via electronic mail to the parties on the established service list. Any party in interest that desires to receive electronic mail notice in the Debtors' chapter 11 cases and, consequently, be added to the service list, shall file with the Bankruptcy Court a notice of appearance and request for service in accordance with the procedures approved by the Case Management Order and shall serve such request on Kirkland & Ellis LLP, 200 East Randolph Street, Chicago, Illinois 60601, Attn: Anup Sathy, P.C. and Marc Carmel. All creditors will receive notice of certain proceedings, including, but not limited to, bar dates (unless applicable to a limited population of creditors), the time fixed for filing objections and any hearing to consider a disclosure statement and/or chapter 11 plan and dismissal or conversion of the chapter 11 cases to another chapter of the Bankruptcy Code. A copy of the procedures approved by the Case Management Order are available from the sources described in the section titled "How to Obtain Documents."

**How to Obtain Documents**. Free electronic copies of all pleadings and certain other documents filed in the Debtors' 11 cases will be posted at **www.kccllc.net/moviegallery** as soon as practicable after filing. For further information, call the Movie Gallery restructuring hotline: **(888) 647-1730**. Electronic copies of all pleadings or other documents filed in the Debtors' chapter 11 cases may be obtained for a fee via PACER on the Bankruptcy Court's website at www.vaeb.uscourts.gov. Paper copies of all pleadings or other documents filed in the Debtors' chapter 11 cases may be obtained for a fee by sending a written request to the Court's copy service, Information Processing Services, Inc., 200 South Washington Street, Suite 101, Richmond, Virginia 22314 or by calling (703) 706-0494.

**Court Filings**. The Debtors' chapter 11 cases have been designated as cases assigned to the electronic case filing system and can be accessed via the Court's web site at www.vaeb.uscourts.gov or ecf.vaeb.uscourts.gov.

**Local Rule Dismissal Warning**. Chapter 11 cases may be dismissed for failure to timely file lists, schedules and statements or attend the meeting of creditors. See Local Bankruptcy Rules 1007-1 and 2003-1.

**Legal Advice**. Neither the Debtors' counsel nor the Bankruptcy Court Clerk's Office can give you legal advice. You may wish to consult an attorney to protect your rights.

Richmond, Virginia                       MOVIE GALLERY, INC., et al.
Dated: October 23, 2007                  Debtors and Debtors in Possession

07-33849                              58364
3416018                              PRF 2856

JUDY BYRD CLERK
PO DRAWER 6406
DOTHAN AL 36302

# Exhibit B

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

| | | |
|---|---|---|
| MOVIE GALLERY US, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARK W. GREENSHIELDS, | ) | CIVIL ACTION NO.: |
| ASSOCIATED SOURCING, AND | ) | 2007-900117.00 |
| ASSOCIATED SOURCING HOLDINGS, | ) | |
| INC. d/b/a VIDEO LIBRARY, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| | ) | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), Defendants Mark W. Greenshields, Associated Sourcing, and Associated Sourcing Holdings, Inc., hereby give notice to the Circuit Court of Houston County, Alabama, and to Jeffery M. Grantham and J. Ethan McDaniel as Attorneys for Plaintiff, this being the only party, that Defendants filed a Notice of Removal with the United States District Court for the Middle District of Alabama, Southern Division, and that this case has been removed to that Court.  Attached is a copy of this Notice of Removal (without attachments).

Respectfully submitted this 21st day of November, 2007.


                            s/ Charles A. Stewart III
                    Charles A. Stewart III (STE067)
                    Quindal C. Evans (EVA040)
                    Attorneys for Mark W. Greenshields,
                    Associated Sourcing, and Associated Sourcing
                    Holdings, Inc.

1

Of Counsel
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7670
Facsimile: (334) 956-7870
E-mail:  cstewart@bradleyarant.com
         qevans@bradleyarant.com

## CERTIFICATE OF SERVICE

       I hereby certify that on November 21, 2007, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

       Jeffery M. Grantham
       J. Ethan McDaniel
       Maynard Cooper & Gale, P.C.
       1901 Sixth Avenue North
       2400 Regions/Harbert Plaza
       Birmingham, AL 35203-2618

                     Respectfully submitted,

                     s/ Charles A. Stewart III
                     Charles A. Stewart III (STE067)

# Exhibit C

IN THE DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MOVIE GALLERY US, LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARK W. GREENSHIELDS,** | ) | **CIVIL ACTION NO.:** |
| **ASSOCIATED SOURCING, AND** | ) | |
| **ASSOCIATED SOURCING** | ) | _____ |
| **HOLDINGS, INC. d/b/a VIDEO** | ) | |
| **LIBRARY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## DECLARATION OF MARK W. GREENSHIELDS

I, Mark W. Greenshields declare, under penalty of perjury under the laws of the State of Washington and of the United States:

1.    I have personal knowledge of the facts stated herein, am 42 years old, and I am competent to testify.

2.    I am an individually named defendant in this action and a resident of Redmond, Washington.

3.    *"Associated Sourcing"* is another named defendant in this action; it is a sole proprietorship. Since 2002 it has been in the business of buying and reselling infrastructure for wireless communications. "Associated Sourcing" has nothing whatever to do with the business of defendant Associated Sourcing Holdings, Inc.

EXHIBIT
C

4.     I am also the president and sole shareholder of the third named defendant in this action, *Associated Sourcing Holdings, Inc.*, a Washington corporation that does business under the name ASG Video. Its principal place of business is in Redmond, Washington; it also does business from Billings, Montana.

5.     Except as otherwise admitted in the answer filed by Defendants, the Plaintiff's allegations are expressly denied. This declaration is submitted for the sole purpose of addressing federal court jurisdiction.

6.     Since the summer of 2007, ASG Video has been engaged in the business of providing DVDs and VHS tapes and display racks for same to independent convenience stores. To date, ASG Video has marketed its services to convenience store clients in Alaska, Washington, Oregon, Idaho, and Montana. ASG Video's convenience store clients rent the DVDs and VHS tapes to their customers and pay a portion of the revenue received, or a flat monthly rate, to ASG Video.

7.     Movie Gallery and I negotiated a "confidentiality agreement" (a copy of which was attached to Plaintiff's complaint) and I later submitted a letter of intent to purchase Movie Gallery's video rental "racking" and "sell-through" businesses for a price not to exceed $3.5 million.

