**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MOVIE GALLERY US, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 1:07CV1032-MHT** |
| | ) | |
| **MARK W. GREENSHIELDS,** | ) | |
| **ASSOCIATED SOURCING, and** | ) | |
| **ASSOCIATED SOURCING HOLDINGS,** | ) | |
| **INC. d/b/a VIDEO LIBRARY** | ) | |
| | ) | |
| **Defendants.** | | |

## FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a) and this Court's grant of leave to amend its Complaint, Plaintiff Movie Gallery US, LLC ("Movie Gallery" or "Plaintiff") hereby amends its Complaint as follows:

## INTRODUCTION

1.     Plaintiff's claims arise out of Defendants' misappropriation and use of Plaintiff's trade secrets and confidential information in breach of the express provisions of the Confidentiality Agreement entered into by Plaintiff and Defendants and in contravention of Alabama, Montana, Washington, Oregon, North Dakota, Iowa, and Alaska law.  Defendants are also using Plaintiff's VIDEO LIBRARY mark ("the Mark"), without license, and in a manner that is likely to cause confusion  between Plaintiff's movie racking business and that of Defendants.   Such unlicensed and confusing use of the Mark is in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125, and the laws of the states of Alabama, Montana, Washington, Oregon, North Dakota, Iowa, and Alaska.

## PARTIES

2.     Plaintiff Movie Gallery is a Delaware limited liability company with its principal place of business in Dothan, Alabama.

3.     Defendant Mark W. Greenshields is an individual resident of the State of Washington.

4.     Defendant Associated Sourcing is a sole proprietorship existing under the laws of the State of Washington.

5.     Defendant Associated Sourcing Holdings, Inc. d/b/a Video Library is a corporation existing under the laws of the State of Washington.

## JURISDICTION AND VENUE

6.     Complete diversity of citizenship exists as Plaintiff is a citizen of the states of Alabama and Delaware, and no Defendant is a citizen of either Alabama or Delaware.  The amount in controversy in this case is well in excess of the statutory minimum required for this Court to exercise its jurisdiction.  Thus, federal jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

7.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Plaintiff seeks relief under Section 43 the Lanham Act (15 U.S.C. § 1125).  This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

8.     Defendants have sufficient contacts with the State of Alabama to satisfy the requirements of Due Process and traditional notions of fair play and substantial justice.

9.     Venue in this Court is proper under 28 U.S.C. §§ 1391(a) and (c).

## FACTUAL BACKGROUND

10.     Plaintiff is an entertainment and retail company with video stores located throughout the United States.

01576901.1

11.     Movie Gallery and its predecessors in interest have operated Video Library, a movie racking business, under the mark Video Library ("Video Library Business"). In so doing, Movie Gallery enters into agreements with retail stores, such as grocery and convenient stores, whereby Movie Gallery places "racks" in these various retail stores. VHS and DVD versions of movies are placed on the racks and are available for rent or sale to customers of these retail stores. Essentially, the Video Library functions as a miniature video rental store inside the larger retail store. Video Library also enters into sell-through agreements with these retail stores, through which customers may purchase movies at the retail stores.

12.     In or around October of 2006, Movie Gallery engaged in negotiations with Defendants Greenshields and Associated Sourcing regarding their potential purchase of the Video Library Business (including the VIDEO LIBRARY Mark and all associated goodwill) from Movie Gallery.

13.     In conjunction with these negotiations, Greenshields and Associated Sourcing entered into a confidentiality agreement ("the Confidentiality Agreement") with Movie Gallery on October 30, 2006. (See Confidentiality Agreement, attached hereto as Exhibit A.) The purpose of the Confidentiality Agreement was to restrict Defendants' use and disclosure of certain confidential information set forth therein ("Confidential Information") regarding Video Library that was necessary to provide to Defendants for purposes of the negotiations regarding Defendants' plan to purchase the Video Library Business from Movie Gallery. Pursuant to the Confidentiality Agreement, Defendants acknowledged that the Confidential Information disclosed to Defendants constituted a "valuable asset" to Movie Gallery. (*See* Exhibit A at ¶ 2(a)). Further, the Confidentiality Agreement expressly states:

> [a]bsent [Movie Gallery's] prior written consent, the [Defendants] shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other

intellectual property rights now or hereafter owned or controlled by [Movie Gallery] and/or [Movie Gallery's] Affiliates.

*See* Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

> "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products**, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

*See* Exhibit A at ¶ 1(b) (emphasis added).

14.    During the course of negotiations between Defendants and Movie Gallery regarding Defendants' possible purchase of the Video Library Business from Movie Gallery, Confidential Information belonging solely to Movie Gallery was disclosed to Defendants, pursuant to the Confidentiality Agreement. Information constituting trade secrets of Movie Gallery also was disclosed. Specifically, lists of customers to which Movie Gallery was under contract to provide Video Library services and "Racking Locations" were divulged to Defendants.

15.     On or around May 21, 2007, the Board of Directors of Movie Gallery, Inc. determined that it was not in the best interest of Movie Gallery to sell the Video Library Business to Defendants.

16.     Shortly after the decision not to sell the Video Library Business to Defendants, Defendants used their business, known as "Associated Sourcing," to engage in the exact same business as Movie Gallery's Video Library Business.   In direct contravention of the Confidentiality Agreement, Defendants began using trade secrets and Confidential Information owned by Movie Gallery and subject to the Confidentiality Agreement to divert customers from Movie Gallery to Defendants.

