IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MOVIE GALLERY US, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) CIVIL ACTION NO. 2:07CV1032-MHT |
| vs. | ) |
| | ) |
| | ) |
| | ) |
| MARK W. GREENSHIELDS, | ) |
| ASSOCIATED SOURCING, AND | ) |
| ASSOCIATED SOURCING HOLDINGS, | ) |
| INC. D/B/A VIDEO LIBRARY | |
| | |
| Defendants. | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on May 27, 2008, wherein the following proceedings were held and actions taken:

1. **Parties and trial counsel:**

The trial counsel for Plaintiff Movie Gallery US, LLC are as follows: Jeffrey M. Grantham (GRA048); M. Lee Huffaker (HUF011); and J. Ethan McDaniel (MCD065).

The trial counsel for Defendants Mark W. Greenshields, Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library are Philip E. Cutler (WSBA 5084); Charles A. Stewart III (STE067); John Goodman (GOO017); and Quindal C. Evans (EVA040).

**Counsel appearing at pretrial hearing:**

Counsel appearing for Plaintiff Movie Gallery US, LLC at the pretrial hearing are as follows: Jeffrey M. Grantham (GRA048) and J. Ethan McDaniel (MCD065).

Counsel appearing for defendants Mark W. Greenshields, Associated Sourcing, and Associated Sourcing Holdings, Inc. d/b/a Video Library at the pretrial hearing is Charles A. Stewart III (STE067).

2. **Jurisdiction and venue**

Complete diversity of citizenship exists as plaintiff is a citizen of the States of Alabama and Delaware, and no defendant is a citizen of either Alabama or Delaware. The amount in controversy in this case is in excess of the statutory minimum required for this court to exercise its jurisdiction. Thus, federal jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as plaintiff seeks relief under Section 43 of the Lanham Act (15 U.S.C. § 1125). This court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(a) and (c).

3. **Pleadings:** The following pleadings and amendments were allowed:

Complaint (PACER Doc. 1)

Answer to Complaint (PACER Doc. 2)

Amended Complaint (PACER Doc. 22)

Answer to Amended Complaint (PACER Doc. 27).

4. **Contentions of the parties:**

   (a) **The plaintiff**

In or around October of 1980, Becky Reno incorporated Video Library, Inc. and began offering movie racking services in Billings, Montana. From the outset, Ms. Reno vigorously promoted her Video Library business under a stylized Video

LIBRARY MARK, WHICH SHE PERSONALLY CREATED AND DEVELOPED. DURING THE TIME MS. RENO OPERATED THE VIDEO LIBRARY BUSINESS, IT CONSISTED OF STAND-ALONE 'VIDEO LIBRARY' BRANDED MOVIE RENTAL STORES, AS WELL AS 'VIDEO LIBRARY' BRANDED RACKS IN RETAIL STORES FROM WHICH CUSTOMERS OF THE RETAIL STORES COULD RENT OR PURCHASE MOVIES. AT BOTH VIDEO LIBRARY STAND-ALONE STORES AND RACKING LOCATIONS, CUSTOMERS HAD TO FILL OUT MEMBERSHIP APPLICATIONS, WHICH BORE THE VIDEO LIBRARY MARK. IN RETURN, EACH MEMBER/CUSTOMER WOULD RECEIVE A VIDEO LIBRARY MEMBERSHIP CARD. WHEN A CUSTOMER RENTED OR PURCHASED A MOVIE FROM EITHER A RACKING LOCATION IN A RETAIL STORE OR AT A VIDEO LIBRARY STAND-ALONE STORE, THE INVOICE PROVIDED TO THE CUSTOMER BORE THE VIDEO LIBRARY NAME AND THE VIDEO LIBRARY MARK. CUSTOMER INQUIRIES WERE DIRECTED TO VIDEO LIBRARY CUSTOMER SERVICE.