8.     After presentation of the letter of intent, Movie Gallery and I, both directly and through counsel, negotiated a purchase and sale agreement. For a variety of reasons, the negotiations became limited to my purchase of Movie Gallery's video rental "racking" business, a smaller business subset of Movie Gallery's overall business, for a price of $1 million. By the late Spring of 2007, the parties had negotiated a definitive purchase and sale agreement, and

other associated documents. Movie Gallery executives then presented the deal to the company's board of directors for approval. The board rejected the proposed acquisition on May 21, 2007.

9.      The final negotiated purchase and sale agreement for the acquisition of Movie Gallery's video rental "racking" business called for a purchase price of $1 million. This represented the parties' consensus as to the fair value of the business assets being purchased.

10.     ASG Video has, to date, negotiated rental and revenue-sharing arrangements with 17 convenience stores. These contracts are currently providing (or will once they are fully-stocked) ASG Video with weekly revenue of $6,600 (annualized to approximately $350,000), or an average of $20,000 per location per year. About 14 of these convenience stores previously had similar "racking" arrangements with Movie Gallery, although Movie Gallery's contracts with many of them had expired and they and Movie Gallery were doing business on a month-to-month basis. I have no reason to believe that revenues from these stores would be any different had these stores continued their arrangements with Movie Gallery.

11.     In sum, it is clear that the amount in controversy in this case from Movie Gallery's perspective exceeds $75,000.

12.     I declare under penalty of perjury under the laws of the United States of America that the foregoing declaration is true and correct to the best of my personal knowledge.

Executed on November 20th, 2007.

_Mark W. Greenshields_
Mark W. Greenshields

# Exhibit D

## IN THE DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**MOVIE GALLERY US, LLC,**

      **Plaintiff,**

**v.**

**MARK W. GREENSHIELDS,**
**ASSOCIATED SOURCING, AND**
**ASSOCIATED SOURCING**
**HOLDINGS, INC. d/b/a VIDEO**
**LIBRARY,**

      **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO.:**

_____

### DECLARATION OF JARED SMITH

    1.    My name is Jared Smith.  I am over the age of twenty-one, and I am competent to give this declaration.  The matters contained in this declaration are based upon my personal knowledge.

    2.    The information contained within this declaration has been obtained through my knowledge as an Associated Sourcing Holding's employee and not through any confidential information obtained from Movie Gallery.

    3.    Except as otherwise admitted in the answer filed by Defendants, the Plaintiff's allegations are expressly denied.  This declaration is submitted for the sole purpose of addressing the value of the contracts held by Associated Sourcing Holdings, Inc.



4.      I currently work for Associated Sourcing Holdings, Inc. and have worked for Associated Sourcing Holdings, Inc. since July 2007. Prior to working for Associated Sourcing Holdings, I worked as a Manager Director for Movie Gallery's Video Library operations in Billings, Montana.

5.      According to knowledge gained from our account holders, it is my understanding that Associated Sourcing Holding's weekly billing method is similar to the structure used by Movie Gallery.

6.      Currently, based on knowledge and belief, fourteen of Associate Sourcing Holding's account holders are former Movie Gallery account holders.

7.      I do not know the exact rates which were charged by Movie Gallery for these fourteen accounts. However, based on information, belief, and experience, the contracts on these accounts are worth approximately the same to Movie Gallery as they are worth to Associated Sourcing Holdings.

8.      Currently, these fourteen contracts generate a weekly revenue of approximately $5,500, an annual revenue of approximately $259,000, and a gross annual profit of approximately $129,000.

9.      In sum, it is clear that the amount in controversy, based on these contracts and from Movie Gallery's perspective, exceeds $75,000.

10.      I declare under penalty of perjury under the laws of the United States of America that the foregoing declaration is true and correct to the best of my personal knowledge.

Executed on November _19_, 2007.

_____
Jared Smith

ELECTRONICALLY FILED
10/12/2007 12:35 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

| | |
|---|---|
| MOVIE GALLERY US, LLC,        ) | |
|        ) | |
| **Plaintiff,**        ) | |
|        ) | |
| vs.        ) | **CIVIL ACTION NO. _____** |
|        ) | |
| **MARK W. GREENSHIELDS,**        ) | |
| **ASSOCIATED SOURCING, and**        ) | |
| **ASSOCIATED SOURCING HOLDINGS,**        ) | |
| **INC. d/b/a VIDEO LIBRARY**        ) | |
| **Defendants.** | |

## COMPLAINT AND REQUEST FOR RELIEF

Plaintiff Movie Gallery US, LLC ("Movie Gallery" or "Plaintiff") for its Complaint against Defendants Mark W. Greenshields ("Greenshields"), Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library ("Associated Sourcing") (collectively "Defendants") states as follows:

## INTRODUCTION

1.  Plaintiff's claims arise out of Defendants' misappropriation and use of Plaintiff's trade secrets and Confidential Information in breach of the express provisions of the Confidentiality Agreement entered into by Plaintiff and Defendants and in contravention of Alabama law.

## PARTIES AND JURISDICTION

2.  Plaintiff Movie Gallery is a Delaware limited liability company with its principal place of business in Dothan, Alabama.

3.  Defendant Mark W. Greenshields is an individual resident of the State of Washington.

01550762.1

4.    Defendant Associated Sourcing is a sole proprietorship existing under the laws of the State of Washington.

5.    Defendant Associated Sourcing Holdings, Inc d/b/a Video Library is a corporation existing under the laws of the State of Washington.

6.    The amount in controversy in this case is well in excess of the statutory minimum required for this Court to exercise its jurisdiction.

7.    Defendants have sufficient contacts with the State of Alabama to satisfy the requirements of Due Process and traditional notions of fair play and substantial justice.

8.    Venue in this Court is proper under Ala. R. Civ. P. 82 and Ala. Code §§ 6-3-2; 6-3-7.

## FACTUAL BACKGROUND

9.    Plaintiff is an entertainment and retail company with video stores located throughout the United States.

10.    Movie Gallery currently operates Video Library, a movie racking business. In so doing, Movie Gallery enters into agreements with retail stores, such as grocery and convenient stores, whereby Movie Gallery places "racks" in these various retail stores. VHS and DVD versions of movies are placed on the racks and are available for rent or sale to customers of these retail stores. Essentially, the Video Library functions as a miniature video rental store inside the larger retail store. Video Library also enters into sell-through agreements with these retail stores, through which customers may purchase movies at the retail stores.