17.     Defendants have also employed the use of Movie Gallery's VIDEO LIBRARY Mark to trade off the goodwill established in the Mark.   Indeed, on May 23, 2007, Greenshields applied for federal registration of the VIDEO LIBRARY Mark with the United States Patent and Trademark Office.   (*See* Record of Application for VIDEO LIBRARY Mark,  attached hereto as Exhibit B.)     In this registration, Greenshields represents that he began using the VIDEO LIBRARY Mark in commerce on May 23, 2007.   Defendants also registered with the State of Washington the trade name "Video Library." In a further attempt to confuse customers, upon information and belief, Defendants even rented warehouse space formerly utilized by Movie Gallery**.**

18.     Defendants also began soliciting Movie Gallery employees with knowledge of Movie Gallery's confidential and proprietary information, as well as its trade secrets pertaining to its Video Library Business to join Defendants' business.   In all, three Movie Gallery employees joined Defendants' business and directly competed against Movie Gallery using Movie Gallery's confidential and proprietary information, as well as its trade secrets to steal business away from Movie Gallery.

19.    On July 23, 2007, Movie Gallery sent Defendant Greenshields a letter reminding him of his obligations under the Confidentiality Agreement and informing Greenshields that any violation of the Confidentiality Agreement will result in legal action.  (*See* July 23, 2007 letter, attached hereto as Exhibit C.)

20.    Notwithstanding the admonitions in the July 23, 2007 letter, Defendants wrongfully continue using Movie Gallery's confidential and proprietary information, as well as trade secrets, to solicit Movie Gallery's Video Library Business away from Movie Gallery. Upon information and belief, Defendants have solicited Movie Gallery customers in the states of Alaska,  Iowa, Montana, North Dakota, Oregon, and Washington.

## COUNT I

### (Breach of Contract and Injunctive Relief)

21.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 20 above, as though fully set forth herein.

### Breach of Contract

22.    On October 30, 2006, Defendants and Plaintiff entered into the Confidentiality Agreement.  Exhibit A.

23.    Under the terms of the Confidentiality Agreement:

[a]bsent the Disclosing party's [Plaintiff] prior written consent, the Receiving Party [Defendants] shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

See Exhibit A at ¶ 5.

The Confidentiality Agreement defines Confidential Information as follows:

"Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation,

- 6 -

information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, **trade secrets,** technology, processes, drawings, specifications, programs, models, financial information projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, **customer and supplier lists and other valuable business information and products**, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, and Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

See Exhibit A at ¶ 1(b) (emphasis added).

24.     In conjunction with the discussions regarding Defendants' potential purchase of Plaintiff's Video Library Business, Confidential Information, including customer lists and lists of "Racking Locations," was disclosed to Defendants pursuant to the Confidentiality Agreement.

25.     On or around May 21, 2007, the Board of Directors of Movie Gallery, Inc. determined that is was not in the best interests of Movie Gallery to sell the Video Library Business to Defendants. Shortly thereafter, Defendants used their business, known as "Associated Sourcing," to engage in the exact same business as Movie Gallery's Video Library.

26.     In breach of the express terms of the Confidentiality Agreement, Defendants have wrongfully and intentionally used Plaintiff's Confidential Information, including customer lists and lists of "Racking Locations," to target and steal away customers of Movie Gallery's Movie Library racking business.

27.     The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff, including, among other things, lost opportunity to fairly compete, lost profits, and

attorneys fees.  The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

## Injunctive Relief

28.    The Confidentiality Agreement further states as follows:

Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled. Exhibit A at ¶ 8(a).

29.    Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

30.    As set forth above, Defendants have breached and, upon information and belief, plan to continue to breach the Confidentiality Agreement.  Accordingly, Plaintiff is entitled to injunctive relief pursuant to the Confidentiality Agreement as it has suffered immediate and irreparable injury as a result of Defendants' breaches of the Confidentiality Agreement and any future breaches will similarly result in immediate and irreparable injury to Plaintiff.

31.    Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets in violation of the express terms of the Confidentiality Agreement.  Injunctive relief would not violate any public policy of the State of Alabama.

32.    Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction.  However, as set forth above in ¶ 43, Plaintiff is not required to post such security pursuant to the Confidentiality Agreement.

33.    Unless Defendants are preliminarily and permanently enjoined from misappropriating Plaintiff's Confidential Information in breach of the Confidentiality Agreement, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm. Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

## COUNT II

### (Violation of State Trade Secrets Acts)

34.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 33 above, as though fully set forth herein.

35.    Plaintiff's Confidential Information taken by Defendants derives actual or potential independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use.

36.    Plaintiff at all times relevant hereto took steps to protect the confidentiality and secrecy of its Confidential Information, including without limitation, by entering into the Confidentiality Agreement with Defendants here.

37.    Defendants have, collectively and independently, misappropriated, divulged and used Plaintiff's Confidential Information in violation of Ala. Code 8-27-1 *et seq.*; Alaska Stat. § 45.50.910 *et seq.*; Iowa Code § 550.1 *et seq.*; Mont. Code. Ann. § 30-14-402 *et seq.*; N.D. Cent. Code § 47-25.1-01 *et seq.*; Or. Rev. Stat. § 646.461 *et seq.*; and Wash. Rev. Code § 19.108.010 *et seq.*

38.    Plaintiff has not provided Defendants with its express or implied consent to misappropriate or utilize Plaintiff's Confidential Information.