THE STAND-ALONE VIDEO LIBRARY STORES DISPLAYED VIDEO LIBRARY SIGNAGE. LIKEWISE, THE VIDEO LIBRARY MARK WAS PROMINENTLY DISPLAYED ON ALL MOVIE SLIP COVERS. MS. RENO FURTHER PROMOTED THE VIDEO LIBRARY BUSINESS AND VIDEO LIBRARY MARK THROUGH MASS MAILERS, NEWSPAPER ADDS, AND RADIO ADVERTISEMENTS. IN ADDITION, BROCHURES INDICATING NEW RELEASES FROM VIDEO LIBRARY WERE DISTRIBUTED TO CUSTOMERS AT BOTH THE RACKING LOCATIONS AND THE STAND-ALONE VIDEO LIBRARY STORES.

BY THE LATE 1980S, VIDEO LIBRARY'S OPERATIONS EXPANDED INTO FOURTEEN (14) STATES, INCLUDING ALASKA, IOWA, IDAHO, KANSAS, MINNESOTA, MICHIGAN, MISSOURI, MONTANA, NORTH DAKOTA, NEBRASKA, SOUTH DAKOTA, WASHINGTON, WISCONSIN, AND WYOMING.[1] OVER TIME, FROM THE INCEPTION OF THE VIDEO LIBRARY BUSINESS IN 1980 TO 2003, THE VIDEO LIBRARY MARK ACQUIRED WIDE RECOGNITION AND APPRECIATION AS A RESULT

---

[1] Ms. Reno also incorporated an entity called WMI, Inc., which owned some Video Library stores.

of Ms. Reno's development and marketing efforts, as well as the goodwill and customer trust generated from her business practices.

By 2003, the video library business was flourishing, and Movie Gallery reached a deal with Ms. Reno to purchase the video library business. On April 23, 2003, Movie Gallery purchased the assets of WMI and all shares of Video Library, Inc. Specifically, through these transactions, Movie Gallery acquired "[a]ll seller's right, title and interest, if any, in and to the "Video Library" trade name and related marks, trade dress and logos, and all goodwill associated therewith at, or with respect to, the stores" from WMI and "[a]ll of the Corporation's rights, title and interest to the 'Video Library' tradename, and all goodwill associated therewith" from Video Library, Inc.

After Movie Gallery's acquisition of the video library business, Movie Gallery changed the name of the stand-alone Video Library retail stores to 'Movie Gallery.' Indicative of the value and goodwill underlying the Video Library mark, however, Movie Gallery chose to continue using the Video Library mark for all racking operations, and still does so to date.

In or around October, 2006, Defendant Mark Greenshields approached Movie Gallery and expressed interest in purchasing Movie Gallery's video library business, including all rights, title and interest to the Video Library mark. In conjunction with these discussions, Mr. Greenshields and his company Associated Sourcing Holdings, Inc. executed a Confidentiality Agreement, the purpose of which was to restrict their use of confidential and proprietary information provided to

them by Movie Gallery in the course of negotiation.[2] Pursuant to the confidentiality agreement, Movie Gallery divulged extremely valuable confidential and proprietary information to Mr. Greenshields, including, but not limited to: (1) detailed customer lists, including the identity and location of every Video Library movie rack throughout a twelve-state region; (2) internal business processes; (3) warehouse information and inventory; (4) payroll information; (5) information regarding aging receivables; (6) vendor information; (7) financial statements for the years 2004-06; and (8) contract and lease forms.

On May 21, 2007, after approximately seven months of negotiation and information sharing, Movie Gallery's board of directors rejected the proposed sale of the Video Library business to Defendants. Resultantly, Defendants acquired no rights to the Video Library business or the VIDEO LIBRARY mark. Nevertheless, Defendants remained obligated to comply with the confidentiality agreement.