11.    On or around October of 2006, Movie Gallery engaged in negotiations with Defendants Greenshields and Associated Sourcing regarding their potential purchase of the Video Library business from Movie Gallery.

- 2 -

12.     In conjunction with these negotiations, Greenshields and Associated Sourcing entered into a confidentiality agreement ("the Confidentiality Agreement") with Movie Gallery on October 30, 2006.     Attached hereto as Exhibit A.     The purpose of the Confidentiality Agreement was to restrict Defendants' use and disclosure of certain confidential information set forth therein ("Confidential Information") regarding Video Library that was necessary to provide to Defendants for purposes of the negotiations regarding Defendants' plan to purchase Video Library from Movie Gallery.     Pursuant to the Confidentiality Agreement, Defendants acknowledged that the Confidential Information disclosed to Defendants constituted a "valuable asset" to Movie Gallery.     See Exhibit A at ¶ 2(a).     The Confidentiality Agreement expressly states:

> [a]bsent [Movie Gallery's] prior written consent, the [Defendants] shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by [Movie Gallery] and/or [Movie Gallery's] Affiliates.

> See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

> "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products,** as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other

- 3 -

facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

13.     During the course of negotiations between Defendants and Movie Gallery regarding Defendants' possible purchase of the Video Library business from Movie Gallery, Confidential Information belonging solely to Movie Gallery was disclosed to Defendants, pursuant to the Confidentiality Agreement.  Information constituting trade secrets of Movie Gallery also was disclosed.  Specifically, lists of customers to which Movie Gallery was under contract to provide Video Library services and "Racking Locations" were divulged to Defendants.

14.     On or around May 21, 2007, the Board of Directors of Movie Gallery, Inc. determined that it was not in the best interest of Movie Gallery to sell the Video Library business to Defendants.

15.     Shortly after the decision not to sell the Video Library to Defendants, Defendants used their business, known as "Associated Sourcing," to engage in the exact same business as Movie Gallery's Video Library.  In direct contravention of the Confidentiality Agreement, Defendants began using trade secrets and Confidential Information owned by Movie Gallery and subject to the Confidentiality Agreement to divert customers from Movie Gallery to Defendants. Defendants also registered with the State of Washington the trade name "Video Library" in an attempt to confuse customers into thinking that they were dealing with Movie Gallery, and upon information and belief, also filed a service mark application with the United States Patent and Trademark Office to register a Video Library service mark.  In a further attempt to confuse customers, upon information and belief, Defendants even rented warehouse space formerly utilized by Movie Gallery.

- 4 -

16.    Defendants also began soliciting Movie Gallery employees with knowledge of Movie Gallery's confidential and proprietary information, as well as its trade secrets pertaining to its Video Library business to join Defendants' business.   In all, three Movie Gallery employees joined Defendants' business and directly competed against Movie Gallery using Movie Gallery's confidential and proprietary information, as well as its trade secrets to steal business away from Movie Gallery.

17.    On July 23, 2007, Movie Gallery sent Defendant Greenshields a letter reminding him of his obligations under the Confidentiality Agreement and informing Greenshields that any violation of the Confidentiality Agreement will result in legal action.  Attached hereto as Exhibit B.

18.    Notwithstanding the admonitions in the July 23, 2007 letter, Defendants wrongfully continue using Movie Gallery's confidential and proprietary information, as well as trade secrets, to solicit Movie Gallery's Video Library business away from Movie Gallery.

## COUNT I

### (Breach of Contract and Injunctive Relief)

19.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 18 above, as though fully set forth herein.

### Breach of Contract

20.    On October 30, 2006, Defendants and Plaintiff entered into the Confidentiality Agreement.  Exhibit A.

21.    Under the terms of the Confidentiality Agreement:

[a]bsent the Disclosing party's [Plaintiff] prior written consent, the Receiving Party [Defendants] shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or

hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

"Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products,** as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

22.     In conjunction with the discussions regarding Defendants' potential purchase of Plaintiff's Video Library business, Confidential Information, including customer lists and lists of "Racking Locations," was disclosed to Defendants pursuant to the Confidentiality Agreement.

23.     On or around May 21, 2007, the Board of Directors of Movie Gallery, Inc. determined that is was not in the best interests of Movie Gallery to sell the Video Library business to Defendants.    Shortly thereafter, Defendants used their business, known as "Associated Sourcing," to engage in the exact same business as Movie Gallery's Video Library.

24.     In breach of the express terms of the Confidentiality Agreement, Defendants have wrongfully and intentionally used Plaintiff's Confidential Information, including customer lists

- 6 -

and lists of "Racking Locations," to target and steal away customers of Movie Gallery's Movie Library racking business.

25.    The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff, including, among other things, lost opportunity to fairly compete, lost profits, and attorneys fees.  The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

## Injunctive Relief

26.    The Confidentiality Agreement further states as follows:

> Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled. Exhibit A at ¶ 8(a).

27.    Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

28.    As set forth above, Defendants have breached and, upon information and belief, plan to continue to breach the Confidentiality Agreement.  Accordingly, Plaintiff is entitled to injunctive relief pursuant to the Confidentiality Agreement as it has suffered immediate and irreparable injury as a result of Defendants' breaches of the Confidentiality Agreement and any future breaches will similarly result in immediate and irreparable injury to Plaintiff.

29.    Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets in violation of the express terms of the Confidentiality Agreement.  Injunctive relief would not violate any public policy of the State of Alabama.

01550762.1

30.    Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction. However, as set forth above in ¶ 43, Plaintiff is not required to post such security pursuant to the Confidentiality Agreement.

31.    Unless Defendants are preliminarily and permanently enjoined from misappropriating Plaintiff's Confidential Information in breach of the Confidentiality Agreement, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm. Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

## COUNT II

### (Violation of Alabama Trade Secrets Act)

32.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 31 above, as though fully set forth herein.

33.    Plaintiff's Confidential Information taken by Defendants derives actual or potential independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use.

34.    Plaintiff takes steps to protect the confidentiality and secrecy of its Confidential Information, including without limitation, by entering into the Confidentiality Agreement with Defendants here.

35.    Defendants have, collectively and independently, misappropriated, divulged and used Plaintiff's Confidential Information in violation of Ala. Code 8-27-1 et seq. (1975).