- 9 -

39.     The misappropriation of Plaintiff's Confidential Information by Defendants was willful and malicious.

40.     As a result of the misappropriation and use of Plaintiff's Confidential Information by Defendants, Plaintiff has suffered and will continue to suffer irreparable damages.

41.     Specifically, the wrongful and illegal actions of Defendants is proximately causing damages to Plaintiff including loss of its customers and racking business.  The extent of Plaintiff's damages is currently unknown and incalculable due to Defendants' attempt to conceal their misdeeds.

42.     Pursuant to Ala. Code 8-27-1 *et seq.*; Alaska Stat. § 45.50.910 *et seq.*; Iowa Code § 550.1 *et seq.*; Mont. Code. Ann. § 30-14-402 *et seq.*; N.D. Cent. Code § 47-25.1-01 *et seq.*; Or. Rev. Stat. § 646.461 *et seq.*; and Wash. Rev. Code § 19.108.010 *et seq.*, this Court may enjoin the actual or threatened misappropriation of Plaintiff's Confidential Information by Defendants.

43.     Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

44.     Further, the Confidentiality Agreement states as follows:

> Because of the uniqueness of the Confidential Information, the Receiving Party [Defendants] acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party [Plaintiff] and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.  Exhibit A at ¶ 8(a).

45.     Plaintiff is likely to prevail on the merits, because Defendant is openly misappropriating Plaintiff's Confidential Information and/or trade secrets.  Injunctive relief would not violate any public policy of the State of Alabama or any other state.

01576901.1

46.     Plaintiff stands willing and able to post reasonable security to protect Defendant from any wrongful issuance of an injunction.  However, as set forth above in ¶ 29, Plaintiff is not required to post security pursuant to the Confidentiality Agreement.

47.     Unless Defendants are preliminarily and permanently enjoined from misappropriating Plaintiff's Confidential Information, Defendants will continue their use and misappropriation of this Confidential Information and will continue to cause Plaintiff irreparable harm.    Accordingly, a preliminary and permanent injunction enjoining Defendant from continuing their actions is a necessary remedy if Plaintiff is to obtain meaningful relief.

## COUNT III

### (Interference with Contractual or Business Relations)

48.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 47 above, as though fully set forth herein.

**Interference with Movie Gallery's Contractual or Business Relations with Movie Gallery's Customers.**

49.     In entering into the Confidentiality Agreement, Defendants knew of their obligations not to disclose Plaintiff's confidential and/or trade secret information.  Defendants, without justification, wrongfully misappropriated Plaintiff's confidential and/or trade secret information in order to gain an unfair advantage.  Defendants have, in turn, wrongfully used Plaintiff's confidential and/or trade secret information to intentionally and unfairly divert customers and racking business away from Plaintiff and to Defendants.

50.     In obtaining customers from Plaintiff's customer lists, a list that is confidential, Defendants have wrongfully interfered with Plaintiff's contractual and business relationships with its customers.

51.     Defendants are not justified in wrongfully obtaining and using confidential information belonging to Movie Gallery in contravention of the Confidentiality Agreement.

- 11 -

52.   The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff including, among other things, lost opportunity to fairly compete, lost profits, and attorneys fees.  The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

53.   Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

**Interference with Movie Gallery's Contractual Relationship with Jared Smith**

54.   In conjunction with his employment with Video Library, Inc., Jared Smith ("Smith") entered into a Non-Solicitation & Confidentiality Agreement ("Smith Agreement") with Video Library, Inc.  (*See* Jared Smith Non-Solicitation & Confidentiality Agreement, attached hereto as Exhibit D.)  Paragraph 2.2 of the Smith Agreement provides as follows:

> **Trade Secrets and Confidential Information.**   During employment with the Company, the Employee will become familiar with various trade secrets or proprietary information consisting of procedures, formulas, devices, testing, processing, secret inventions, processes and compilations of confidential information, **such as records and customer lists**, as owned by the Company and regularly utilized in the operation of the business of the Company.   For employment extended and for the other consideration herein, the Employee agrees that he/she shall not disclose any trade secrets, directly or indirectly, nor the use them in any way thereafter, except as required in the course of his/her employment by the Company.   All files, records, documents, drawings, specifications, equipment, and similar items relating to the business of the Company, whether or not prepared by the Employee, shall remain the exclusive property of the Company and shall not be removed from the premises of the Company under any circumstances without prior written consent of the Company.

Smith Agreement (Ex. D.) at ¶ 2.2 (emphasis added).

55.   Movie Gallery acquired the stock of Video Library, Inc.  Pursuant to Paragraph 8 of the Smith Agreement, Movie Gallery can enforce the Smith Agreement against Smith.  Paragraph 8 provides as follows:

**Entirety of Agreement & Binding Effect.** This Agreement constitutes the whole agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties. This Agreement is binding upon Employee and his/her heirs and assigns and shall inure to the benefit of any successor of the Company; and any such successor shall be deemed substituted for the Company for all purposes. **"Successor" shall include any person, firm, corporation or other business entity which at any time, whether by purchase, merger or otherwise, directly or indirectly acquires the Company's assets, business, or stock.**

Smith Agreement (Ex. D) at ¶ 8 (emphasis added).

56.     Smith was employed with Movie Gallery after it acquired Video Library Inc., and had access to Movie Gallery's Confidential Information. Upon solicitation by Defendants, Smith terminated his employment with Movie Gallery and was subsequently employed by Defendants.