Immediately thereafter, Defendants began efforts to steal that which they could not purchase. Specifically, on May 23, 2007 -- only two days after the Board rejected Defendants' proposed purchase of the Video Library business and despite his knowledge of Movie Gallery's use of the VIDEO LIBRARY mark -- Mr. Greenshields filed an application with the United States Patent and Trademark Office ("USPTO") seeking federal registration for the VIDEO LIBRARY mark.[3]

---

[2] Associated Sourcing Holdings, Inc. was incorporated later, on May 15, 2007, for purposes of purchasing the Video Library Business.

[3] Defendants also registered the VIDEO LIBRARY trade name with the Secretary of State for the State of Washington on July 27, 2007 (two months after the Board rejected the proposed sale of the Video Library Business to Defendants).

Armed with Movie Gallery's confidential information obtained during negotiations to buy the Video Library business, Defendants set up a competing video racking business, despite the fact that Mr. Greenshields had absolutely no experience in the movie racking industry prior to his negotiations with Movie Gallery. Defendants immediately began to solicit Movie Gallery's retail customer accounts in a wrongful and illegal manner, using and benefiting substantially from Movie Gallery's confidential and proprietary information that Mr. Greenshields acquired through his negotiations with Movie Gallery.

Defendants even held themselves out to be Video Library and used lease agreements that displayed the Video Library mark. Defendants went so far as to acquire warehouse space formerly utilized by the Video Library business to obtain the address used by the Video Library in furtherance of Defendants' scheme.

Defendants also hired away several Movie Gallery employees who were previously responsible for servicing the Video Library retail customer accounts. One such employee, Jared Smith, is subject to and has breached his "Non Solicitation & Confidentiality Agreement" with Video Library, Inc., which Plaintiff is entitled to enforce. All of these employees brought with them to Defendants more of Movie Gallery's valuable confidential and proprietary information, and Defendants have wrongfully used such information to solicit and take Movie Gallery's customers. Further, these employees entered into agreements with Defendants -- while these employees were still employed with Movie Gallery -- to solicit and roll Movie Gallery's customers to Defendants in violation of these employees' duties to Plaintiff. Indeed, Jared Smith, one such employee who entered into an employment agreement with Defendants while still employed with Movie Gallery, signed an

6

agreement with defendants whereby he would receive a monetary bonus if he could roll all of Movie Gallery's "Alaska Accounts" (Movie Gallery's largest account) over to the defendants.

Defendants' actions were made in bad faith, in violation of the confidentiality agreement, and in an effort to compete unfairly and wrongfully with Movie Gallery through the misappropriation of Movie Gallery's confidential and proprietary information. Further, defendants sought to confuse customers into believing that defendants were associated with, affiliated with or otherwise endorsed by the 'real' Video Library, which has operated in the region since 1980. To date, defendants have successfully stolen at least 17 Movie Gallery retail customer accounts. Though defendants proclaim to have ceased use of the Video Library mark, they continue to use Movie Gallery's confidential and proprietary business information by specifically targeting Movie Gallery's retail customer accounts and wrongfully interfering with Movie Gallery's contracts with these customers.

Movie Gallery brought this civil action to enforce its rights under the confidentiality agreement, to protect its rights to its valuable proprietary information, to prohibit defendants from unfairly competing in the movie racking marketplace, and to prevent defendants from wrongfully taking Movie Gallery's customers. Movie Gallery seeks to be compensated for the harm it has suffered by reason of defendants' conduct, as well as damages to punish defendants for their willful conduct. Movie Gallery further seeks to protect its rights to the Video Library mark and to prevent the consumer confusion generated by defendants' wrongful

USE OF THE MARK.

Specifically, defendants' actions give rise to claims of: (1) breach of contract; (2) violation of various states' trade secrets acts; (3) wrongful interference with plaintiff's contractual and business relationships; (4) violation of the Lanham Act; (5) violation of various states' deceptive trade practices acts; and (6) common-law trade name infringement and unfair competition. Plaintiff seeks compensatory, punitive, and exemplary damages, along with costs and attorneys' fees incurred in bringing this action. Plaintiff also seeks injunctive relief to enjoin the conduct complained of here.