36.    Plaintiff has not provided Defendants with its express or implied consent to misappropriate or utilize Plaintiff's Confidential Information.

- 8 -

01550762.1

37.     The misappropriation of Plaintiff's Confidential Information by Defendants was willful and malicious.

38.     As a result of the misappropriation and use of Plaintiff's Confidential Information by Defendants, Plaintiff has suffered and will continue to suffer irreparable damages.

39.     Specifically, the wrongful and illegal actions of Defendants is proximately causing damages to Plaintiff including loss of its customers and racking business.  The extent of Plaintiff's damages is currently unknown and incalculable due to Defendants' attempt to conceal their misdeeds.

40.     Pursuant to Ala. Code 8-27-1 et seq. (1975), this Court may enjoin the actual or threatened misappropriation of Plaintiff's Confidential Information by Defendants.

41.     Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

42.     Further, the Confidentiality Agreement states as follows:

Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.  Exhibit A at ¶ 8(a).

43.     Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets.   Injunctive relief would not violate any public policy of the State of Alabama.

44.     Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction.  However, as set forth above in ¶ 29, Plaintiff is not required to post security pursuant to the Confidentiality Agreement.

- 9 -

45.    Unless Defendants are preliminarily and permanently enjoined from misappropriating Plaintiff's Confidential Information, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm.    Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

**COUNT III**

**(Intentional Interference with Contractual or Business Relations)**

46.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 45 above, as though fully set forth herein.

47.    In entering into the Confidentiality Agreement, Defendants knew of their obligations not to disclose Plaintiff's confidential and/or trade secret information.    Defendants, without justification, wrongfully misappropriated Plaintiff's confidential and/or trade secret information in order to gain an unfair advantage.    Defendants have, in turn, wrongfully used Plaintiff's confidential and/or trade secret information to intentionally and unfairly divert customers and racking business away from Plaintiff and to Defendants.

48.    In obtaining customers from Plaintiff's customer lists, a list that is confidential, Defendants have wrongfully interfered with Plaintiff's contractual and business relationships with its customers.

49.    The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff including, among other things, lost opportunity to fairly compete, lost profits, and attorneys fees.    The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

50.    Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

## RELIEF

WHEREFORE, Plaintiff requests:

(a)    That this Court issue a preliminary injunction restraining and enjoining Defendants from using or disclosing any trade secrets, Confidential Information, or proprietary information belonging to Plaintiff.

(b)    That after trial of this cause, a permanent injunction be entered against Defendants enjoining the conduct set forth above.

(c)    That this Court issue an order requiring Defendants to immediately turn over to Plaintiff any writing, document, recording and/or electronic data that contains or relates to in any way the trade secret, Confidential Information or proprietary information obtained from Plaintiff.

(d)    That Plaintiff be awarded all of its damages caused by Defendants' wrongful acts, including compensatory, punitive, and exemplary damages, along with costs and attorneys' fees incurred in bringing this action.

(e)    That Plaintiff be given such other equitable and legal relief as is just and proper under the circumstances.

Respectfully submitted by,

/s J. Ethan McDaniel
Jeffrey M. Grantham, GRA048
J. Ethan McDaniel, MCD065

Attorneys for Plaintiff Movie Gallery

OF COUNSEL:

- 11 -

01550762.1

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

## PLEASE SERVE THE FOLLOWING DEFENDANTS VIA CERTIFIED MAIL

Mark W. Greenshields
15715 NE 135th Street
Redmond, WA  98052

Associated Sourcing
15715 NE 135th Street
Redmond, WA  98052

Associated Sourcing Holdings, Inc. d/b/a Video Library
15715 NE 135th Street
Redmond, WA  98052

01550762.1



ELECTRONICALLY FILED
10/12/2007 12:35 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into as of this 30th day of OCTOBER , 2006 (the "Effective Date") by and between Mark W. Greenshields, individually, and Associated Sourcing, a sole proprietorship, (collectively "Receiving Party"), 15715 NE 135th St., Redmond, WA 98052 and Movie Gallery US, LLC, a Delaware limited liability Receiving Party, having its principal place of business at 900 West Main Street, Dothan, Alabama 36301 ("Disclosing Party").

## RECITALS

**WHEREAS**, the parties, for their mutual benefit, desire to enter into discussions regarding a potential business relationship between the parties involving Disclosing Party's movie racking business (the "Purpose");

**WHEREAS**, in order to further the Purpose, it is necessary for Disclosing Party to provide or otherwise grant to Receiving Party certain confidential and proprietary information of Disclosing Party and its Affiliates;

**WHEREAS**, the parties intend for this Agreement to extend to and otherwise protect all Confidential Information of the Disclosing Party and its Affiliates;

**NOW THEREFORE**, in consideration of the foregoing premises and the mutual covenants contained herein, the parties hereto agree as follows:

1.    **Definitions**

(a)    <u>Affiliate</u>: An affiliate means any entity that directly or indirectly is in control of, is controlled by, or is under common Control with the Disclosing Party. *"Control"* and *"Controlled"* mean the power, directly or indirectly, to direct, or to cause the direction of, the management and policies of an entity, whether through ownership of voting securities or equity interests, through common directors, trustees or officers, by contract or otherwise. The term "Disclosing Party" includes the Affiliates, if any, of the Disclosing Party.

(b)    <u>Confidential Information</u>: "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, trade secrets, technology, processes, drawings, specifications, programs, models, financial information and projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, customer and supplier lists and other valuable business information and products, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, any Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party,

1

or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

2.    **Handling of Confidential Information**

(a)    The Receiving Party acknowledges that the Confidential Information constitutes a valuable asset to the Disclosing Party. The Receiving Party shall maintain in confidence the Confidential Information, shall not disclose the Confidential Information to anyone without the Disclosing Party's prior written consent which may be withheld in the Disclosing Party's sole discretion; provided, however, the Receiving Party may disclose the Confidential Information to employees, directors, officers, agents, Affiliates, consultants and counselors, including, but not limited to, financial, legal, accounting, tax and audit counselors (the "Receiving Party's Representatives"), who have a need-to-know such Confidential Information in connection with the Purpose, and further provided such representatives are advised of the obligations contained herein and are bound by obligations of confidentiality and non-use substantially comparable in scope with the provisions hereof. The Receiving Party shall be liable for any wrongful disclosure or use of the Confidential Information by any of the Receiving Party's Representatives.