57.     Upon information and belief, Defendants have wrongfully interfered with Movie Gallery's Agreement with Smith by requesting and encouraging Smith to contact and solicit Movie Gallery customers using Movie Gallery's confidential information and to divulge Movie Gallery's confidential information to Defendants, to the detriment of Movie Gallery and in breach of Smith's Agreement with Movie Gallery.

58.     Defendants are not justified in wrongfully obtaining and using confidential information belonging to Movie Gallery in contravention of the Smith Agreement.

59.     The wrongful and illegal actions of Defendants are proximately causing damages to Plaintiff including, among other things, lost opportunity to fairly compete, lost profits, and attorneys fees. The extent of Plaintiff's damages are currently unknown and incalculable due to Defendants' attempts to conceal their misdeeds.

60.     Plaintiff has no adequate remedy at law for Defendants' actions since the damage that Plaintiff will suffer as a result of the use and divulgence of its Confidential Information as well as the loss of its competitive position, are incapable of exact proof.

**COUNT IV**

- 13 -

**(Lanham Act/Federal Unfair Competition)**

61.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 60 above, as though fully set forth herein.

62.     Movie Gallery's VIDEO LIBRARY Mark is inherently distinctive, has acquired secondary meaning in the marketplace, or both.

63.     The adoption and use by Plaintiff of the VIDEO LIBRARY Mark preceded by many years the adoption and use by Defendants.  Plaintiff has priority to, and ownership of, the VIDEO LIBRARY Mark.

64.      On May 23, 2007, Defendant Greenshields applied for registration of the Video Library trade name with the United States Patent Office.  *See* Exhibit B.  In this application, Greenshields expressly admitted that he began using the Video Library trade name in commerce on May 23, 2007.  Greenshields has also registered the Video Library trade name in the state of Washington.  Finally, upon information and belief, in a further attempt to confuse customers, Defendants even rented warehouse space formerly utilized by Movie Gallery.

65.     In violation of 15 U.S.C. § 1125(a)(1)(A), Defendants have used the VIDEO LIBRARY Mark in commerce in a manner that is likely to cause confusion as to the origin, sponsorship, or approval of the goods and services provided in conjunction with Defendants' movie racking business, which is identical in nature to Movie Gallery's Video Library movie racking business.

66.     Defendants' actions have caused injury to Movie Gallery's goodwill and reputation symbolized by the VIDEO LIBRARY Mark, for which Movie Gallery has no adequate remedy at law.

01576901.1

67.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the VIDEO LIBRARY Mark to the great and irreparable injury of Movie Gallery.

68.    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Movie Gallery, and Movie Gallery is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages (including, but not limited to, treble damages), costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§§ 1125(a), 1116 and 1117.

## COUNT V

### (Violation of State Deceptive Trade Practices Acts)

69.    Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 68 above, as though fully set forth herein.

70.    Defendants have used the VIDEO LIBRARY Mark in commerce in a manner that is likely to cause confusion as to the origin, sponsorship, or approval of the goods and services provided in conjunction with Defendants' movie racking business, which is identical in nature to Movie Gallery's Video Library movie racking business.

71.    Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade or commerce in violation of the deceptive trade practice statutes of several states including, but not limited to, Alaska Stat. § 45.50.471 *et seq* ; Or. Rev. Stat. § 646.605 *et seq.* ; Wash. Rev. Code § 19.86.010 *et seq.*

72.    Defendants' unauthorized use of Movie Gallery's VIDEO LIBRARY Mark has caused and is likely to cause substantial injury to the public and to Movie Gallery, and Movie Gallery is entitled to injunctive relief and to recover damages, punitive damages, costs and reasonable attorneys' fees.

01576901.1

## COUNT VI

### (Common-law Trade Name Infringement and Unfair Competition)

73.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 72 above, as though fully set forth herein.

74.     Movie Gallery's VIDEO LIBRARY Mark is inherently distinctive, has acquired secondary meaning in the marketplace, or both.

75.     The adoption and use by Plaintiff of the VIDEO LIBRARY Mark preceded by many years the adoption and use by Defendants.  Plaintiff has priority to, and ownership of, the VIDEO LIBRARY Mark.

76.     Defendants have used the VIDEO LIBRARY Mark in commerce in a manner that is likely to cause confusion as to the origin, sponsorship, or approval of the goods and services provided in conjunction with Defendants' movie racking business, which is identical in nature to Movie Gallery's Video Library movie racking business.

77.     Defendants' acts constitute common-law trade name infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of Movie Gallery unless restrained by this Court.  Movie Gallery has no adequate remedy at law for this injury.

78.     Upon information and belief, Defendants acted with full knowledge of Movie Gallery's use of, and statutory and common-law rights to, the VIDEO LIBRARY Mark.

79.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the VIDEO LIBRARY Mark to the great and irreparable injury of Movie Gallery.

80.     As a result of Defendants' acts, Movie Gallery has been damaged in an amount not as yet determined or ascertainable.  At a minimum, however, Movie Gallery is entitled to

01576901.1

injunctive relief, to an accounting of Defendants' profits, to damages, and to costs. In light of the deliberately fraudulent and malicious use of the VIDEO LIBRARY Mark, and the need to deter Defendants from similar conduct in the future, Movie Gallery is entitled to punitive damages.

## RELIEF

WHEREFORE, Plaintiff requests:

(a)    That this Court issue a preliminary injunction restraining and enjoining Defendants, and any of their successors, subsidiaries, affiliates, officers, agents, servants, directors, managers, employee, and other persons in active concert or participation with them from using or disclosing any trade secrets, Confidential Information, or proprietary information belonging to Plaintiff.