**(B)    THE DEFENDANTS:**

(1)     DEFENDANTS DENY EACH AND EVERY ONE OF PLAINTIFF'S ALLEGATIONS OF WRONGDOING AND ALL RELATED CONTENTIONS.

(2)     AS TO PLAINTIFF'S CLAIMS FOR BREACH OF THE OCTOBER 31, 2006 CONFIDENTIALITY AGREEMENT AND RELATED CONTENTIONS:

  (I)    DEFENDANT ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") IS NOT A PARTY TO THE AGREEMENT AND CANNOT BE HELD LIABLE FOR ANY BREACH THEREOF.

  (II)   NONE OF THE DEFENDANTS HAS TAKEN ANY ACTION THAT WOULD BREACH ANY OBLIGATION UNDER THE AGREEMENT.

  (III)  ALL OF THE ACTIONS TAKEN BY DEFENDANTS ARE PERMITTED UNDER THE AGREEMENT.

  (IV)   THE PURPORTEDLY CONFIDENTIAL INFORMATION AND/OR DOCUMENTS PLAINTIFF PROVIDED DEFENDANTS MARK GREENSHIELDS AND/OR ASSOCIATED SOURCING (GREENSHIELDS' SOLE PROPRIETORSHIP) ARE NOT "TRADE SECRETS" UNDER ANY APPLICABLE STATE TRADE SECRETS ACT.

  (V)    NONE OF THE DEFENDANTS "MISAPPROPRIATED" OR "USED IMPROPER MEANS" WITH RESPECT TO ANY OF THE PURPORTEDLY CONFIDENTIAL INFORMATION AND/OR DOCUMENTS.

  (VI)   DEFENDANTS INCORPORATE BY REFERENCE AS IF FULLY SET FORTH HEREIN ALL CONTENTIONS CONCERNING PLAINTIFF'S CLAIMS FOR VIOLATION OF STATE TRADE

                SECRETS ACTS, *INFRA* (B)(3).

(VII) PLAINTIFF NEVER REQUESTED THAT DEFENDANTS MARK GREENSHIELDS AND ASSOCIATED SOURCING (GREENSHIELDS' SOLE PROPRIETORSHIP) RETURN ANY OF THE DOCUMENTS OR INFORMATION PROVIDED DURING THE NEGOTIATIONS FOR THE PURCHASE OF PLAINTIFF'S MOVIE-RACKING RENTAL BUSINESS.

(VIII) PLAINTIFF HAS SUFFERED NO COMPENSABLE DAMAGE OR INJURY FOR WHICH ANY OF THE DEFENDANTS ARE LIABLE.

(3) AS TO PLAINTIFF'S CLAIMS FOR VIOLATION OF STATE TRADE SECRETS ACTS AND RELATED CONTENTIONS:

(I) NONE OF THE DEFENDANTS HAS TAKEN ANY ACTION THAT WOULD VIOLATE ANY APPLICABLE STATE TRADE SECRETS ACT.

(II) PLAINTIFF HAS NO TRADE SECRETS TO PROTECT IN THIS MATTER.

(III) PLAINTIFF FAILED TO TAKE REASONABLE STEPS TO PROTECT WHATEVER "TRADE SECRETS" IT CLAIMS TO HAVE HAD.

(IV) PLAINTIFF HAS DISCLOSED TO THE WORLD THE IDENTITY OF ITS "SECRET" CUSTOMER LIST.

(V) PLAINTIFF'S ALLEGED "SECRETS" ARE NOT "TRADE SECRETS" UNDER ANY APPLICABLE STATE TRADE SECRETS ACT, NOR DO ANY SUCH "SECRETS" MEET THE STATUTORY TEST OF "NOT BEING GENERALLY KNOWN TO, AND NOT BEING READILY ASCERTAINABLE BY PROPER MEANS BY, OTHER PERSONS WHO CAN OBTAIN ECONOMIC VALUE FROM ITS DISCLOSURE OR USE."