(b)    With respect to the Confidential Information, the Receiving Party shall at least exercise such security measures and degree of care as those which the Receiving Party applies to its own confidential information, but shall not under any circumstances exercise less than a reasonable standard of care.

(c)    Except as necessary for furtherance of the Purpose, the Receiving Party agrees not to copy, reproduce, or reduce to writing any part of the Confidential Information.

(d)    Nothing in this Agreement shall be construed as requiring either party to disclose Confidential Information to the other or to render any assistance to the other.

3.    **Limits of Confidential Information**

The obligations of confidentiality of this Agreement shall not apply to any Confidential Information which:

(i)    is or comes into the public domain without breach of this Agreement;

(ii)    was received by the Receiving Party prior to receipt from the Disclosing Party from a third party other than by breach of an obligation of confidentiality owed to the Disclosing Party; or

(iii)    is independently developed by the Receiving Party without use of or reference to the Confidential Information.

In addition, each of the parties agree that any such information, ideas, suggestions and concepts commonly known in the industry related to the movie racking business that may be offered or disclosed by either party in meetings, consultations or documents exchanged between

2

the parties shall not be deemed included in the Confidential Information, and no party shall be under any obligation to any other party with respect to its use thereof.

### 4.   Other Business Activities

This Agreement shall not in any manner affect or limit either party's present or future business activities or relationships of any nature, including business activities or relationships that may be competitive with those of the other party. Each party understands that the other party and its Affiliates are or may be actively engaged in activities, investments, technology exploitation and research and development efforts (collectively "Business Activities") that are similar to its Business Activities, and that information disclosed to the other party may include, without limitation, descriptions of ideas, works in progress and projects in development that are similar to or coincident with such Business Activities of the other party. Each party further acknowledges that such Business Activities may have originated with the other party's employees or others and may duplicate, parallel or resemble portions of its Confidential Information. Each party agrees that this Agreement shall in no way limit, restrict or preclude the other party from pursuing any of its present or future Business Activities or interests, either alone or in conjunction with others, or from entering into any agreement or transaction of any kind with any other person, regardless of whether the subject matter of any such agreement or transaction involves elements similar to or coincident with Confidential Information exchanged hereunder or is in any other way similar to or coincident with any transaction considered or evaluated by the parties.

### 5.   Limitations and Disclaimer of Warranties

Absent the Disclosing Party's prior written consent, the Receiving Party shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

The parties expressly recognize that the Confidential Information is provided "AS IS". The Disclosing Party makes no warranties, express, implied, statutory or otherwise with respect to the Confidential Information and expressly disclaims all implied warranties.

### 6.   Ownership of Confidential Information

(a)   The Confidential Information is and shall remain the sole and exclusive property of the Disclosing Party.

(b)   In the event that the parties do not enter into a business relationship or either party terminates the discussions related to the Purpose, the Receiving Party shall, at the Disclosing Party's request, promptly, return all Confidential Information, including written documents or other materials embodying the Confidential Information and all copies thereof, to the Disclosing Party's principal place of business as first set forth above, and shall permanently delete any Confidential Information stored electronically and shall certify in writing to the Disclosing Party that such deletion has occurred, or, at the election of the Disclosing Party, the Receiving Party shall destroy all confidential Information received and all copies thereof and shall permanently

delete any Confidential Information stored electronically and provide written certification to the Disclosing Party that all Confidential Information, and copies thereof, in the Receiving Party's possession has been so destroyed or deleted; provided however, a Receiving Party's obligations of confidentiality pursuant hereto shall survive the return of the Confidential Information to the Disclosing Party, the deletion of Confidential Information stored electronically or destruction of the Confidential Information.

(c)     In the event that a Receiving Party receives a request or demand to disclose all or any part of the Confidential Information under the terms of a subpoena or order issued by a court of competent jurisdiction, an agency of any State of the United States or of any other jurisdiction (the "Disclosure Order"), the Receiving Party agrees to promptly notify the Disclosing Party of the existence, terms and circumstances surrounding such Disclosure Order so that such the Disclosing Party may seek a protective order or other appropriate relief or remedy and/or waive compliance with the terms of this Agreement. If, failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving Party, in the opinion of its outside legal counsel, is legally required to disclose Confidential Information, the Receiving Party may disclose such Confidential Information to the extent it is legally required to do so without liability hereunder; provided however, the Receiving Party shall disclose only that portion of the Confidential Information which it is legally required to disclose, and the Receiving Party shall exercise good faith efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the Confidential Information disclosed.

7.     **No Commitment of Business Relationship**

This Agreement shall not commit the parties to enter into a business relationship with each other absent a separate written agreement.

8.     **Injury as a Result of Breach**

(a)     Because of the uniqueness of the Confidential Information, the Receiving Party acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

(b)     No remedy conferred by this Agreement is intended to be exclusive of any other remedy and all remedies now or hereafter existing at law or in equity shall be available to the Disclosing Party.  The election of any one or more remedies shall not constitute a waiver of the right to pursue other available remedies.

9.     **Term**

The obligations of this Agreement shall terminate on the later of five (5) years after the Effective Date or five (5) years after the date of termination or expiration of any written agreement entered into between the parties; provided however, the obligations of confidentiality with regard to trade secrets shall continue indefinitely so long as the secrets remain trade secrets.

4

10. **Miscellaneous**

(a)    This Agreement constitutes the entire understanding between the parties and supersedes any oral or written agreements which may have been entered into between them on disclosure of Confidential Information. This Agreement may not be changed or terminated orally, and no change, termination or attempted waiver of any of the provisions hereto shall be binding unless in writing and signed by the party against whom the same is sought to be enforced.

(b)    If at any time during the term of this Agreement any provision hereof proves to be or becomes invalid or unenforceable under any applicable law, then such provision shall be deemed modified to the extent necessary in order to render such provision valid and enforceable. If such provision may not be so saved, it shall be severed and the remainder of this Agreement shall remain in full force and effect.

(c)    The covenants, representations and warranties contained in this Agreement shall survive its termination.

(d)    The terms of this Agreement shall be governed by, and interpreted under Alabama law, without reference to its conflicts of laws provisions.

(e)    No waiver by a party of any breach of this Agreement shall constitute a waiver of the terms and conditions of this Agreement with respect to any subsequent breach hereof.

(f)    No party may assign this Agreement without the express written consent of the other party.