(b)    That this Court issue a preliminary injunction restraining and enjoining Defendants, and any of their successors, subsidiaries, affiliates, officers, agents, servants, directors, managers, employee, and other persons in active concert or participation with them from using the VIDEO LIBRARY Mark.

(c)    That this Court issue a preliminary injunction restraining and enjoining Defendants, and any of their successors, subsidiaries, affiliates, officers, agents, servants, directors, managers, employee, and other persons in active concert or participation with them from making any statements or representations to the effect that they own or control the VIDEO LIBRARY Mark.

(d)    That this Court issue a preliminary injunction restraining and enjoining Defendants, and any of their successors, subsidiaries, affiliates, officers, agents, servants, directors, managers, employee, and other persons in active concert or participation with them

01576901.1

from filing any application for trade mark or service mark registration on the VIDEO LIBRARY Mark, alone or in connection with any other trade name(s).

(e)     That this Court issue a preliminary injunction restraining and enjoining Defendants, and any of their successors, subsidiaries, affiliates, officers, agents, servants, directors, managers, employee, and other persons in active concert or participation with them from contesting or challenging the validity of the VIDEO LIBRARY Mark, and from otherwise interfering with Movie Gallery's continued use of the VIDEO LIBRARY Mark, alone or in connection with any other trade name(s).

(f)     That after trial of this cause, a permanent injunction be entered against Defendants enjoining the conduct set forth above.

(g)     That this Court issue an order requiring Defendants to immediately turn over to Plaintiff any writing, document, recording and/or electronic data that contains or relates to in any way the trade secret, Confidential Information or proprietary information obtained from Plaintiff.

(h)     That this Court issue an order requiring Defendants to deliver to Plaintiff's counsel within thirty (30) days after issuance of such order, to be impounded or destroyed by Plaintiffs, all products that display the VIDEO LIBRARY Mark, alone or in connection with any other mark(s);

(i)     That this Court issue an order requiring Defendants to deliver to Plaintiff's counsel within thirty (30) days after issuance of such order, to be impounded or destroyed by Plaintiff, all signs, labels, packages, wrappers and advertisements bearing the VIDEO LIBRARY Mark, alone or in connection with any other mark(s);

(j)     That Plaintiff be awarded all of its damages caused by Defendants' wrongful acts, including compensatory, punitive, and exemplary damages, along with costs and attorneys' fees incurred in bringing this action.

01576901.1

(k)     That Plaintiff be given such other equitable and legal relief as is just and proper under the circumstances.

Respectfully submitted by,

/s J. Ethan McDaniel
Jeffrey M. Grantham, GRA048
M. Lee Huffaker, HUF011
J. Ethan McDaniel, MCD065

Attorneys for Plaintiff Movie Gallery

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

01576901.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Charles Andrew Stewart, III
Quindal C. Evans
Bradley Arant Rose & White, LLP
PO Box 1469
Montgomery, AL 36102-1469

Philip E. Cutler
Robert G. Nylander
Cutler Nylander & Hayton, P.S.
1191 Second Avenue, Suite 1650
Seattle, WA 98101

/s J. Ethan McDaniel
OF COUNSEL

- 20 -

01576901.1

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement") is entered into as of this 30ᵗʰ day of OCTOBER, 2006 (the "Effective Date") by and between Mark W. Greenshields, individually, and Associated Sourcing, a sole proprietorship, (collectively "Receiving Party"), 15715 NE 135ᵗʰ St., Redmond, WA 98052 and Movie Gallery US, LLC, a Delaware limited liability Receiving Party, having its principal place of business at 900 West Main Street, Dothan, Alabama 36301 ("Disclosing Party").

## RECITALS

**WHEREAS,** the parties, for their mutual benefit, desire to enter into discussions regarding a potential business relationship between the parties involving Disclosing Party's movie racking business (the "Purpose");

**WHEREAS,** in order to further the Purpose, it is necessary for Disclosing Party to provide or otherwise grant to Receiving Party certain confidential and proprietary information of Disclosing Party and its Affiliates;

**WHEREAS,** the parties intend for this Agreement to extend to and otherwise protect all Confidential Information of the Disclosing Party and its Affiliates;

**NOW THEREFORE,** in consideration of the foregoing premises and the mutual covenants contained herein, the parties hereto agree as follows:

1. **Definitions**

   (a)   Affiliate: An affiliate means any entity that directly or indirectly is in control of, is controlled by, or is under common Control with the Disclosing Party. "*Control*" and "*Controlled*" mean the power, directly or indirectly, to direct, or to cause the direction of, the management and policies of an entity, whether through ownership of voting securities or equity interests, through common directors, trustees or officers, by contract or otherwise. The term "Disclosing Party" includes the Affiliates, if any, of the Disclosing Party.

   (b)   Confidential Information: "Confidential Information" shall mean all information and materials disclosed pursuant hereto, whether oral or written, including, without limitation, information and materials about the Disclosing Party's, and its Affiliates', confidential or proprietary business, financial, engineering and/or technical information, information and tangible and intangible property which may relate to websites, code, algorithms, proprietary products, concepts, marketing information, trade secrets, technology, processes, drawings, specifications, programs, models, financial information and projections, formulae, data, know-how, developments, designs, improvements, software programs, marketing materials, plans and strategies, customer and supplier lists and other valuable business information and products, as well as, analyses, compilations, abstracts, studies, summaries or other documents prepared by any party which contain or otherwise reflect or, in whole or in part, are generated from, any Confidential Information. The "Confidential Information" also includes confidential information of any third party that Disclosing Party is obligated to treat as confidential. Further, the fact that discussions are taking place concerning a possible transaction between Disclosing Party and Receiving Party,

1



or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof and the fact that Confidential Information has been made available to the Receiving Party shall be confidential in nature and shall not be disclosed to anyone.