(VI) DEFENDANTS HAVE NEITHER "MISAPPROPRIATED" NOR "USED IMPROPER MEANS" WITH REGARD TO PLAINTIFF'S ALLEGED TRADE SECRETS.

(VII) IT IS COMMON KNOWLEDGE IN THE INDUSTRY AS TO WHICH MOVIE-RACKING PROVIDER CONVENIENCE AND GROCERY STORES DEAL WITH FOR SUCH SERVICES.

(VIII) PLAINTIFF HAS SUFFERED NO COMPENSABLE DAMAGE OR INJURY FOR WHICH ANY OF THE DEFENDANTS ARE LIABLE.

(4) AS TO EMPLOYMENT LAW ISSUES, INCLUDING WITHOUT LIMITATION PLAINTIFF'S CLAIMS FOR INTERFERENCE WITH PLAINTIFF'S CONTRACTUAL OR BUSINESS RELATIONS WITH JARED SMITH AND/OR ANY OTHER PERSON PREVIOUSLY EMPLOYED BY PLAINTIFF AND RELATED CONTENTIONS:

(I) NONE OF THE DEFENDANTS HAS TAKEN ANY ACTION THAT INTERFERED WITH PLAINTIFF'S CONTRACTUAL OR BUSINESS RELATIONS WITH JARED SMITH OR ANY

        CURRENT OR FORMER EMPLOYEE OF PLAINTIFF.

(II)    PLAINTIFF ACQUIRED NO RIGHTS UNDER THE PURPORTED AGREEMENT BETWEEN JARED SMITH AND VIDEO LIBRARY, INC.

(III)    ANY NON-COMPETE AGREEMENT SIGNED BY ANY FORMER MOVIE GALLERY EMPLOYEE WHO IS CURRENTLY WORKING FOR ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") IS UNENFORCEABLE UNDER EITHER MONTANA OR WASHINGTON LAW, WHICH WOULD BE THE SITUS OF ANY CONTRACT ALLEGEDLY ENTERED INTO, AND IS FURTHER UNENFORCEABLE AS VIOLATIVE OF ALABAMA PUBLIC POLICY.

(IV)    THE AGREEMENT CITED BY PLAINTIFF IN ITS AMENDED COMPLAINT, AND INVOLVING JARED SMITH, IS NOT ONLY INVALID AND UNENFORCEABLE UNDER MONTANA LAW, BUT ANY DISPUTE REGARDING THE CONTRACT MUST BE RESOLVED IN A COMPETENT COURT IN BILLINGS, MONTANA.

(V)    NEITHER ANDREW KIEL NOR ADAM PLYMALE, FORMER EMPLOYEES OF PLAINTIFF NOW EMPLOYED BY DEFENDANT ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") SIGNED A NON-COMPETE OR NON-SOLICITATION AGREEMENT WITH PLAINTIFF.

(VI)    PLAINTIFF'S EMPLOYEE HANDBOOK AND ITS BUSINESS ETHICS "CODE" ARE ASPIRATIONAL, HAVE NO LEGAL EFFECT AND DO NOT CREATE A CONTRACT BETWEEN PLAINTIFF AND THE EMPLOYEE OR FORMER EMPLOYEE.

(VII)    DEFENDANT ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") TOOK REASONABLE STEPS TO ENSURE THAT ALL FORMER EMPLOYEES OF PLAINTIFF WHOM IT HIRED WOULD NOT BREACH ANY OBLIGATION OWED TO PLAINTIFF BY VIRTUE OF THEIR EMPLOYMENT WITH ASG VIDEO.

(VIII)    PLAINTIFF CANNOT DEMONSTRATE ANY OF THE ESSENTIAL ELEMENTS OF THE TORT COMPLAINED OF.