(g)    Any notice or communication provided under or relating to this Agreement shall be in writing and either hand delivered, deposited in the United States mail, certified with return receipt requested, with postage prepaid, or sent PRIORITY by a nationally-recognized overnight delivery service (i.e. Federal Express, etc.) and addressed to the party at its address first set forth above. Any notice to Disclosing Party shall be sent to the attention of the General Counsel at the address first set forth above. If the addressee rejects or otherwise refuses to accept the notice, or if the notice cannot be delivered because of a change in address for which no notice was given in compliance with this Paragraph 10(g), then notice shall be deemed to have been given upon the date of rejection, refusal or inability to deliver. Notices shall be deemed delivered when actually received by the intended recipient. A change of address by a party must be by notice given to the other parties in the manner specified above.

(i)    For the convenience of the parties, this Agreement may be executed in counterparts. Each such counterpart shall be an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

(j)    If litigation or any other action of any nature whatsoever (including any proceeding under the U.S. Bankruptcy Code) is instituted in connection with any controversy arising out of this Agreement or to interpret or enforce any rights, the prevailing party shall be entitled to recover its attorneys' and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary, as determined by the court(s), in addition to all other amounts provided by law.

5

11.    Authorization

The person signing this Agreement on behalf of the undersigned has the authority to do so and to bind the undersigned to the terms hereof.

IN WITNESS WHEREOF, each party has signed this Agreement on the date(s) indicated below.

**"DISCLOSING PARTY"**                    **"RECEIVING PARTY"**

MOVIE GALLERY US, LLC                 Mark W. Greenshields, individually

By:    S. Page Todd                        By:    Mark W. Greenshields
Its:    Executive Vice President


                                      Associated Sourcing

                                      By:    Mark W. Greenshields
                                      Its:    OWNER
                                             (Title)

6



ELECTRONICALLY FILED
10/12/2007 12:35 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

Director, General Litigation
& Associate Counsel

(334) 677-2108 ext. 22618
Facsimile: (334) 836-3746

E-mail: aott@movgal.com

**Office of the General Counsel**

July 23, 2007

*Via Certified Mail, RRR*
Mr. Mark W. Greenshields
Associated Sourcing
1571 NE 135th Street
Redmond, WA 98052

Re:    Confidentiality Agreement

Dear Mr. Greenshields:

Please be advised that you remain subject to that certain Confidentiality Agreement executed by you and Movie Gallery US, LLC ("Movie Gallery") dated October 30, 2006. A violation of the Confidentiality Agreement by, or your agents, will result in immediate and irreparable injury to Movie Gallery and Movie Gallery will pursue all available legal and equitable remedies.

Movie Gallery expects you to honor your obligations under such agreement as to all Confidential Information provided to you as part of previous negotiations with you, including information provided by current or former employees of Movie Gallery who may also be subject to confidentiality agreements.

Sincerely,

Ashton Ott
Director of General Litigation
& Associate Counsel

cc:    Chris Theademan, VP – Alternative Markets

---

Movie Gallery US, LLC   •   900 West Main Street   •   Dothan, Alabama 36301   •   (334) 677-2108   •   www.moviegallery.com

ELECTRONICALLY FILED
10/12/2007 3:03 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

| | |
|---|---|
| MOVIE GALLERY US, LLC, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) **CIVIL ACTION NO. _____** |
| MARK W. GREENSHIELDS, | ) |
| ASSOCIATED SOURCING, and | ) |
| ASSOCIATED SOURCING HOLDINGS, | ) |
| INC. d/b/a VIDEO LIBRARY | ) |
| | ) |
| **Defendants.** | |

---

## MOTION FOR PRELIMINARY INJUNCTION

---

Pursuant to Rule 65 of the Alabama Rules of Civil Procedure, Plaintiff Movie Gallery US, LLC ("Movie Gallery" or "Plaintiff") respectfully requests that this Court issue a preliminary injunction against Defendants Mark W. Greenshields ("Greenshields"), Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library ("Associated Sourcing") (collectively "Defendants"). Simultaneous with the filing of this motion, Plaintiff is filing a Complaint and Request for Relief and other pleadings. Although the grounds for this motion are more fully set forth in the verified complaint and supporting exhibits, as grounds for this motion, Plaintiff states as follows:

1. On October 30, 2006, Plaintiff and Defendants entered into a confidentiality agreement ("the Confidentiality Agreement"), attached as Exhibit A, restricting Defendants' use of Confidential Information and trade secrets divulged by Plaintiff to Defendants for purposes of negotiating Defendants' potential purchase of Movie Gallery's Video Library business.

2. The Confidentiality Agreement states as follows:

[a]bsent the Disclosing party's [Plaintiff] prior written consent, the Receiving Party [Defendants] shall make no use (commercial or otherwise) of the

1

Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

"Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products,** as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

3.     In breach of the express terms of the Confidentiality Agreement, Defendants have wrongfully and intentionally used Plaintiff's Confidential Information, including customer lists and lists of "Racking Locations," to target and steal away customers of Movie Gallery's Movie Library racking business.

4.     The Confidentiality Agreement further states as follows:

Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this

2

01551530.1

Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

See Exhibit A at ¶ 8(a).

5.    Pursuant to Paragraph 8(a) of the Confidentiality Agreement, Plaintiff seeks this injunctive relief: 1) to enjoin Defendant from using or disclosing any trade secrets, confidential information, proprietary information, or customer information of Plaintiff's; 2) to require Defendant to immediately return over to Plaintiff any writing, document, recording and/or electronic data that contains or relates in any way the trade secrets, confidential information, proprietary information, or customer information obtained from Plaintiff; and 3) to avoid further immediate and irreparable harm to Plaintiff through continued violative conduct by Defendant.

6.    Plaintiff seeks a hearing on this preliminary injunction motion as soon as the Court's calendar permits.

7.    Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

8.    Defendants have breached and, upon information and belief, plan to continue to breach the Confidentiality Agreement. Plaintiff has suffered immediate and irreparable injury as a result of Defendants' continuing breach of the Confidentiality Agreement.

9.    Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets in contravention of the express terms of the Confidentiality Agreement. Injunctive relief would not violate any public policy of the State of Alabama.

01551530.1

10.    Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction. However, as set forth above in ¶ 43, Plaintiff is not required to post such security pursuant to Paragraph 8(a) of the Confidentiality Agreement.