### 2.    Handling of Confidential Information

(a)    The Receiving Party acknowledges that the Confidential Information constitutes a valuable asset to the Disclosing Party.  The Receiving Party shall maintain in confidence the Confidential Information, shall not disclose the Confidential Information to anyone without the Disclosing Party's prior written consent which may be withheld in the Disclosing Party's sole discretion; provided, however, the Receiving Party may disclose the Confidential Information to employees, directors, officers, agents, Affiliates, consultants and counselors, including, but not limited to, financial, legal, accounting, tax and audit counselors (the "Receiving Party's Representatives"), who have a need-to-know such Confidential Information in connection with the Purpose, and further provided such representatives are advised of the obligations contained herein and are bound by obligations of confidentiality and non-use substantially comparable in scope with the provisions hereof. The Receiving Party shall be liable for any wrongful disclosure or use of the Confidential Information by any of the Receiving Party's Representatives.

(b)    With respect to the Confidential Information, the Receiving Party shall at least exercise such security measures and degree of care as those which the Receiving Party applies to its own confidential information, but shall not under any circumstances exercise less than a reasonable standard of care.

(c)    Except as necessary for furtherance of the Purpose, the Receiving Party agrees not to copy, reproduce, or reduce to writing any part of the Confidential Information.

(d)    Nothing in this Agreement shall be construed as requiring either party to disclose Confidential Information to the other or to render any assistance to the other.

### 3.    Limits of Confidential Information

The obligations of confidentiality of this Agreement shall not apply to any Confidential Information which:

(i)    is or comes into the public domain without breach of this Agreement;

(ii)    was received by the Receiving Party prior to receipt from the Disclosing Party from a third party other than by breach of an obligation of confidentiality owed to the Disclosing Party; or

(iii)    is independently developed by the Receiving Party without use of or reference to the Confidential Information.

In addition, each of the parties agree that any such information, ideas, suggestions and concepts commonly known in the industry related to the movie racking business that may be offered or disclosed by either party in meetings, consultations or documents exchanged between

2

the parties shall not be deemed included in the Confidential Information, and no party shall be under any obligation to any other party with respect to its use thereof.

### 4.    Other Business Activities

This Agreement shall not in any manner affect or limit either party's present or future business activities or relationships of any nature, including business activities or relationships that may be competitive with those of the other party. Each party understands that the other party and its Affiliates are or may be actively engaged in activities, investments, technology exploitation and research and development efforts (collectively "Business Activities") that are similar to its Business Activities, and that information disclosed to the other party may include, without limitation, descriptions of ideas, works in progress and projects in development that are similar to or coincident with such Business Activities of the other party. Each party further acknowledges that such Business Activities may have originated with the other party's employees or others and may duplicate, parallel or resemble portions of its Confidential Information. Each party agrees that this Agreement shall in no way limit, restrict or preclude the other party from pursuing any of its present or future Business Activities or interests, either alone or in conjunction with others, or from entering into any agreement or transaction of any kind with any other person, regardless of whether the subject matter of any such agreement or transaction involves elements similar to or coincident with Confidential Information exchanged hereunder or is in any other way similar to or coincident with any transaction considered or evaluated by the parties.

### 5.    Limitations and Disclaimer of Warranties

Absent the Disclosing Party's prior written consent, the Receiving Party shall make no use (commercial or otherwise) of the Confidential Information other than as related to the Purpose and agrees that this Agreement shall not be construed as granting any right or license under any copyrights, inventions, patents or other intellectual property rights now or hereafter owned or controlled by the Disclosing Party and/or the Disclosing Party's Affiliates.

The parties expressly recognize that the Confidential Information is provided "AS IS". The Disclosing Party makes no warranties, express, implied, statutory or otherwise with respect to the Confidential Information and expressly disclaims all implied warranties.

### 6.    Ownership of Confidential Information

(a)    The Confidential Information is and shall remain the sole and exclusive property of the Disclosing Party.

(b)    In the event that the parties do not enter into a business relationship or either party terminates the discussions related to the Purpose, the Receiving Party shall, at the Disclosing Party's request, promptly, return all Confidential Information, including written documents or other materials embodying the Confidential Information and all copies thereof, to the Disclosing Party's principal place of business as first set forth above, and shall permanently delete any Confidential Information stored electronically and shall certify in writing to the Disclosing Party that such deletion has occurred, or, at the election of the Disclosing Party, the Receiving Party shall destroy all confidential Information received and all copies thereof and shall permanently

delete any Confidential Information stored electronically and provide written certification to the Disclosing Party that all Confidential Information, and copies thereof, in the Receiving Party's possession has been so destroyed or deleted; provided however, a Receiving Party's obligations of confidentiality pursuant hereto shall survive the return of the Confidential Information to the Disclosing Party, the deletion of Confidential Information stored electronically or destruction of the Confidential Information.