(IX)    PLAINTIFF HAS SUFFERED NO COMPENSABLE DAMAGE OR INJURY FOR WHICH ANY OF THE DEFENDANTS ARE LIABLE.

(X)    DEFENDANT'S ACTIONS ARE PRIVILEGED AS BONAFIDE COMPETITION.

(XI)    PLAINTIFF OR ITS PREDECESSORS HAS NOT SHOWN THAT IT WAS QUALIFIED TO DO BUSINESS IN ALABAMA AT THE TIME THAT ANY NON-COMPETE AGREEMENTS WERE ENTERED INTO.

(XII)    ANY NON-COMPETE AGREEMENT SIGNED BY ANY FORMER MOVIE GALLERY EMPLOYEE WHO IS CURRENTLY WORKING FOR ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") IS NOT ENFORCEABLE UNDER MONTANA OR ALABAMA LAW.

(5)    AS TO PLAINTIFF'S CLAIMS FOR INTERFERENCE WITH PLAINTIFF'S CONTRACTUAL

        OR BUSINESS RELATIONS WITH ITS CUSTOMERS AND RELATED CONTENTIONS:

- (I) NONE OF THE DEFENDANTS HAS TAKEN ANY ACTION THAT INTERFERED WITH PLAINTIFF'S CONTRACTUAL OR BUSINESS RELATIONS WITH ANY CUSTOMER OR FORMER CUSTOMER OF PLAINTIFF; ALL SUCH ACTIONS BY DEFENDANTS HAVE BEEN FAIR COMPETITION.

- (II) ALL FORMER CUSTOMERS OF PLAINTIFF WHO OPTED TO CEASE DOING BUSINESS AND TO DO BUSINESS INSTEAD WITH DEFENDANTS ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") DID SO FREELY AND VOLUNTARILY AND FOR GOOD AND SUFFICIENT BUSINESS REASONS.

- (III) PLAINTIFF HAS ITSELF UNFAIRLY COMPETED WITH DEFENDANT ASSOCIATED SOURCING HOLDINGS, INC. ("ASG VIDEO") BY, AMONG OTHER THINGS, ACCUSING SAID DEFENDANT AND ITS EMPLOYEES OF WRONGFUL CONDUCT AND BY SELECTIVELY ENFORCING, OR ATTEMPTING TO ENFORCE, THE TERMINATION CLAUSE IN ITS CONTRACTS WITH THOSE OF ITS CUSTOMERS WHO EXPRESSED A DESIRE TO CEASE DOING BUSINESS WITH PLAINTIFF AND ATTEMPTED TO REQUIRE THEM TO CONTINUE TO DO BUSINESS WITH PLAINTIFF.

- (IV) PLAINTIFF CANNOT DEMONSTRATE ANY OF THE ESSENTIAL ELEMENTS OF THE TORT COMPLAINED OF.

- (V) PLAINTIFF HAS SUFFERED NO COMPENSABLE DAMAGE OR INJURY FOR WHICH ANY OF THE DEFENDANTS ARE LIABLE.

- (VI) DEFENDANT'S ACTIONS ARE PRIVILEGED AS BONAFIDE COMPETITION.

(6) AS TO INTELLECTUAL PROPERTY ISSUES, INCLUDING WITHOUT LIMITATION PLAINTIFF'S LANHAM ACT CLAIMS, PLAINTIFF'S CLAIMS FOR FEDERAL UNFAIR COMPETITION, COMMON-LAW TRADE NAME INFRINGEMENT AND UNFAIR COMPETITION AND RELATED CONTENTIONS:

- (I) NONE OF THE DEFENDANTS HAS TAKEN ANY ACTION THAT VIOLATED THE LANHAM ACT OR CONSTITUTED UNFAIR COMPETITION UNDER FEDERAL LAW, OR CONSTITUTED COMMON-LAW TRADE NAME INFRINGEMENT OR UNFAIR COMPETITION.