11.    Unless Defendants are preliminarily and permanently enjoined from misappropriating Plaintiff's Confidential Information in breach of the Confidentiality Agreement, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm. Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests:

(a)    That this Court issue a preliminary injunction restraining and enjoining Defendants from using or disclosing any trade secrets, confidential information, or proprietary information belonging to Plaintiff.

(b)    That after trial of this cause, a permanent injunction be entered against Defendants enjoining the conduct set forth above.

(c)    That this Court issue an order requiring Defendants to immediately turn over to Plaintiff any writing, document, recording and/or electronic data that contains or relates to in any way the trade secret, confidential information or proprietary information obtained from Plaintiff.

(d)    That Plaintiff be awarded all of its damages caused by Defendants' wrongful acts, including compensatory, punitive, and exemplary damages, along with costs and attorneys' fees incurred in bringing this action.

(e)    That Plaintiff be given such other equitable and legal relief as is just and proper under the circumstances.

4

Respectfully submitted by,

/s J. Ethan McDaniel
Jeffrey M. Grantham, GRA048
J. Ethan McDaniel, MCD065

Attorneys for Plaintiff Movie Gallery

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

## Notice of Hearing

Please be advised that the above and foregoing Motion has been filed with the Clerk of the Circuit Court for Houston County, Alabama and that the same is set for a hearing before _____ on _____ at _____.

## PLEASE SERVE WITH COMPLAINT

5

ELECTRONICALLY FILED
10/12/2007 3:03 PM
CV-2007-900117.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into as of this 30 day of OCTOBER, 2006 (the "Effective Date") by and between Mark W. Greenshields, individually, and Associated Sourcing, a sole proprietorship, (collectively "Receiving Party"), 15715 NE 135th St., Redmond, WA 98052 and Movie Gallery US, LLC, a Delaware limited liability Receiving Party, having its principal place of business at 900 West Main Street, Dothan, Alabama 36301 ("Disclosing Party").

## RECITALS

WHEREAS, the parties, for their mutual benefit, desire to enter into discussions regarding a potential business relationship between the parties involving Disclosing Party's movie racking business (the "Purpose");

WHEREAS, in order to further the Purpose, it is necessary for Disclosing Party to provide or otherwise grant to Receiving Party certain confidential and proprietary information of Disclosing Party and its Affiliates;

WHEREAS, the parties intend for this Agreement to extend to and otherwise protect all Confidential Information of the Disclosing Party and its Affiliates;

NOW THEREFORE, in consideration of the foregoing premises and the mutual covenants contained herein, the parties hereto agree as follows:

1.    **Definitions**

(a)    <u>Affiliate</u>: An affiliate means any entity that directly or indirectly is in control of, is controlled by, or is under common Control with the Disclosing Party. *"Control"* and *"Controlled"* mean the power, directly or indirectly, to direct, or to cause the direction of, the management and policies of an entity, whether through ownership of voting securities or equity interests, through common directors, trustees or officers, by contract or otherwise. The term "Disclosing Party" includes the Affiliates, if any, of the Disclosing Party.

(b)    <u>Confidential Information</u>: "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, trade secrets, technology, processes, drawings, specifications, programs, models, financial information and projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, customer and supplier lists and other valuable business information and products, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, any Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party,

1

or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

### 2.   Handling of Confidential Information

(a)   The Receiving Party acknowledges that the Confidential Information constitutes a valuable asset to the Disclosing Party.   The Receiving Party shall maintain in confidence the Confidential Information, shall not disclose the Confidential Information to anyone without the Disclosing Party's prior written consent which may be withheld in the Disclosing Party's sole discretion; provided, however, the Receiving Party may disclose the Confidential Information to employees, directors, officers, agents, Affiliates, consultants and counselors, including, but not limited to, financial, legal, accounting, tax and audit counselors (the "Receiving Party's Representatives"), who have a need-to-know such Confidential Information in connection with the Purpose, and further provided such representatives are advised of the obligations contained herein and are bound by obligations of confidentiality and non-use substantially comparable in scope with the provisions hereof. The Receiving Party shall be liable for any wrongful disclosure or use of the Confidential Information by any of the Receiving Party's Representatives.

(b)   With respect to the Confidential Information, the Receiving Party shall at least exercise such security measures and degree of care as those which the Receiving Party applies to its own confidential information, but shall not under any circumstances exercise less than a reasonable standard of care.

(c)   Except as necessary for furtherance of the Purpose, the Receiving Party agrees not to copy, reproduce, or reduce to writing any part of the Confidential Information.

(d)   Nothing in this Agreement shall be construed as requiring either party to disclose Confidential Information to the other or to render any assistance to the other.

### 3.   Limits of Confidential Information

The obligations of confidentiality of this Agreement shall not apply to any Confidential Information which:

(i)   is or comes into the public domain without breach of this Agreement;

(ii)   was received by the Receiving Party prior to receipt from the Disclosing Party from a third party other than by breach of an obligation of confidentiality owed to the Disclosing Party; or

(iii)   is independently developed by the Receiving Party without use of or reference to the Confidential Information.

In addition, each of the parties agree that any such information, ideas, suggestions and concepts commonly known in the industry related to the movie racking business that may be offered or disclosed by either party in meetings, consultations or documents exchanged between

the parties shall not be deemed included in the Confidential Information, and no party shall be under any obligation to any other party with respect to its use thereof.

### 4.    Other Business Activities

This Agreement shall not in any manner affect or limit either party's present or future business activities or relationships of any nature, including business activities or relationships that may be competitive with those of the other party. Each party understands that the other party and its Affiliates are or may be actively engaged in activities, investments, technology exploitation and research and development efforts (collectively "Business Activities") that are similar to its Business Activities, and that information disclosed to the other party may include, without limitation, descriptions of ideas, works in progress and projects in development that are similar to or coincident with such Business Activities of the other party. Each party further acknowledges that such Business Activities may have originated with the other party's employees or others and may duplicate, parallel or resemble portions of its Confidential Information. Each party agrees that this Agreement shall in no way limit, restrict or preclude the other party from pursuing any of its present or future Business Activities or interests, either alone or in conjunction with others, or from entering into any agreement or transaction of any kind with any other person, regardless of whether the subject matter of any such agreement or transaction involves elements similar to or coincident with Confidential Information exchanged hereunder or is in any other way similar to or coincident with any transaction considered or evaluated by the parties.