(c)    In the event that a Receiving Party receives a request or demand to disclose all or any part of the Confidential Information under the terms of a subpoena or order issued by a court of competent jurisdiction, an agency of any State of the United States or of any other jurisdiction (the "Disclosure Order"), the Receiving Party agrees to promptly notify the Disclosing Party of the existence, terms and circumstances surrounding such Disclosure Order so that such the Disclosing Party may seek a protective order or other appropriate relief or remedy and/or waive compliance with the terms of this Agreement. If, failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving Party, in the opinion of its outside legal counsel, is legally required to disclose Confidential Information, the Receiving Party may disclose such Confidential Information to the extent it is legally required to do so without liability hereunder; provided however, the Receiving Party shall disclose only that portion of the Confidential Information which it is legally required to disclose, and the Receiving Party shall exercise good faith efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the Confidential Information disclosed.

### 7.    No Commitment of Business Relationship

This Agreement shall not commit the parties to enter into a business relationship with each other absent a separate written agreement.

### 8.    Injury as a Result of Breach

(a)    Because of the uniqueness of the Confidential Information, the Receiving Party acknowledges and agrees that any breach of any of the terms of this Agreement will result in immediate and irreparable injury to the Disclosing Party and the Disclosing Party shall be entitled to injunctive relief, without the requirement of posting a bond or other security, in order to prohibit Receiving Party from (or to cause Receiving Party to cease) breaching any of the terms hereof, as well as to seek all other legal or equitable remedies to which the Disclosing Party may be entitled.

(b)    No remedy conferred by this Agreement is intended to be exclusive of any other remedy and all remedies now or hereafter existing at law or in equity shall be available to the Disclosing Party. The election of any one or more remedies shall not constitute a waiver of the right to pursue other available remedies.

### 9.    Term

The obligations of this Agreement shall terminate on the later of five (5) years after the Effective Date or five (5) years after the date of termination or expiration of any written agreement entered into between the parties; provided however, the obligations of confidentiality with regard to trade secrets shall continue indefinitely so long as the secrets remain trade secrets.

4

**10.    Miscellaneous**

(a)    This Agreement constitutes the entire understanding between the parties and supersedes any oral or written agreements which may have been entered into between them on disclosure of Confidential Information. This Agreement may not be changed or terminated orally, and no change, termination or attempted waiver of any of the provisions hereto shall be binding unless in writing and signed by the party against whom the same is sought to be enforced.

(b)    If at any time during the term of this Agreement any provision hereof proves to be or becomes invalid or unenforceable under any applicable law, then such provision shall be deemed modified to the extent necessary in order to render such provision valid and enforceable. If such provision may not be so saved, it shall be severed and the remainder of this Agreement shall remain in full force and effect.

(c)    The covenants, representations and warranties contained in this Agreement shall survive its termination.

(d)    The terms of this Agreement shall be governed by, and interpreted under Alabama law, without reference to its conflicts of laws provisions.

(e)    No waiver by a party of any breach of this Agreement shall constitute a waiver of the terms and conditions of this Agreement with respect to any subsequent breach hereof.

(f)    No party may assign this Agreement without the express written consent of the other party.

(g)    Any notice or communication provided under or relating to this Agreement shall be in writing and either hand delivered, deposited in the United States mail, certified with return receipt requested, with postage prepaid, or sent PRIORITY by a nationally-recognized overnight delivery service (i.e. Federal Express, etc.) and addressed to the party at its address first set forth above. Any notice to Disclosing Party shall be sent to the attention of the General Counsel at the address first set forth above. If the addressee rejects or otherwise refuses to accept the notice, or if the notice cannot be delivered because of a change in address for which no notice was given in compliance with this Paragraph 10(g), then notice shall be deemed to have been given upon the date of rejection, refusal or inability to deliver. Notices shall be deemed delivered when actually received by the intended recipient. A change of address by a party must be by notice given to the other parties in the manner specified above.

(i)    For the convenience of the parties, this Agreement may be executed in counterparts. Each such counterpart shall be an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

(j)    If litigation or any other action of any nature whatsoever (including any proceeding under the U.S. Bankruptcy Code) is instituted in connection with any controversy arising out of this Agreement or to interpret or enforce any rights, the prevailing party shall be entitled to recover its attorneys' and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary, as determined by the court(s), in addition to all other amounts provided by law.

5

11.        Authorization

The person signing this Agreement on behalf of the undersigned has the authority to do so and to bind the undersigned to the terms hereof.

IN WITNESS WHEREOF, each party has signed this Agreement on the date(s) indicated below.

**"DISCLOSING PARTY"**

MOVIE GALLERY US, LLC

By:     S. Page Todd
Its:     Executive Vice President

**"RECEIVING PARTY"**

Mark W. Greenshields, individually

By:     Mark W. Greenshields

Associated Sourcing

By:     Mark W. Greenshields
Its:     OWNER
          (Title)

6



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Dec 13 04:04:18 EST 2007*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout** Please logout when you are done to release system resources allocated for you.

**Start** List At: [        ]  OR  **Jump** to record: [        ]  **Record 6 out of 59**

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# Video Library

| **Word Mark** | **VIDEO LIBRARY** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: video library. FIRST USE: 20070523. FIRST USE IN COMMERCE: 20070523 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77188700 |
| **Filing Date** | May 23, 2007 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Owner** | (APPLICANT) Greenshields, Mark INDIVIDUAL UNITED STATES 15715 NE 135th Street Redmond WASHINGTON 98052 |
| **Attorney of Record** | Robert O. Sailer |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |



EXHIBIT
B





Director, General Litigation
& Associate Counsel

(334) 677-2108 ext. 22618
Facsimile: (334) 836-3746

E-mail: aott@movgal.com

**Office of the General Counsel**

July 23, 2007

_Via Certified Mail, RRR_
Mr. Mark W. Greenshields
Associated Sourcing
1571 NE 135th Street
Redmond, WA 98052

Re:     Confidentiality Agreement

Dear Mr. Greenshields:

Please be advised that you remain subject to that certain Confidentiality Agreement executed by you and Movie Gallery US, LLC ("Movie Gallery") dated October 30, 2006. A violation of the Confidentiality Agreement by you, or your agents, will result in immediate and irreparable injury to Movie Gallery and Movie Gallery will pursue all available legal and equitable remedies.