- (II) PLAINTIFF HAS NO PROTECTABLE INTELLECTUAL PROPERTY INTEREST IN THE PHRASE "VIDEO LIBRARY"

- (III) PLAINTIFF ACQUIRED NO RIGHTS TO ANY INTELLECTUAL PROPERTY UNDER ANY CONTRACT WITH VIDEO LIBRARY, INC.

- (IV) THE PHRASE "VIDEO LIBRARY" IS GENERIC OR AT THE MOST "MERELY DESCRIPTIVE."

  (V) THE PHRASE "VIDEO LIBRARY" LACKS "SECONDARY MEANING."

  (VI) THE PURCHASERS OF SERVICES FROM DEFENDANT ASG VIDEO ARE SOPHISTICATED CONSUMERS, AND THEREFORE ARE NOT CONFUSED BY ANY TRANSACTION IN THIS MATTER.

  (VII) THERE IS NO EVIDENCE OF ANY ACTUAL CONFUSION ON THE PART OF ANY PURCHASER OF SERVICES FROM DEFENDANT ASG VIDEO.

  (VIII) DEFENDANTS ASG VIDEO'S USE OF THE PHRASE "VIDEO LIBRARY" IS SO CIRCUMSCRIBED BY NUMBER OF USES AND MANNER OF USE TO BE *DE MINIMIS*.

  (IX) DEFENDANTS HAVE NOT "PALMED OFF" THEIR SERVICES AS THOSE OF PLAINTIFF.

  (X) PLAINTIFF HAS SUFFERED NO COMPENSABLE DAMAGE OR INJURY FOR WHICH ANY OF THE DEFENDANTS ARE LIABLE.

(7) AS TO PLAINTIFF'S CLAIMS FOR VIOLATION OF STATE DECEPTIVE PRACTICES ACTS AND RELATED CONTENTIONS:

  (I) NONE OF THE DEFENDANTS HAS TAKEN ANY ACTION THAT VIOLATED ANY APPLICABLE STATE DECEPTIVE PRACTICES ACT.

  (II) PLAINTIFF HAS SUFFERED NO COMPENSABLE DAMAGE OR INJURY FOR WHICH ANY OF THE DEFENDANTS ARE LIABLE.

  (III) PLAINTIFF IS NOT A CONSUMER FOR THE PURPOSE OF DECEPTIVE PRACTICES ACTS.

(8) PLAINTIFF IS NOT ENTITLED TO ANY OF THE RELIEF PLAINTIFF PRAYS FOR.

(9) DEFENDANT, IF IT DID SUFFER ANY DAMAGE, HAS FAILED TO TAKE ANY STEPS TO MITIGATE.

(10) SOME OR ALL OF PLAINTIFF'S CLAIMS ARE EXCLUSIVE.

### 5. S<small>TIPULATIONS BY AND BETWEEN THE PARTIES</small>

AS DISCOVERY IS ONGOING, THE PARTIES HAVE NOT YET REACHED ANY STIPULATIONS.

It is ORDERED that:

(1) The non-jury trial of this cause, which is to last two days, is set for October 20, 2008, at 10:00 a.m. at the Frank M. Johnson, Jr. United States Courthouse Complex, Courtroom 2FMJ, One Church Street, Montgomery, Alabama, 36104;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) The plaintiff is required to file proposed findings of fact and conclusions of law by October 8, 2008. The defendants are required to file proposed findings of fact and conclusions of law by October 15, 2008. The parties are also directed to e:mail their proposed findings of fact and conclusions of law to <propord_thompson@almd.uscourts.gov> in WordPerfect format by the dates specified above;

(4) The parties in this case are not required to file trial briefs. However, if they wish to do so, their

trial briefs shall be filed no later than October 15, 2008.

(5)  Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(6) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (Doc. No. 25) entered by the court on December 20, 2007;

(7) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by Order of the court.

DONE, this the 28th day of May, 2008.

                                                      /s/ Myron H. Thompson
                                        **UNITED STATES DISTRICT JUDGE**