### 5.    Limitations and Disclaimer of Warranties

Absent the Disclosing Party's prior written consent, the Receiving Party shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

The parties expressly recognize that the Confidential Information is provided "AS IS". The Disclosing Party makes no warranties, express, implied, statutory or otherwise with respect to the Confidential Information and expressly disclaims all implied warranties.

### 6.    Ownership of Confidential Information

(a)    The Confidential Information is and shall remain the sole and exclusive property of the Disclosing Party.

(b)    In the event that the parties do not enter into a business relationship or either party terminates the discussions related to the Purpose, the Receiving Party shall, at the Disclosing Party's request, promptly, return all Confidential Information, including written documents or other materials embodying the Confidential Information and all copies thereof, to the Disclosing Party's principal place of business as first set forth above, and shall permanently delete any Confidential Information stored electronically and shall certify in writing to the Disclosing Party that such deletion has occurred, or, at the election of the Disclosing Party, the Receiving Party shall destroy all confidential Information received and all copies thereof and shall permanently

3

delete any Confidential Information stored electronically and provide written certification to the Disclosing Party that all Confidential Information, and copies thereof, in the Receiving Party's possession has been so destroyed or deleted; provided however, a Receiving Party's obligations of confidentiality pursuant hereto shall survive the return of the Confidential Information to the Disclosing Party, the deletion of Confidential Information stored electronically or destruction of the Confidential Information.

(c)    In the event that a Receiving Party receives a request or demand to disclose all or any part of the Confidential Information under the terms of a subpoena or order issued by a court of competent jurisdiction, an agency of any State of the United States or of any other jurisdiction (the "Disclosure Order"), the Receiving Party agrees to promptly notify the Disclosing Party of the existence, terms and circumstances surrounding such Disclosure Order so that such the Disclosing Party may seek a protective order or other appropriate relief or remedy and/or waive compliance with the terms of this Agreement. If, failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving Party, in the opinion of its outside legal counsel, is legally required to disclose Confidential Information, the Receiving Party may disclose such Confidential Information to the extent it is legally required to do so without liability hereunder; provided however, the Receiving Party shall disclose only that portion of the Confidential Information which it is legally required to disclose, and the Receiving Party shall exercise good faith efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the Confidential Information disclosed.

7.    **No Commitment of Business Relationship**

This Agreement shall not commit the parties to enter into a business relationship with each other absent a separate written agreement.

8.    **Injury as a Result of Breach**

(a)    Because of the uniqueness of the Confidential Information, the Receiving Party acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

(b)    No remedy conferred by this Agreement is intended to be exclusive of any other remedy and all remedies now or hereafter existing at law or in equity shall be available to the Disclosing Party. The election of any one or more remedies shall not constitute a waiver of the right to pursue other available remedies.

9.    **Term**

The obligations of this Agreement shall terminate on the later of five (5) years after the Effective Date or five (5) years after the date of termination or expiration of any written agreement entered into between the parties; provided however, the obligations of confidentiality with regard to trade secrets shall continue indefinitely so long as the secrets remain trade secrets.

4

## 10.   Miscellaneous

(a)    This Agreement constitutes the entire understanding between the parties and supersedes any oral or written agreements which may have been entered into between them on disclosure of Confidential Information. This Agreement may not be changed or terminated orally, and no change, termination or attempted waiver of any of the provisions hereto shall be binding unless in writing and signed by the party against whom the same is sought to be enforced.

(b)    If at any time during the term of this Agreement any provision hereof proves to be or becomes invalid or unenforceable under any applicable law, then such provision shall be deemed modified to the extent necessary in order to render such provision valid and enforceable. If such provision may not be so saved, it shall be severed and the remainder of this Agreement shall remain in full force and effect.

(c)    The covenants, representations and warranties contained in this Agreement shall survive its termination.

(d)    The terms of this Agreement shall be governed by, and interpreted under Alabama law, without reference to its conflicts of laws provisions.

(e)    No waiver by a party of any breach of this Agreement shall constitute a waiver of the terms and conditions of this Agreement with respect to any subsequent breach hereof.

(f)    No party may assign this Agreement without the express written consent of the other party.

(g)    Any notice or communication provided under or relating to this Agreement shall be in writing and either hand delivered, deposited in the United States mail, certified with return receipt requested, with postage prepaid, or sent PRIORITY by a nationally-recognized overnight delivery service (i.e. Federal Express, etc.) and addressed to the party at its address first set forth above. Any notice to Disclosing Party shall be sent to the attention of the General Counsel at the address first set forth above. If the addressee rejects or otherwise refuses to accept the notice, or if the notice cannot be delivered because of a change in address for which no notice was given in compliance with this Paragraph 10(g), then notice shall be deemed to have been given upon the date of rejection, refusal or inability to deliver. Notices shall be deemed delivered when actually received by the intended recipient. A change of address by a party must be by notice given to the other parties in the manner specified above.

(i)    For the convenience of the parties, this Agreement may be executed in counterparts. Each such counterpart shall be an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

(j)    If litigation or any other action of any nature whatsoever (including any proceeding under the U.S. Bankruptcy Code) is instituted in connection with any controversy arising out of this Agreement or to interpret or enforce any rights, the prevailing party shall be entitled to recover its attorneys' and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary, as determined by the court(s), in addition to all other amounts provided by law.

11.        Authorization

The person signing this Agreement on behalf of the undersigned has the authority to do so and to bind the undersigned to the terms hereof.

IN WITNESS WHEREOF, each party has signed this Agreement on the date(s) indicated below.

"DISCLOSING PARTY"                    "RECEIVING PARTY"

MOVIE GALLERY US, LLC                 Mark W. Greenshields, individually

By:    S. Page Todd                   By:    Mark W. Greenshields
Its:   Executive Vice President


                                      Associated Sourcing

                                      By:    Mark W. Greenshields
                                      Its:   OWNER
                                             (Title)

6

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001255
Cashier ID: brobinso
Transaction Date: 11/26/2007
Payer Name: BRADLEY ARANT ROSE WHITE
-----------------------------------
CIVIL FILING FEE
 For: BRADLEY ARANT ROSE WHITE
 Case/Party: D-ALM-1-07-CV-001032-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 4662
 Amt Tendered: $350.00
-----------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00

MOVIE GALLERY V. GREENSHIELDS ET AL