Movie Gallery expects you to honor your obligations under such agreement as to all Confidential Information provided to you as part of previous negotiations with you, including information provided by current or former employees of Movie Gallery who may also be subject to confidentiality agreements.

Sincerely,

Ashton Ott
Director of General Litagation
& Associate Counsel

cc:     Chris Theademan, VP – Alternative Markets



EXHIBIT
C

## NON SOLICITATION & CONFIDENTIALITY AGREEMENT

This Non-Solicitation & Confidentiality Agreement ("Agreement") is entered into this 22 day of September 1999, between Video Library, Inc. ("Company") and _Jared Smith_ ("Employee"), in accordance with the following terms:

1.   **Employment.**  Employee accepts employment with the Company under the terms and conditions set forth in this Agreement and Employee agrees to be subject to the Company's regular personnel policies and procedures as are in effect from time to time.

2.   **Property Rights of the Parties.**

    **2.1**   **Nature of the Business.**  The Company is engaged in the business of renting videotapes and related entertainment products, including, racking and previewed tape sales of videotape cassettes, CD ROMS, DVD, games and related accessories and other products within the United States of America.

    **2.2**   **Trade Secrets and Confidential Information.**  During employment with the Company, the Employee will become familiar with various trade secrets or proprietary information consisting of procedures, formulas, devices, testing, processing, secret inventions, processes and compilations of confidential information, such as records and customer lists, as owned by the Company and regularly utilized in the operation of the business of the Company. For employment extended and for the other consideration herein, the Employee agrees that he/she shall not disclose any trade secrets, directly or indirectly, nor use them in any way thereafter, except as required in the course of his/her employment by the Company.  All files, records, documents, drawings, specifications, equipment, and similar items relating to the business of the Company, whether or not prepared by the Employee, shall remain the exclusive property of the Company and shall not be removed from the premises of the Company under any circumstances without prior written consent of the Company.

3.   **Nonsolicitation.**

    **3.1**   **Nonsolicitation by Employee.**  For the employment extended and accepted and for additional consideration, the receipt of which the Employee hereby acknowledges, the Employee agrees that during his/her employment with the Company, he/she shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director or in any other individual or representative capacity, engage or participate in soliciting, diverting or taking away any orders from any customers of the Company for products that are sold by the Company.  Furthermore, following the Employee's last day of work for the Company and for a period of two years thereafter, the Employee expressly agrees not to influence or attempt to influence, solicit, divert or take away any orders from any customer of the Company for products or services that are sold or offered by the Company.

    **3.2**   **Company Employees.**  The employee promises and agrees that, for two years following his/her termination, he/she will not solicit for employment, enter into business or



work with any person who is currently working for the Company or who has worked for the Company within the preceding five years in an executive, professional, sales, or technical capacity as those terms have been defined within the regulations issued under the Fair Labor Standards Act, for any business or other entity then in competition with the business of the Company.

     4.    **At Will Employment.** The Company and its employees have an employment relationship, which is known as "employment at-will". This means that the Employee can terminate his/her employment relationship at any time, for any reason or no reason at all, and the Company reserves to itself the same right.

     5.    **Court Modifications.** In the event that any valid federal or state law or final determination of any administrative agency or court of competent jurisdiction effects any provision(s) of this Agreement, the Employee agrees that such agency or court shall have the power to modify such provision(s) to conform to said law or determination; otherwise if said provision(s) is unenforceable and cannot for any reason be reduced and enforced as described above, the Employee agrees that such determination shall not affect, impair or void the remainder of this Agreement.

     6.    **Damages for Breach of Employee's Obligations.** In the event of breach by Employee of any of the obligations contained in 2.2, 3.1 and 3.2 of this Agreement, the Employee agrees that any violation, breach or evasion of any of the terms of this Agreement by Employee will result in immediate and irreparable injury and the Company shall have the right to seek recourse therefrom by injunction and/or specific performance, as well as through all other legal or equitable remedies to which the Company may otherwise be entitled. The Employee consents and stipulates to the entry of such injunctive relief from a court of competent jurisdiction prohibiting Employee from violating the terms of this Agreement.

     7.    **Governing Law & Litigation.** This Agreement shall be governed as to its validity, content and effect by the laws of the State of Montana. In the event that either party commences to litigation to enforce or protect their rights under this Agreement, said litigation shall be brought in a court of competent jurisdiction in Billings, Montana.

     8.    **Entirety of Agreement & Binding Effect.** This Agreement constitutes the whole agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties. This Agreement is binding upon Employee and his/her heirs and assigns and shall inure to the benefit of any successor of the Company; and any such successor shall be deemed substituted for the Company for all purposes. "Successor" shall include any person, firm, corporation or other business entity which at any time, whether by purchase, merger or otherwise, directly or indirectly acquires the Company's assets, business, or stock.

     The parties have executed this Agreement effective as of the first date written above.

VIDEO LIBRARY, INC.

By: _____

Dated: _____

EMPLOYEE

_____